1

2

3

4

5

6

The Honorable Ronald B. Leighton

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10    MAJOR MARGARET WITT,

11                    Plaintiff,

12        vs.

13    UNITED STATES DEPARTMENT OF
      THE AIR FORCE; et al.,

14

15                    Defendants.

NO. C06-5195

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

16

17

18

19

20

21

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195

WIT004 plds hf044201 6/5/06

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1

# TABLE OF CONTENTS

2

TABLE OF AUTHORITIES ............................................................................................ iii

3

4   A.   DEFENDANTS CANNOT MEET THE EXACTING STANDARD FOR
GRANTING A DISMISSAL FOR FAILURE TO STATE A CLAIM.
5        THE DOCTRINE OF DEFERENCE TO MILITARY DECISION-
MAKING DOES NOT GRANT DEFENDANTS IMMUNITY FROM
6        SUIT, NOR DOES IT INSULATE THEIR ACTIONS FROM
ORDINARY CONSTITUTIONAL ANALYSIS ........................................ 2

7

8   B.   *LAWRENCE* MANDATES HEIGHTENED SCRUTINY FOR THE
SUBSTANTIVE DUE PROCESS CLAIM ............................................... 5

9        1.   STRICT SCRUTINY APPLIES TO THE FUNDAMENTAL
RIGHTS TO DEFINE ONE'S OWN IDENTITY, TO FORM
10            INTIMATE RELATIONSHIPS, AND TO CHOOSE ONE'S
LIVING PARTNERS ................................................................. 7

11

12       2.   IN THE ALTERNATIVE, MID-TIER OR INTERMEDIATE
SCRUTINY APPLIES TO "SIGNIFICANT" LIBERTY
13            INTERESTS, AND REQUIRES THE GOVERNMENT TO
JUSTIFY THE PARTICULAR APPLICATION OF THE
14            LAW TO THE PARTICULAR INDIVIDUAL AT HAND ................. 11

15       3.   IN THE ALTERNATIVE, A "MORE SEARCHING FORM"
OF RATIONAL BASIS REVIEW APPLIES TO LAWS THAT
16            INTERFERE WITH INTIMATE RELATIONSHIPS, OR
WHICH APPEAR MOTIVATED BY A DESIRE TO HARM
17            UNPOPULAR MINORITIES ....................................................... 14

18       4.   DEFENDANTS' ASSERTED INTERESTS DO NOT SATISFY
ANY OF THE POTENTIAL STANDARDS, AND DO NOT
19            JUSTIFY AN AIR FORCE POLICY THAT ALLOWS
CLOSETED HOMOSEXUALS TO SERVE, ALLOWS
20            HETEROSEXUALS TO ENGAGE IN HOMOSEXUAL
CONDUCT, BUT DISCHARGES HOMOSEXUALS WHO
21            ACKNOWLEDGE OR ACT ON THEIR SEXUAL
ORIENTATION ....................................................................... 16

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - i

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

C.  AFTER *LAWRENCE*, EQUAL PROTECTION ANALYSIS MUST ALSO RECEIVE SOME FORM OF HEIGHTENED SCRUTINY ..................19

D.  THE COURT SHOULD NOT DISMISS MAJOR WITT'S FIRST AMENDMENT CLAIMS ..........................................................................21

   1.  THE RIGHT TO FREEDOM OF INTIMATE ASSOCIATION ..........21

   2.  THE RIGHT TO FREEDOM OF SPEECH ............................................22

E.  PROCEDURAL DUE PROCESS CLAIMS .................................................22

F.  CONCLUSION ................................................................................................24

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - ii

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1

# TABLE OF AUTHORITIES

2

3

## FEDERAL CASES

Akers v. McGinnis,
   352 F.3d 1030 (6th Cir. 2003) ................................................................................ 9, 10

Anderson v. City of LaVergne,
   371 F.3d 879 (6th Cir. 2004) ...................................................................................... 8

Aptheker v. Secretary of State,
   378 U.S. 500 (1964) ................................................................................................... 13

Beller v. Middendorf,
   632 F.2d 788 (9th Cir. 1980), cert. denied, 452 U.S. 905 (1981) .................... 3, 14, 20

Board of Directors v. Rotary Club of Duarte,
   481 U.S. 537 (1987) ............................................................................................ 7, 8, 21

Bowers v. Hardwick,
   478 U.S. 186  106 S. Ct. 2841, 92 L. Ed. 2d 140 (1986) ...................................... 20, 22

Cammermeyer v. Aspin,
   850 F. Supp. 910 (W.D.Wash.1994) ...................................................................... 5, 18

Cammermeyer v. Perry,
   97 F.3d 1235 (9th Cir. 1996) .................................................................................. 3, 18

City of Cleburne v. Cleburne Living Center,
   473 U.S. 432 (1985) ......................................................................................... 3, 15, 18

Cleveland Board of Education v. LaFleur,
   414 U.S. 632 (1974) ................................................................................................... 23

Conley v. Gibson,
   355 U.S. 41 (1957) ....................................................................................................... 2

Correa v. Clayton,
   563 F.2d 396 (9th Cir. 1977) ..................................................................................... 23

Cruzan v. Director,
   497 U.S. 261 (1990) ................................................................................................... 12

Dallas v. Stanglin,
   490 U.S. 19 (1989) ....................................................................................................... 8

Dandridge v. Williams,
   397 U.S. 471 (1970) ..................................................................................................... 5

Department of Agriculture v. Moreno,
   413 U.S. 528 (1973) ......................................................................................... 14, 15, 21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - iii

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

Eisenstadt v. Baird,
    405 U.S. 438 (1972)....................................................................................... 6, 7, 15

Hearns v. Terhune,
    413 F.3d 1036 (9th Cir. 2005) ................................................................................ 2

Heller v. Doe,
    509 U.S. 312 (1993)................................................................................................ 5

Hensala v. Department of the Air Force,
    343 F.3d 951 (9th Cir. 2003) ................................................................................. 3

Holmes v. Department of the Air Force,
    124 F.3d 1126 (9th Cir. 1997) .......................................................................... 3, 22

IDK, Inc. v. County of Clark,
    836 F.2d 1185 (9th Cir. 1988) ............................................................................... 8

Lawrence v. Texas,
    539 U.S. 2005 ....................................................... 5, 6, 7, 11, 14, 15, 17, 20, 21, 22

Meinhold v. Department of Defense,
    34 F.3d 1469 (9th Cir. 1994) ........................................................................... 3, 18

Montgomery v. Carr,
    101 F.3d 1117 (6th Cir. 1996) ............................................................................... 9

Moore v. City East Cleveland,
    431 U.S. 494 (1977)................................................................................................ 8

Palmore v. Sidotti,
    466 U.S. 429 (1984)....................................................................................... 3, 14, 18

Phillips v. Perry,
    106 F.3d 1420 (9th Cir. 1997) ...................................................................... 3, 19, 20

Planned Parenthood v. Casey,
    505 U.S. 833 (1992)................................................................................................ 7

Pruitt v. Cheney,
    963 F.2d 1160 (9th Cir. 1992) .................................................... 2, 3, 4, 14, 15, 16, 18

Riggins v. Nevada,
    504 U.S. 127 (1992)............................................................................................... 11

Roberts v. United States Jaycees,
    468 U.S. 609 (1984)...................................................................................... 7, 8, 10

Romer v. Evans,
    517 U.S. 620 (1996)..................................................................................... 14, 18, 20

Rotsker v. Goldberg,
    453 U.S. 57 (1981)................................................................................................. 4

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - iv

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

Schlessinger v. Ballard,
   419 U.S. 498 (1975)..................................................................................... 4

Sell v. United States,
   539 U.S. 166 (2003).............................................................................. 11, 12

Thorne v. City of El Segundo,
   726 F.2d 459 (9th Cir. 1983) ......................................................... 8, 9, 10, 11, 22

Tovar v. United States Postal Service,
   3 F.3d 1271 (9th Cir. 1993) ............................................................................ 3

United States v. Marcum,
   60 M.J. 198 (C.M.A. 2004) ........................................................................ 1, 17

Watkins v. United States Army,
   721 F.2d 687 (9th Cir. 1983) ...................................................................... 3, 16

Watkins v. United States Army,
   837 F.2d 1428 (9th Cir. 1988) ........................................................................ 3

Watkins v. United States Army,
   875 F.2d 699 (9th Cir. en banc 1989), cert. denied, 498 U.S. 957 (1990) ................... 3

Weaver v. United States,
   46 Ct. Cl. 69 (2000) ................................................................................... 23

Weiss v. United States,
   510 U.S. 163 (1994)...................................................................................... 4

Wilson v. Taylor,
   733 F.2d 1539 (11th Cir. 1984) ....................................................................... 8

Wisconsin Right to Life, Inc. v. FEC,
   126 S. Ct. 1016 (2006).................................................................................. 1

Yamaguchi v. Department of the Air Force,
   109 F.3d 1475 (9th Cir. 1997) ......................................................................... 2

Youngberg v. Romero,
   457 U.S. 307 (1982)..................................................................................... 12

## MISCELLANEOUS

G. Gunther, In Search of Evolving Doctrine on a Changing Court,"
   86 Harv. L. Rev. 18-22 (1972) ....................................................................... 14

G. Pettinga, Rational Basis With Bite: Intermediate Scrutiny By Any Other
Name,"
   62 Ind. L.J. 779 (1987) ................................................................................ 14

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - v

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

Lawrence Tribe, Lawrence v. Texas The Fundamental Right That Dare Not Speak
Its Name,
    117 Harv. L. Rev. 1893, 1917 (2004)............................................................... 5

Tobias Wolff, Political Representation and Accountability Under Don't Ask,
Don't Tell,
    89 Iowa L. Rev. 1633...................................................................................... 19

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - vi

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1

2      Defendants ask the Court to dismiss this case without considering the facts that might

3  be proven, even though that is the standard for a 12(b)(6) motion. Defendants also fail to

4  consider the facts already alleged, even though the Court must assume them to be true. In

5  her complaint, Major Witt alleges that she is being threatened with discharge from the Air

6  Force for exercising her constitutionally recognized right to have an intimate relationship

7  with a civilian, hundreds of miles away from her military base, which she kept private; and

8  the discharge would occur even though members of her unit would not be bothered in the

9  least by her sexual orientation even if it were to be announced, even though gay and lesbian

10  soldiers serve openly in the armed forces of other countries who fight side by side with our

11  own, and even where the discharge would do more to injure morale and cohesion than would

12  occur of Major Witt were simply allowed to continue her distinguished service as a flight

13  nurse at a time when flight nurses are in extremely short supply. Defendants ignore all of

14  this, but the Court cannot.

15      As explained in the briefs from her motion for preliminary injunction (incorporated

16  here by reference), the Court must at a minimum consider the constitutionality of Major

17  Witt's discharge as it applies on her facts. United States v. Marcum, 60 M.J. 198 (C.M.A.

18  2004). Although Major Witt does not believe there are any circumstances where the

19  discharge rule would be constitutional, at the very least the facts she has alleged, and the

20  consistent facts that might be proven, show that a discharge is unconstitutional in this

21  instance. The mere fact that a statute might be upheld against a facial challenge does not

insulate it from later as-applied challenges. Wisconsin Right to Life, Inc. v. FEC, 126 S.Ct.

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 1

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds ltf044201 6/5/06

1   1016, 1018 (2006).  The likelihood of success shown on the preliminary injunction motion

2   means, at a minimum, that the case cannot be dismissed on a 12(b)(6) motion.

3   **A.     DEFENDANTS CANNOT MEET THE EXACTING STANDARD FOR**
       **GRANTING A DISMISSAL FOR FAILURE TO STATE A CLAIM.  THE**
4      **DOCTRINE OF DEFERENCE TO MILITARY DECISION-MAKING DOES**
       **NOT GRANT DEFENDANTS IMMUNITY FROM SUIT, NOR DOES IT**
5      **INSULATE THEIR ACTIONS FROM ORDINARY CONSTITUTIONAL**
6      **ANALYSIS.**

7        "A complaint should not be dismissed unless it appears beyond doubt that the

8   plaintiff can prove no set of facts in support of her claim that would entitle her to relief."

9   Yamaguchi v. Department of the Air Force, 109 F.3d 1475, 1480 (9th Cir. 1997).  Accord

10  Conley v. Gibson, 355 U.S. 41, 45-46 (1957);  Hearns v. Terhune, 413 F.3d 1036, 1043 (9th

11  Cir. 2005).  This familiar rule of procedure applies in cases against the military.  Whatever

12  deference a Court owes to military decision-making is not the equivalent to an immunity

13  from suit.  Like any other case, constitutional claims brought against the military must be

14  judged on a developed record.

15       Even when the lowest constitutional standard is applicable, the Government is still

16  required to put evidence in the record to demonstrate that this standard has been satisfied on

17  the particular facts of the instant case, and a 12(b)(6) motion must be denied.  Pruitt v.

18  Cheney, 963 F.2d 1160 (9th Cir. 1992) illustrates this principle.  Pruitt involved a challenge

19  brought by an Army Reserve officer to Army regulations requiring her discharge because of

20  her acknowledged homosexuality.  The District Court granted the Army's motion to dismiss

21  but the Ninth Circuit reversed, holding that dismissal was inappropriate where the

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 2

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1   Government had made no showing on the record that Pruitt's discharge would meet the

2   applicable legal test:

> [No cited] case supports the contention of the Army here that its
> discrimination against homosexuals should be held to be rational as a matter
> of law, without any justification in the record at all. We have before us only
> a complaint that has been dismissed for failure to state a claim. After
> Palmore, Cleburne and High Tech Gays, *we cannot say that the complaint
> is insufficient on its face.*

7   Pruitt, 963 F.2d at 1160 (bold italics added). On a 12(b)(6) motion, a Court "will not spare

8   the Army the task" of introducing evidence proving an adequate constitutional basis for its

9   action, nor will it "deprive [plaintiff] of the opportunity to contest that basis. Id.[1] Accord

10  Tovar v. United States Postal Service, 3 F.3d 1271 (9th Cir. 1993) (where plaintiff shows that

11  the law in question is facially discriminatory the Government may not stand silent and must

12  "at a minimum, offer concrete evidentiary facts that explain why the [law] is nevertheless

13  reasonable,") citing Pruitt, 963 F.2d at 1165-66.

14      Defendants offer no evidence of record, but instead cite Congressional hearings that

15  show no more than that Congress adopted the challenged policy intentionally. Defendants'

16  Motion to Dismiss, at 4-5. Whether the Defendants imposed their policy after careful

17  deliberation or no deliberation at all, the question facing this Court is whether adequate

18

---

19  [1]  Pruitt is the only Ninth Circuit case involving military policies bearing on homosexual service members to
20  arise out of an appeal from a 12(b)(6) motion. All of the other Ninth Circuit cases involving constitutional
    challenges to such military policies were either appeals either from summary judgments (Beller v. Middendorf,
    632 F.2d 788 (9th Cir. 1980), cert. denied, 452 U.S. 905 (1981); Watkins v. United States Army, 837 F.2d 1428
21  (9th Cir. 1988); Watkins v. United States Army, 875 F.2d 699 (9th Cir. en banc 1989), cert. denied, 498 U.S. 957
    (1990); Cammermeyer v. Perry, 97 F.3d 1235 (9th Cir. 1996); Phillips v. Perry, 106 F.3d 1420 (9th Cir. 1997);
    Holmes v. Department of the Air Force, 124 F.3d 1126 (9th Cir. 1997); Hensala v. Department of the Air Force,
    343 F.3d 951 (9th Cir. 2003), or from the granting of a preliminary injunction, Meinhold v. Department of
    Defense, 34 F.3d 1469 (9th Cir. 1994); Watkins v. United States Army, 721 F.2d 687 (9th Cir. 1983).

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 3

WIT004 plds hf044201 6/5/06

CARNEY
BADLEY
SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1   evidence exists in the record to show that the policy is being constitutionally applied to

2   Major Witt.  Pruitt rejected the contention that courts should simply defer to military

3   judgment about the wisdom of military policies:

> If we now deferred, on this appeal, to the military judgment by affirming the
> dismissal of the action in the absence of any supporting factual record, we
> would come close to denying reviewability at all . . . The Army . . . asks us
> to uphold its regulation without a record to support its rational basis. This
> we decline to do.

Pruitt, 963 F.2d at 1166-67.

In any event, Defendants overstate the extent to which judicial deference to military

decision-making affects the governing legal standards. In Rotsker v. Goldberg, 453 U.S. 57

(1981), which challenged the draft registration statute on grounds of gender discrimination,

the Court applied the same level of scrutiny that it would have applied in a civilian context,

because "[s]imply labeling the legislative decision 'military' on the one hand or 'gender-

based' on the other does not automatically guide a court to the correct constitutional result."

453 U.S. at 70. Even in the military context, the Court's task is to "decide whether Congress

. . . transgressed an explicit guarantee of individual rights which limits [Congressional]

authority." Id.; see also id, at 71 (explaining that Schlessinger v. Ballard, 419 U.S. 498

(1975), "did not purport to apply a different equal protection test because of the military

context"). "Congress, of course, is subject to the requirements of the Due Process Clause

[even] when legislating in the area of military affairs." Weiss v. United States, 510 U.S.

163, 176 (1994).

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 4

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1

As the District Court in <u>Cammermeyer v. Aspin</u>, 850 F.Supp. 910 (W.D.Wash.1994)

2

said, "there is not now and must never be a 'military exception' to the Constitution. Indeed,

3

courts have been willing to defer to the military only within the confines of ordinary

4

constitutional analysis." <u>Id</u>. at 915, <u>citing</u> <u>Rotsker</u>, 453 U.S. at 67. Accordingly, the first

5

question this Court must answer is what level of constitutional scrutiny to apply.

6

7

**B.     *LAWRENCE* MANDATES HEIGHTENED SCRUTINY FOR THE
SUBSTANTIVE DUE PROCESS CLAIM.**

8

<u>Lawrence v. Texas</u>, 539 U.S. 2003, cannot be viewed as a rational basis case. <u>See</u>

9

Lawrence Tribe, <u>Lawrence v. Texas The Fundamental Right That Dare Not Speak Its</u>

10

<u>Name</u>, 117 <u>Harv. L. Rev.</u> 1893, 1917 (2004).[2] Although the presence or absence of magic

11

words is not dispositive, it bears noting that the majority opinion in <u>Lawrence</u> nowhere

12

uses the words "rational basis." The reasoning of <u>Lawrence</u> demonstrates that its actual

13

method of review was anything but rational basis.

14

The hallmark of rational basis review is that it looks only at the government's

15

justification for a law, and does not weigh the strength or importance of the governmental

16

interest against the strength or importance of the asserted individual right. A law fails to

17

pass muster under the rational basis test only if no state of facts may reasonably be

18

conceived of to justify it. <u>Heller v. Doe</u>, 509 U.S. 312, 320-21 (1993); <u>Dandridge v.</u>

19

<u>Williams</u>, 397 U.S. 471, 485 (1970). The analysis in <u>Lawrence</u> was radically different: it

20

21

[2] "To search for the magic words proclaiming the right in <u>Lawrence</u> to be 'fundamental' and to assume that in the absence of those words mere rationality review applied, . . . requires overlooking passage after passage in which the Court's opinion indeed invoked the talismanic formula of substantive due process but did so by putting the key words in one unusual sequence or another – as in the Court's declaration that it was dealing with

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 5

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WTT004 plds hf044201 6/5/06

devoted page after page to examining the strength of the individual right, and devoted relatively little attention to the state's asserted justifications. Against this individual right, Lawrence found "no legitimate state interest which can justify [the state's] intrusion into the personal and private life of the individual." 539 U.S. at 578.

The key word in this sentence is "justify," which is a pithy summary of the comparison between individual and governmental interests. It misconstrues the majority opinion to focus on the word "legitimate" as if it signaled rational-basis review. In many cases where heightened review is appropriate, the Supreme Court will not hesitate to point out where a law would flunk a more lenient standard of review. See, e.g., Eisenstadt v. Baird, 405 U.S. 438, 447 n. 7 (1972). Because the Texas sodomy law was motivated solely by prejudice, it was entirely proper for the Supreme Court to note that the government's interests were not legitimate. This does not change the fact that the form of legal analysis involved weighing the individual's interests against the government's interests.

Major Witt believes the governmental interests asserted here are irrational, so she wins under any of the standards of review that ordinarily apply in substantive due process or equal protection cases.[3] But the proper legal analysis requires heightened scrutiny of one of the types described in the following sections.

a 'protection of liberty under the Due Process Clause [that] has a substantive dimension of fundamental significance in defining the right so the person.'"
[3] To the extent this Court believes that this position is foreclosed by pre-Lawrence precedent, Major Witt hereby reserves her contention that those decisions were wrongly decided. If necessary at the appropriate point she will urge the Ninth Circuit to overrule them.

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 6

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

**1.    STRICT SCRUTINY APPLIES TO THE FUNDAMENTAL RIGHTS TO DEFINE ONE'S OWN IDENTITY, TO FORM INTIMATE RELATIONSHIPS, AND TO CHOOSE ONE'S LIVING PARTNERS.**

As argued in the preliminary injunction briefs, Plaintiff's Reply In Support of Prelim. Injunction, at 3, Lawrence recognized a "fundamental human right," (id. at 565, citing Eisenstadt v. Baird, 405 U.S. at 453) which it described as "the due process right to demand respect for conduct protected by the substantive guarantee of liberty." Id. at 575. The right to form intimate sexual relationships, as Justice Kennedy made clear, is one aspect of the broader "right to define one's own concept of existence" which lies "[a]t the heart of liberty." Lawrence, at 574, quoting Planned Parenthood v. Casey, 505 U.S. 833, 851 (1992).  Strict scrutiny is the proper judicial standard for assessing the validity of governmental action that would restrict such fundamental liberties.

Long before Lawrence, other Supreme Court cases expressly recognized that the right "to define one's identity" was a fundamental constitutional right.  For example, in Roberts v. United States Jaycees, 468 U.S. 609, 618-19 (1984), the Court acknowledged that it "has long recognized that . . . certain kinds of highly personal relationships" are entitled to "a substantial measure of sanctuary from unjustified interference by the State," and that such constitutional protection "safeguards the ability independently *to define one's own identity* that is central to any concept of liberty."   (Italics added).   This "freedom to enter into and carry on intimate or private relationships is *a fundamental element of liberty* protected by the Bill of Rights." Board of Directors v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987) (italics added).  Although this doctrine of "intimate

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 7

WIT004 plds hf044201 6/5/06

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1    association" is often invoked in a First Amendment setting, the Ninth Circuit has held that

2    the "freedom of intimate association" is properly analyzed as a substantive due process

3    right. IDK, Inc. v. County of Clark, 836 F.2d 1185, 1192 (9th Cir. 1988). See also Dallas

4    v. Stanglin, 490 U.S. 19, 28 (1989) (Stevens, J., concurring).

5    Freedom of intimate association is not restricted to relationships among family

6    members.   Rotary, 481 U.S. at 545.[4]  The right of "intimate association" protects

7    relationships distinguished "by such attributes as relative smallness, a high degree of

8    selectivity in decisions to begin and maintain the affiliation, and seclusion from others in

9    critical aspects of the relationship." Roberts, at 620; Rotary, at 545. Accord IDK, Inc. v.

10   County of Clark, 836 F.2d 1185, 1193 (9th Cir. 1988). (Protected relationships are those

11   which are "highly personal" where the individuals "are deeply attached and committed to

12   each other as a result of their having shared each other's thoughts, beliefs, and

13   experiences.")

14

15   In Thorne v. City of El Segundo, 726 F.2d 459, 468 (9th Cir. 1983), the plaintiff

16   showed that a City refused to hire her as a police officer based in part upon her prior

17   sexual relationship with a married man. The Ninth Circuit found that this employment

18   action "interfere[ed] with her privacy interest and her freedom of association." Id. at 468.

19   Relying upon Moore v. City East Cleveland, 431 U.S. 494 (1977),[5] the Thorne Court held

20

21   ---
[4]   See also Wilson v. Taylor, 733 F.2d 1539, 1544 (11th Cir. 1984) (holding that dating relationship was a form of "intimate association" entitled to First Amendment protection); Anderson v. City of LaVergne, 371 F.3d 879 (6th Cir. 2004) (romantic and sexual relationship between unmarried man and woman who lived together was a form of "intimate association" entitled to constitutional protection under due process clause).
[5]   The challenged ordinance in Moore prohibited grandparents from living in the same house with their grandchildren. The Court struck it down as violative of due process. As Justice Stevens stated in his concurring

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 8

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

that "heightened scrutiny" applied because a "substantial privacy interest" was implicated by governmental intrusion with the freedom to choose one's living arrangements. Thorne, 726 F.2d at 471. "Accordingly, the City must show that its inquiry into appellant's sex life was justified by the legitimate interests of the police department, that the inquiry was narrowly tailored to meet those legitimate interests, and that the department's use of the information it obtained about appellant's sexual history was proper in light of the state's interests." Id. at 469. Like the defendants in this case, in Thorne the municipality argued that the job applicant's extra-marital affair would likely cause morale problems. Rather than simply accept this justification as constitutionally sufficient in the abstract, the Ninth Circuit rejected it because there was no evidence that this rationale applied to this particular job applicant. [6]

When a government rule causes "direct and substantial interference" with a person's intimate associations, the rule is subject to strict scrutiny. Akers v. McGinnis, 352 F.3d 1030, 1040 (6th Cir. 2003); Montgomery v. Carr, 101 F.3d 1117, 1124 (6th Cir.

---

opinion, the ordinance was unconstitutional because it cuts so deeply into a fundamental right normally associated with the ownership of residential property – that of an owner to decide who may reside on his or her property . . ." 431 U.S. at 520 (Stevens, J. concurring). The plurality opinion of Justice Powell struck the law down because "the Constitution prevents East Cleveland from standardizing its children – and its adults – by forcing them all to live in narrowly defined family patterns." 431 U.S. at 506.

[6] In words equally applicable to this case, the Ninth Circuit noted: "The affair was not a matter of public knowledge, and could not therefore diminish the department's reputation in the community. There was no reason to believe Thorne would engage in such affairs while on duty or that the affair which had ended was likely to cause morale problems within the department." 726 F.2d at 471.

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 9

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1    1996).  A government restriction on the right of intimate association is "direct and

2    substantial" when "a large portion of those affected by the rule are absolutely or largely

3    prevented from [forming intimate associations], or where those affected by the rule are

4    absolutely or largely prevented from [forming intimate associations] with a large portion

5    of the otherwise eligible population of [people with whom they could form intimate

6    associations]."

7        In this case, there can be little doubt that Major Witt's homosexual relationship

8    was a constitutionally protected "intimate association."[7]  Nor can there be any doubt

9    about the fact that the statute and Air Force regulations at issue "absolutely prevent" Air

10   Force personnel   from forming intimate associations "with a large portion of the

11   otherwise eligible population," since they completely prohibit her from forming such a

12   relationship with another woman.  Therefore, the statute and the regulations impose a

13   "direct and substantial" restriction upon Major Witt's constitutionally protected right of

14   intimate association, and consequently they trigger strict scrutiny.  Akers, 352 F.3d at

15   1040.[8]

16

17   _____

     [7] The defendants have not denied the fact that Major Witt engaged in a "committed and loving long term
18   relationship with a civilian woman from July 1997 through August of 2003." *Decl. Major Witt*, ¶¶12-14;
     *Complaint* ¶27.  Clearly this relationship was precisely the type of small, highly selective, and seclusive
     relationship that the Roberts decision contemplated.

19   [8] Even assuming, arguendo, that some lesser constitutional standard applies, the Thorne decision unequivocally
     establishes that in this Circuit, unless Government can prove that an intimate relationship with another person
20   will have an adverse impact upon job performance, any governmental burden placed upon the exercise of that
     constitutionally protected freedom cannot be sustained even under minimum scrutiny:

21
         In the absence of any showing that private, off-duty, personal activities of the type protected
         by the constitutional guarantees of privacy and free association have an impact upon an
         applicant's on-the-job performance, and of specific policies with narrow implementing
         regulations, we hold that reliance on these private non-job related considerations by the

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 10

CARNEY
BADLEY
SPELLMAN

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1

2    **2.    IN THE ALTERNATIVE, MID-TIER OR INTERMEDIATE SCRUTINY APPLIES TO "SIGNIFICANT" LIBERTY INTERESTS, AND REQUIRES THE GOVERNMENT TO JUSTIFY THE PARTICULAR APPLICATION OF THE LAW TO THE PARTICULAR INDIVIDUAL AT HAND.**

3

4         Defendants propose a false dichotomy in which rights are protected either by strict

5    scrutiny or rational basis review.  They contend that <u>Lawrence</u> did not apply strict

6    scrutiny to the Texas sodomy law, and therefore it must have merely applied the rational

7    basis test.[9]    But intermediate scrutiny is another alternative.  In fact, many cases that

8    decline to use rational basis review apply some form of heightened scrutiny that is short

9    of traditional strict scrutiny.

10

11        For example, a pretrial detainee has a "significant" liberty in avoiding the

12   unwanted administration of anti-psychotic drugs, but it does not rise to the level of a

     "fundamental" liberty interest. <u>Sell v. United States</u>, 539 U.S. 166, 178 (2003).  <u>See also</u>

13   <u>Riggins v. Nevada</u>, 504 U.S. 127, 136 (1992) (specifically rejecting a "strict scrutiny" test

14   for involuntary pretrial drug treatment).  Even if not protected by strict scrutiny, this

15   "significant" personal interest enjoys more judicial protection than the rational basis test.

16   The government must have an "important" government interest, even if not a

17   "compelling" one. <u>Sell</u>, 539 U.S. at 180.  Government must demonstrate that involuntary

18

19   ─────────────────────────────

          [Government] in rejecting an applicant for employment violates the applicant's
20        constitutional interests and *cannot be upheld under any level of scrutiny*.

     <u>Thorne</u>, 726 F.2d at 471 (bold italics added).
21   [9]   This reasoning is completely at odds with the <u>Lawrence</u> Court's express holding that that the liberty interest
     it recognizes is entitled to "substantial protection." 539 U.S. at 572.  The right recognized in <u>Lawrence</u> would
     not afford "substantial protection" to homosexuals if it meant merely that the law would be stricken – just like

     ─────────────────────────────

     PLAINTIFF'S BRIEF IN OPPOSITION          **CARNEY**              LAW OFFICES
     TO DEFS' MOTION TO DISMISS                                  A PROFESSIONAL SERVICE CORPORATION
                                                **BADLEY**           701 FIFTH AVENUE, #3600
     NO. C06-5195 - 11                                              SEATTLE, WA 98104-7010
                                               **SPELLMAN**         FAX (206) 467-8215
                                                                    TEL (206) 622-8020

     WIT004 plds hf044201 6/5/06

1    medication "will significantly further" the important interests of rendering the detainee

2    competent to stand trial, and of insuring that his trial is a fair one. Id. at 181. It must also

3    show that that forced medication is "necessary" to further those interests. Id. Finally, it

4    must show that administration of the drugs is "medically appropriate, i.e., in the patient's

5    best medical interest in light of his medical condition." Id. Application of intermediate

6    scrutiny in these cases requires case-by-case adjudication. Id. at 181 ("Courts . . . must

7    consider the facts of the individual case in evaluating the Government's interest in

8    prosecution") (italics added).[10]

9        Similarly, the Court has employed a mid-level tier of judicial scrutiny to civil

10   cases involving governmental interference with the due process liberty interest of a

11   competent person to refusing unwanted medical treatment. Cruzan v. Director, 497 U.S.

12   261, 278 (1990). Once again this right has not been held to trigger strict scrutiny, but

13   neither has it been held that government interference with this right is subject merely to

14   the rational basis test. Instead, the Court has held that whether a person's constitutionally

15   protected substantive due process right has been violated "must be determined by

16   balancing his liberty interests against the relevant state interests." Id. at 279, citing

17   Youngberg v. Romero, 457 U.S. 307, 321 (1982). This balancing process is conducted

18

19

20

21   _any_ law disadvantaging any individual in any manner whatsoever, no matter how minor – if there is no
     conceivable set of facts where it would ever be rational to apply the law.
     [10] "Courts . . . must find that administration of the drugs is substantially likely to tender _the defendant_ competent
     to stand trial" and "must conclude" that the drugs are medically appropriate for "the patient . . . in light of _his_
     medical condition." 539 U.S. at 180-181 (italics added).

PLAINTIFF'S BRIEF IN OPPOSITION          **CARNEY**        LAW OFFICES
TO DEFS' MOTION TO DISMISS               **BADLEY**        A PROFESSIONAL SERVICE CORPORATION
                                                          701 FIFTH AVENUE, #3600
NO. C06-5195 - 12                        **SPELLMAN**      SEATTLE, WA 98104-7010
                                                          FAX (206) 467-8215
                                                          TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1  by examining the effect of the law "as applied" to the particular individual before the

2  Court, i.e., whether there was clear and convincing proof that this particular patient did

3  not want to continue to receive water and nutrition.

4      Aptheker v. Secretary of State, 378 U.S. 500 (1964) provides yet another example

5  of using mid-level scrutiny to test governmental interference with a protected liberty

6  interest.    There the Court held that the right to travel outside the country was "an

7  important aspect of the citizen's liberty guaranteed in the Due Process Clause . . ." Id. at

8  505.  Notwithstanding the fact that the challenged statute flowed from a Government

9  desire "to protect our national security," and the fact that this was a "legitimate and

10  substantial" reason for limiting the exercise of the plaintiffs' liberty interests, the Court

11  held that such restrictions could not be imposed by means which sweep unnecessarily

12  broadly and thereby invade the area of protected freedoms." Id. at 508-09.  The Court

13  noted that the law would apply not only to those who traveled overseas to plot the

14  overthrow of the U.S. government, but also to those who planned merely "to visit a sick

15  relative, to receive medical treatment," or for other wholly innocent purposes. Id. at 511.

16

17      If this Court concludes that mid-level scrutiny applies to the statutes and

18  regulations in this case, then clearly Major Witt's suit cannot be dismissed on a motion to

19  dismiss for failure to state a claim.  For it is entirely conceivable that the Government

20  would not be able to carry its burden of proving that the discharge of Major Witt would

21  significantly further any important interest.  Given the facts presented to this Court in

support of Major Witt's motion for a preliminary injunction, which have not been

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 13

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1  disputed by the Government, it is evident that her discharge would <u>harm</u> unit cohesion,

2  and that her immediate reinstatement to active duty would help unit morale and discipline.

3      **3.**    **IN THE ALTERNATIVE, A "MORE SEARCHING FORM" OF
   RATIONAL BASIS REVIEW APPLIES TO LAWS THAT
   INTERFERE WITH INTIMATE RELATIONSHIPS, OR WHICH
   APPEAR MOTIVATED BY A DESIRE TO HARM UNPOPULAR
   MINORITIES.**

6      Some courts and commentators believe that another form of heightened review is at

7  play even in cases that claim to be applying rational basis review. Commentators often call

8  it "rational basis with bite." See G. Pettinga, *Rational Basis With Bite: Intermediate*

9  *Scrutiny By Any Other Name*," 62 <u>Ind. L. J.</u> 779 (1987); G. Gunther, *In Search of Evolving*

10  *Doctrine on a Changing Court*," 86 <u>Harv. L. Rev.</u> 18-22 (1972). Most recently, Justice

11  O'Connor's concurrence in <u>Lawrence</u> stated that "a more searching form of rational basis

12  review" applies when a law appears to be motivated by a desire to harm a politically

13  unpopular group." <u>Lawrence</u>, 539 U.S. at 580 (O'Connor, J., concurring in the judgment).

14  <u>Accord</u> <u>Romer v. Evans</u>, 517 U.S. 620, 634 (1996), <u>citing</u> <u>Dept. of Agriculture v. Moreno</u>,

15  413 U.S. 528, 534 (1973) ("[I]f . . . equal protection of the laws means anything, it must at

16  the very least mean that a bare desire to harm a politically unpopular group cannot constitute

17  a <u>legitimate</u> governmental interest."

19      As the Ninth Circuit noted in <u>Pruitt</u>, to the degree that the Ninth Circuit's decision in

20  <u>Beller</u> rested on the assumption that prejudice against homosexuals by heterosexual service

21  members who despised homosexuality was a legitimate basis for banning homosexuals from

military service, "its reasoning is undercut by <u>Palmore v. Sidotti</u>, 466 U.S. 429, 433 (1984)

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 14

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1  where the Court held that the law may not give effect, directly or indirectly, to private biases.

2  Pruitt, 963 F.2d at 1165.  Moreover, the Pruitt Court noted that the Supreme Court's later

3  decision in City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 448 (1985) "made

4  clear that this principle is not confined to instances of racial discrimination reviewed under

5  strict scrutiny." Id.

6      Similarly, in her concurring opinion in Lawrence Justice O'Connor noted that this

7  more stringent type of rational basis review employed in cases like Cleburne is most likely to

8  apply in cases "where, as here, the challenged legislation inhibits personal relationships." Id.

9

10      In Department of Agriculture v. Moreno, for example, we held that a law preventing those households containing an individual unrelated to any other member of the household from receiving food stamps, violated equal protection because the purpose of the law was to "discriminate against hippies." The asserted governmental interest in preventing food stamp fraud was not deemed sufficient to satisfy rational basis review. In Eisenstadt v. Baird, we refused to sanction a law that discriminated between married and unmarried persons by prohibiting the distribution of contraceptives to single persons. Likewise, in Cleburne v. Cleburne Living Center, we held that it was irrational for a State to require a home for the mentally retarded to obtain a special use permit when other residences – like fraternity houses and apartment buildings – did not have to obtain such a permit.

16  Lawrence, 539 U.S. at 580 (O'Connor, J., concurring) (citations omitted).

17      Under this stricter rational basis test, the challenged law must be rational as applied

18  to the litigant before the Court, and cannot rely solely on animus.  Thus in Cleburne the

19  Court held that the challenged municipal law violated Equal Protection because it was not

20  rational to apply it to the particular group home that had brought suit:

21      Because in our view the record does not reveal any rational  basis for believing that *the Featherston home* would pose any special threat to the

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 15

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1

2

city's legitimate interests, we affirm the judgment below insofar as *it holds the ordinance invalid as applied in this case*.

3

473 U.S. at 448 (1985) (bold italics added).

4

5

6

7

**4.    DEFENDANTS' ASSERTED INTERESTS DO NOT SATISFY ANY OF THE POTENTIAL STANDARDS, AND DO NOT JUSTIFY AN AIR FORCE POLICY THAT ALLOWS CLOSETED HOMOSEXUALS TO SERVE, ALLOWS HETEROSEXUALS TO ENGAGE IN HOMOSEXUAL CONDUCT, BUT DISCHARGES HOMOSEXUALS WHO ACKNOWLEDGE OR ACT ON THEIR SEXUAL ORIENTATION.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

It is difficult to tell from Defendants' briefing exactly why it harms the Air Force to allow Major Witt to continue her career and her excellent record of service. Defendants' brief discusses the ban on homosexual conduct on a global level, without any consideration of whether any governmental interests (rational, important or compelling) are served by this officer. She was a reservist who had an intimate sexual relationship hundreds of miles away from McChord Air Force Base. She was always discreet, not discussing her sexual orientation on base. As in Watkins, many of her colleagues assumed she was gay even though she did not say so, yet this did not have any impact upon their respect for her abilities or their teamwork. To the contrary, discharging Major Witt will harm morale, and the initiation of discharge proceedings against Major Witt has already led at least one officer to leave the service. As demanded by the 12(b)(6) standard enunciated it already led at least one officer to leave the service. As demanded by the 12(b)(6) standard enunciated in Pruitt the government cannot obtain a judgment without putting forward actual evidence and giving Major Witt an opportunity to contest it.

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 16

WITT004 plds hf044201 6/5/06

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1    Turning to Defendants' global justification of the so-called "Don't Ask, Don't Tell"

2    policy, it is evident that a set of facts could be proven, consistent with the allegations of the

3    complaint, under which the policy would be found to lack rational basis, or otherwise fail

4    heightened scrutiny when performed on a developed record. If the suit goes forward, Major

5    Witt will build upon the proof that has begun in her preliminary injunction briefing and

6    demonstrate that the government cannot overcome the constitutional rights recognized in

7    Lawrence and Marcum. The system the Air Force must defend is one that allows closeted

8    homosexuals to serve, allows heterosexuals to engage in occasional acts of homosexual

9    conduct, but discharges homosexuals who acknowledge or act on their sexual orientation.

10   No strong reasons (or even weak ones) can support a policy like this.

11

12   Defendants' explanation for their policy is couched in vague euphemisms about

13   "sexual tension" and "privacy." Carefully examined in light of the evidence that could be

14   presented at trial, neither of these terms have any substance. Indeed, most of Defendants'

15   arguments are completely circular.    The military should not allow persons with a

16   homosexual orientation to serve, the Defendants say, because they are likely to be sexually

17   attracted to persons of the same sex. This simply restates the definition of homosexual

18   orientation; it does not provide a principled reason for treating homosexual persons

19   differently. In fact, it is a particularly bad reason to support the existing policy, which allows

20   gay and lesbian service members to remain in service so long as they pretend to be

21   heterosexual or asexual.    Under Defendants' policy, the attractions will remain.    If

Defendants believe that the attractions themselves hinder unit cohesion, their policy does not

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 17

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1   address the issue. It likely makes the sexual tension more palpable, since closeted service

2   members are not allowed any exercise of their sexual or emotional feelings, even with

3   civilians off base. Meanwhile, the sexual tension theory simply validates a decision to

4   discriminate against gay and lesbian service members because of the subjective attractions

5   they feel as a result of their sexual orientation, which is discrimination on the basis of status

6   forbidden under Pruitt, Meinhold and Cammermeyer. The attack on status is made even

7   clearer by the exemption that allows persons who engage in homosexual conduct to remain

8   in the military, so long as they demonstrate that their primary orientation is heterosexual.

9

10      The military, like every other facet of society, finds ways to function in a mixed-

11   gender environment, even though most people are heterosexual and will feel attraction to

12   persons of the opposite sex. Straight male soldiers will be attracted to straight female

13   soldiers, but we do not respond by barring either straight males or straight females from the

14   military. Instead, we expect our volunteer military to behave professionally, with any issues

15   relating to inappropriate romantic attractions being handled through rules regarding

16   fraternization and sexual harassment. Defendants presume, without any evidence, that gay

17   and lesbian service members are somehow less able to behave professionally around their

18   colleagues than heterosexual service members are.

19      If by "privacy" the military means straight service members' desire not to associate

20   with gay men and lesbians, this is an impermissible interest. See Cleburne, Palmore, Romer

21   and Pruitt. If "privacy" means keeping heterosexual service members' bodies from the gaze

    of gay and lesbian service members, the policy is also invalid. In ordinary civilian life

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 18

WIT004 plds hf044201 6/5/06

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1   straight people encounter gay people, even in settings involving some level of undress such

2   as public bathrooms and locker rooms.  There is no legitimate interest in keeping service

3   members insulated from mere exposure to gay people.  Of course, even if this was a

4   legitimate interest, the actual policy would not further it because heterosexual service

5   members' bodies are already exposed to the gaze of all the homosexual service members

6   who keep their sexual orientation secret.

7       The irrationality of the policy is further illustrated by the testimony of Professor Kier,

8   who notes that countries all over the world have allowed homosexuals to serve openly in

9   their armed forces, and no deleterious effects on unit cohesion or military effectiveness have

10  resulted from their open integration into the military ranks.  *Declaration of Elizabeth Kier*,

11  ¶¶ 11-15.   Moreover,  the very existence of the "don't ask/don't tell" policy makes it

12  impossible for anyone to conduct any empirical research to test the defendants' contention

13  that allowing homosexuals to serve openly would harm unit cohesion in the U.S. military

14  forces.   *Decl. Kier*, ¶16.   See also Tobias Wolff, *Political Representation and*

15  *Accountability Under Don't Ask, Don't Tell*, 89 Iowa L. Rev. 1633, 1683 (2004).

16

17  **C.   AFTER LAWRENCE, EQUAL PROTECTION ANALYSIS MUST ALSO
    RECEIVE SOME FORM OF HEIGHTENED SCRUTINY.**

18      The observations above apply equally to equal protection analysis.   The equal

19  protection analysis from Phillips v. Perry, 106 F.3d 1420 (9th Cir. 1997), is no longer

20  binding[11] because (just like Beller and the other substantive due process cases) its

21

---

[11]   If, notwithstanding these arguments, this court believes that it is bound by Phillips, and the case goes up to the Ninth Circuit on appeal, Major Witt intends to seek reversal of that decision from the en banc court.

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 19

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1  underlying premises were altered by <u>Lawrence</u>. As Justice Kennedy's majority opinion

2  explained:

> 3  As an alternative argument in this case, counsel for petitioners and some
>    amici contend that <u>Romer</u> provides the basis for declaring the Texas statute
> 4  invalid under the Equal Protection Clause. That is a tenable argument. . . .
>    Equality of treatment and the due process right to demand respect for
> 5  conduct protected by the substantive guarantee of liberty are linked in
>    important respects, and a decision on the latter point advances both interests.
> 6  If protected conduct is made criminal and the law which does so remains
>    unexamined for its substantive validity, its stigma might remain even if it
> 7  were not enforceable as drawn for equal protection reasons.   When
>    homosexual conduct is made criminal by the law of the State, that
> 8  declaration in and of itself is an invitation to subject homosexual persons to
>    discrimination both in the public and in the private spheres.

10  539 U.S. at 575-76 (emphasis added).  Thus, one of the reasons <u>Lawrence</u> rejected the

11  punitive rule of <u>Bowers v. Hardwick</u>, 478 U.S. 186 (1986) was because it led to

12  discrimination, the main concern of the equal protection clause and a central problem in the

13  current case.   Justice O'Connor's concurrence explicitly adopted an equal protection

14  framework.  Like the majority, Justice O'Connor was also concerned that criminalizing

15  sexual relations between persons of the same sex would result in anti-gay discrimination in

16  other settings:

> 17  And the effect of Texas' sodomy law is not limited to the threat of
>    prosecution or consequence of conviction. Texas' sodomy law brands all
> 18  homosexuals as criminals, thereby making it more difficult for homosexuals
>    to be treated in the same manner as everyone else. Indeed, Texas itself has
> 19  previously acknowledged the collateral effects of the law, stipulating in a
>    prior challenge to this action that the law "legally sanctions discrimination
> 20  against [homosexuals] in a variety of ways unrelated to the criminal law,"
> 21  including in the areas of "employment, family issues, and housing."

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 20

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1  Id. at 581-82 (original punctuation; citation omitted). See also id. at 583 (quoting majority's

2  language about "an invitation to discrimination").

3  Hence, the need for heightened scrutiny – and the inadequacy of Defendants'

4  proffered justifications – plays out similarly under the equal protection clause as it does

5  under substantive due process.

6  **D. THE COURT SHOULD NOT DISMISS MAJOR WITT'S FIRST AMENDMENT CLAIMS**

7

8  The documents initiating Major Witt's discharge state that she is to be separated

9  because she made some statement acknowledging that she was a homosexual. See

10 *Attachment 2 to Letter of Notification, Complaint, Appendix G.* Major Witt does not believe

11 that she made any such statement, and the 1st Amendment claims in her Complaint are

12 intended, in part, to put Defendants to their proof. If Defendants will forthrightly state that

13 they will not try to discharge Major Witt on the basis of any statement she made, this would

14 obviously change the tenor of her 1st Amendment claims. The present facts, however,

15 support two 1st Amendment claims, and neither should be dismissed on a 12(b)(6) motion.

16  **1. THE RIGHT TO FREEDOM OF INTIMATE ASSOCIATION**

17  As noted above, the Supreme Court has recognized a "fundamental" First

18 Amendment right to freedom of intimate association, which is not restricted to family

19 members. Rotary Club, 481 U.S. at 545 This First Amendment right protects one's choice

20 of living partners. Moreno, 413 U.S. at 542-44 (Douglas, J. concurring).[12] Whether the

21

---

[12] "We deal here, however, with the right of association, protected by the First Amendment. . . The right of association, the right to invite the stranger into one's home is too basic in our constitutional regime to deal with

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 21

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1    issue is analyzed as a right of intimate association under the First Amendment, or as an

2    aspect of substantive due process as described above, Major Witt states a claim. Absent

3    proof that an employee's intimate association with another person has an adverse effect upon

4    the employee's job performance, refusal to employ that person "cannot be upheld under any

5    level of scrutiny." Thorne, 726 F.2d at 471.

6    ## 2.    THE RIGHT TO FREEDOM OF SPEECH

7        Major Witt recognizes, as she must, that the majority opinions in Holmes rejected the

8    contention that the military's "don't ask/don't tell" violates the First Amendment by

9    infringing upon the right of freedom of speech.    But Holmes is necessarily rooted in

10   Bowers. Dissenting in Holmes, Judge Reinhardt voiced his confident belief "that someday a

11   Supreme Court . . . will repudiate Bowers in the same way that a wise and fair-minded Court

12   once repudiated Plessy." Holmes, 124 F.3d at 1137 (Reinhardt, J., dissenting). That day has

13   now come: The Supreme Court did expressly overrule Bowers in Lawrence. Since that

14   development came six years after Holmes was decided, there is a strong basis for concluding

15   that Holmes is no longer good law, and that consequently this Court is free to adopt the

16   position taken by the dissent.

17

18   ## E.    PROCEDURAL DUE PROCESS CLAIMS

19       As noted in plaintiff's reply brief in support of her motion for a preliminary

20   injunction, the defendants have not offered any persuasive reasons why she should not

21

roughshod. . . . The 'unrelated' person provision of the present act has an impact on the rights of people to associate for lawful purposes with whom they choose. When state action 'may have the effect of curtailing the freedom to associate' it 'is subject to the closest scrutiny.'"

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 22

**CARNEY
BADLEY
SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1    prevail on both of her procedural due process claims. *Plaintiff's Reply Brief*, pp. 5-11. The

2    defendants have failed to offer any reason why Major Witt should not prevail on her

3    irrebuttable presumption procedural due process claim brought pursuant to Cleveland Board

4    of Education v. LaFleur, 414 U.S. 632 (1974).

5        As to the plaintiff's claim that her right to a reasonably prompt post-deprivation

6    hearing has been violated, defendants' made two patently erroneous responses. First, they

7    argued that Major Witt has no protected liberty interest at stake, ignoring well established

8    law to the contrary pertaining to military discharges where the Government seeks to

9    stigmatize the servicemember by granting a discharge that is not an Honorable Discharge.

10   See, e.g., Weaver v. United States, 46 Ct. Cl. 69 (2000). Second, defendants erroneously

11   argued that Major Witt could not bring this claim in federal court because she had not

12   exhausted available administrative remedies by seeking relief from the Air Force Board for

13   Correction of Military Records. This argument failed to recognize that such administrative

14   relief is not presently available, and ignored binding Circuit precedent that establishes that

15   such relief is only available after discharge. Correa v. Clayton, 563 F.2d 396, 399 (9th Cir.

16   1977). The defendants made no effort whatsoever to justify the period of 18 months which

17   has now transpired without affording Major Witt any hearing whatsoever. Thus it is evident

18   that Major Witt will quite likely prevail on these two claims, and in any event it can hardly

19   be said that it is "beyond doubt" that there is no set of facts under which she could prevail.

20

21

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 23

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

WIT004 plds hf044201 6/5/06

1    **F.     CONCLUSION**

2         For all of the reasons stated above, plaintiff asks this Court to deny the defendants'

3    motion to dismiss for failure to state a claim.

4         DATED this 5th day of June, 2006.

5                                            CARNEY BADLEY SPELLMAN, P.S.

6

7                                 By s/ James E. Lobsenz
                                       James E. Lobsenz, WSBA #8787
8                                      Nicki D. McCraw, WSBA #20533
                                       On Behalf of the American Civil Liberties
9                                      Union of Washington State
                                       Attorneys for Plaintiff
10
                                       CARNEY BADLEY SPELLMAN, P.S.
11                                     701 Fifth Avenue, Suite 3600
                                       Seattle, WA 98104
12                                     Telephone: (206) 622-8020
                                       Facsimile: (206) 622-8983
13                                     E-Mail: lobsenz@carneylaw.com
                                       E-Mail: mccraw@carneylaw.com
14
                                       THE AMERICAN CIVIL LIBERTIES UNION –
15                                     WASHINGTON STATE

16

17                                By s/ Aaron Caplan
                                       Aaron Caplan, WSBA #22525
18                                     ACLU Staff Attorney for Plaintiff
                                       ACLU of Washington
19                                     705 Second Avenue
                                       Seattle WA 98104
20                                     Telephone: (206)624-2184
                                       E-Mail: caplan@aclu-wa.org
21

PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFS' MOTION TO DISMISS
NO. C06-5195 - 24

WIT004 plds hf044201 6/5/06

**CARNEY**
**BADLEY**
**SPELLMAN**

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION
701 FIFTH AVENUE, #3600
SEATTLE, WA 98104-7010
FAX (206) 467-8215
TEL (206) 622-8020

1

## CERTIFICATE OF SERVICE

2

3

4   I hereby certify that on June 5, 2006, I electronically filed the foregoing with the Clerk of
    the Court using the CM/ECF system which will send notification of such filing to the
5   following:

6   James E. Lobsenz        Lobsenz@carneylaw.com
    Nicki D. McCraw         McCraw@carneylaw.com
7   Aaron Caplan            caplan@aclu-wa.org
    Peter J. Phipps`        peter.phipps@usdoj.gov
8   Marion J. Mittet        Jamie.mittet@usdoj.gov

9

10

11                              _Deborah A. Groth_
12                              DEBORAH A. GROTH

13

14

15

16

17

18

19

20

21

PLAINTIFF'S BRIEF IN OPPOSITION          **CARNEY**          LAW OFFICES
TO DEFS' MOTION TO DISMISS               **BADLEY**      A PROFESSIONAL SERVICE CORPORATION
NO. C06-5195 - 25                        **SPELLMAN**         701 FIFTH AVENUE, #3600
                                                          SEATTLE, WA 98104-7010
                                                          FAX (206) 467-8215
                                                          TEL (206) 622-8020

WIT004 plds hf044201 6/5/06