HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAJOR MARGARET WITT,

　　　　　　　Plaintiff,

　　v.

UNITED STATES DEPARTMENT OF THE
AIR FORCE; DONALD H. RUMSFELD,
Secretary of Defense; MICHAEL W.
WYNNE, Secretary of the Department of Air
Force; and COLONEL MARY L. WALKER,
Commander, 446th Aeromedical Evacuation
Squadron, McChord AFB,

　　　　　　　Defendants.

Case No. C06-5195 RBL

ORDER

THIS MATTER is before the court on Plaintiff's Motion for a Preliminary Injunction [Dkt. #8] and Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) [Dkt. #24]. At issue is the constitutionality of 10 U.S.C. §654, the so called "Don't Ask, Don't Tell" ("DADT") policy regarding homosexuals in the military.

Plaintiff argues primarily that the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003), established the right to engage in homosexual relations as fundamental. Under *Lawrence*, Witt argues, DADT's constitutionality must be reviewed under a higher level of scrutiny than the rational basis review which courts have applied in the past. Rational basis review requires only that government have a legitimate interest in regulating the conduct at issue.

1    Defendants argue that *Lawrence* did not change the level of scrutiny to be applied to regulations

2    and policies applicable to homosexuals, and that DADT continues to pass constitutional muster following

3    *Lawrence*, as it did before that opinion was rendered.

4    Plaintiff, Major Margaret Witt, is a highly decorated, well-respected flight nurse in the United

5    States Air Force Reserves. She was a Standards and Evaluations Flight Commander with management

6    responsibility for more than 200 flight nurses and medical technicians. She has been used extensively as a

7    role model in Air Force recruiting publications.

8    In the Summer of 2004, the Air Force began investigating an apparently anonymous allegation that

9    Major Witt was a lesbian. It was specifically alleged that Major Witt had been in a homosexual relationship

10    with a civilian woman from July 1997 through August 2003. The woman with whom Witt was involved

11    was never a member of the Air Force or any other branch of the military. The alleged acts occurred in the

12    home the women shared in Spokane, Washington, across the state from Major Witt's duty station at

13    McChord Air Force Base, outside of Tacoma, Washington. It is agreed that Witt did not ever engage in

14    homosexual conduct on the base, or with a member of the military. At the same time, Witt does not

15    dispute that she is a lesbian and that she did participate in a homosexual relationship.

16    Although Witt did not make any disclosures regarding her sexual orientation either before or during

17    the investigation, the investigating officer correctly concluded that the allegations were true, and that Witt

18    had engaged in homosexual relations with her civilian partner. In November 2004, Witt was informed that

19    separation proceedings would be initiated against her under the DADT policy. She was precluded form

20    working and from earning pay or points toward promotion and pension, pending final resolution of the

21    separation action. Sixteen months later, on March 6, 2006, Witt was notified that the Air Force had

22    initiated the separation process. Witt was notified of her right to request a hearing before an

23    administrative discharge board if she wished to contest the separation. She immediately did so, but no

24    hearing has yet been scheduled. The government's counsel suggested at oral argument that such a hearing

25    will likely be scheduled by August or September of 2006.

26    In the meantime, Witt commenced this action. She seeks a preliminary injunction allowing her to

27    continue working and earning points toward promotion and her pension, and precluding the government

28    from following through on its stated intent to separate her from service. She challenges DADT's

1    constitutionality on three bases: (1) Substantive Due Process, based on *Lawrence*; (2) Equal Protection;

2    and (3) the First Amendment.  She also argues that her right to Procedural Due Process was violated,

3    based on the fact that she has not had a hearing more than a year and a half after she was suspended.  She

4    argues that scheduling a hearing at this date cannot cure the violation and seeks as a remedy to preclude

5    the government from processing her separation.

## ANALYSIS

6

7    **I.      Fed. R. Civ. P. 12(b)(6) Standard**

8            A court may dismiss a claim if it appears beyond doubt that the plaintiff can prove no set of facts to

9    support the claim that would entitle the plaintiff to relief.  *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th

10   Cir. 1983) (*citing Conley v. Gibson*, 355 U.S. 41, 45-56 (1957)).  Dismissal may be based on either the

11   lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

12   *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are

13   taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d

14   1295 (9th Cir. 1983).  However, a plaintiff must plead factual allegations with specificity; vague and

15   conclusory allegations of fact fail to state a claim for relief.  *Colburn v. Upper Darby Township*, 838 F.2d

16   663, 666 (3rd Cir. 1988).  If a claim is based on a proper legal theory but fails to allege sufficient facts, the

17   plaintiff should be afforded the opportunity to amend the complaint before dismissal.  *Keniston*, 717 F.2d

18   at 1300. If the claim is not based on a proper legal theory, the claim should be dismissed.  *Id.*

19           The Ninth Circuit has held since 1997 that discharge under DADT does not violate the Fifth

20   Amendment's Equal Protection clause or the First Amendment's right to Freedom of Speech.  *See Holmes*

21   *v. California National Guard,* 124 F.3d 1126 (1997) and *Phillips v. Perry*, 106 F.3d 1420 (1997).  This

22   Circuit has also consistently held that the pre-DADT policies and regulations regarding gays in the military

23   did not violate a service member's right to substantive due process.  *See Schowengerdt v. United States*,

24   944 F.2d 483 (9th Cir.).  The result in *Schowengerdt* was mandated by the Supreme Court's decision in

25   *Bowers v. Hardwick*, 478 U.S. 186 (1986), a case that upheld Georgia's anti-sodomy statute using rational

26   basis review.

27           In 2003, the Supreme Court's opinion in *Lawrence* expressly overruled *Bowers*.  It did so without

28   making clear whether a new, higher standard of review is to be applied in cases involving regulation of

homosexual conduct. The opinion employed language that in places suggests rational basis review should be applied, and in other places seems to imply that a higher level of scrutiny is required.  It is the *Lawrence* decision that plaintiff relies upon to support her Substantive Due Process argument, and it is the meaning of this relatively recent opinion that is the focal point of this court's inquiry here.

## II.    Substantive Due Process Analysis

### A.    *Lawrence v. Texas*

In 2003, the United States Supreme Court decided *Lawrence v. Texas.*  At issue was the constitutionality of the Texas "Homosexual Conduct" law.  The Court held that the Texas anti-sodomy statute, which criminalized private consensual sodomy, was unconstitutional.  In the process, the Court expressly overturned *Bowers v. Hardwick*, a case decided seventeen years earlier.  Although the Court made clear its disdain for the Texas law and its complete rejection of the holding in *Bowers*, it left for others to ponder the precise formula it employed in reaching those conclusions.  Some observers, including plaintiff's counsel, argue that the Court changed the constitutional landscape by defining private, consensual, same sex intimacy as a fundamental right, the regulation of which may be justified only by a compelling state interest which must be narrowly drawn to express only those interests.  Plaintiff points out that the majority in *Lawrence* relied heavily on cases that recognized a constitutionally protected autonomy to make personal sexual decisions, to wit: *Griswold v. Connecticut,* 381 U.S. 479 (1965) (the right of a marital couple to access contraceptives); *Eisenstadt v. Baird*, 405 U.S. 438 (1972) (the right of individuals, married or unmarried, to access contraceptives); *Roe v. Wade*, 410 U.S. 113 (1973) (the right to an abortion); and *Carey v. Population Services Int'l*, 431 U.S. 678 (1977) (the right to distribute contraceptives).  That those cases all involved strict scrutiny analysis of regulations affecting fundamental rights suggest to plaintiff that private, consensual, same-sex intimacy was accorded the status of a fundamental right by the *Lawrence* majority.  Plaintiff argues that DADT cannot withstand the strict scrutiny demanded by *Lawrence*.

Plaintiff argues in the alternative that the *Lawrence* court, at the very least, defined the liberty interest at stake so as to require an intermediate standard of review, a "searching constitutional inquiry." *United States v. Marcum*, 60 M.J. 198, 204 (C.A.A.F. 2004).  The *Lawrence* court defined the liberty interest as one that "gives substantial protection to adult persons in deciding how to conduct their private

lives in matters pertaining to sex". *Lawrence*, 539 U.S. at 572.  In a series of post-*Lawrence* decisions, military courts of appeal have employed a three-part test[1] aimed at implementing the "searching constitutional inquiry" inferred by that Court from its reading of *Lawrence*.  Military Courts have on several occasions, subjected military regulations criminalizing sodomy to "as applied" analysis of the facts and context of a particular case to see how the interests of the military balance against the rights of a service member.  *See United States v. Marcum*, and *United States v. Stirewalt*, 60 M.J. 297 (C.M.A. 2004).  In those cases the criminalization of sodomy was affirmed because the acts occurred under circumstances casting doubt on the element of consent.

Despite the fact that the *Marcum* test has only been applied in cases where there has been constitutional challenges to the criminalization of sodomy, plaintiff urges this Court to engage in an "as applied" analysis.  She argues that her exemplary military service coupled with the fact that the conduct in question applied off-base, in private, with a consenting adult, tip the balance in her favor and compels a decision that DADT is unconstitutional as applied to her.

If the Court finds those arguments unpersuasive, plaintiff argues that even under rational basis review, the military has no legitimate interest in enforcing the DADT regulations against homosexual service members.  Reference is made to past efforts to stop the integration of blacks and women into the armed forces; efforts bolstered by arguments that history and common sense proved wrong.  More to the point, plaintiff cites internal studies of the Defense Department that have reached the conclusion that there is no evidence to support the military's discriminatory policy toward homosexuals.[2]  Plaintiff argues further that the government policy is counterproductive to unit cohesion and military effectiveness, in part, because it promotes prejudice and dishonesty among comrades in arms.

This Court is not unsympathetic to the situation in which Major Witt currently finds herself.  Within the military context, she did not draw attention to her sexual orientation, and her colleagues value her contribution to their unit and apparently want her back.  She has served her country faithfully and with

---

[1]First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court [in *Lawrence*]?  Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*?  539 U.S. at 578.  Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

[2]The 1957 Crittenden Report and the 1988 PERSEREC Report cited at paragraphs 34-35 of Kier Declaration [Dkt. #19].

distinction.  It is tempting to accept plaintiff's urging to apply DADT narrowly within the context of Margaret Witt's individual circumstances.  This the Court cannot do.

The question before this Court renews the tension between competing notions of liberty expressed within the Constitution and the Bill of Rights.  One concept of liberty is the interest in expanding individual rights.  The other reflects on the ability of a free people to govern themselves.  The expansion of one often times occurs at the expense of the other.  The judicial branch of the government has a critical but restrained role to play as these core ideals evolve in a modern society.  As the Supreme Court has observed previously: "A substantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires the Supreme Court to exercise the utmost care whenever it is asked to break new ground in such field." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (*citing Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)).

Viewing the written opinion of *Lawrence* through the lens of judicial self-restraint, the Court is convinced that *Lawrence v. Texas* did not change constitutional jurisprudence in a way that impacts the validity of DADT.

First, the holding in *Lawrence* states: "The Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual."  539 U.S. at 578.  This is classic language used in rational basis analysis.

Second, the Court did not engage in any inquiry to determine whether the law in question was narrowly tailored to meet a compelling state interest.  That "as applied" analysis is required as a part of any strict scrutiny or intermediate review.

Third, the absence of a clear statement that the Court was changing the level of scrutiny directed to laws regulating private, consensual same sex intimacy was no accident.  In a vigorous dissent Justice Scalia repeatedly reminded the Court that it had applied rational basis review and reached a conclusion with which he disagreed.  It is not unreasonable to expect that if the majority thought the dissenting judges misunderstood a material aspect of the opinion, it offer up a succinct, clear clarification.  It did not.  This Court concludes that *Lawrence* is based on rational basis review; the same level of scrutiny applied by the Ninth Circuit Court of Appeals in upholding the constitutionality of DADT prior to *Lawrence*.  *See Holmes*, 124 F.3d 1126 and *Phillips*, 106 F.3d 1420.  The Ninth Circuit declined in *Hensala v. Dept. of the*

1    *Air Force*, 343 F.3d 951 (9th Cir. 2003) to decide whether *Lawrence v. Texas* effectively overruled

2    *Holmes*.  This Court agrees with the concurring opinion by Judge Tashima that it did not.

3            B.    Rational Basis Review

4            Rational basis review does not allow for the kind of balancing test between government interest and

5    interest of the individual advocated by the plaintiff.  In order to show that the statute and accompanying

6    regulations comprising DADT are invalid, plaintiff must show that they are not rationally related to any

7    legitimate governmental purpose.  *Heller v. Doe*, 509 U.S. 312, 320 (1993).  The bar is set very high for

8    plaintiff.  "Rational-basis review . . . is not a license for courts to judge the wisdom, fairness, or logic of

9    legislative choices."  *Id*. at 319.  A statute is presumed constitutional and the burden is on plaintiff to

10   negate every conceivable basis which might support it.  *Id*. at 320-21.  Courts are compelled under rational

11   basis review to accept a legislature's generalizations even when there is an imperfect fit between means and

12   ends.  *Id*. at 321.

13           Finally, Court review of Congressional enactments is especially deferential in the military context.

14   *Goldman v. Weinberger*, 475 U.S. 503, 508 (1986).  "It is difficult to conceive of an area of governmental

15   activity in which the courts have less competence."  *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973).

16           The government's rationale for DADT is that excluding from military service homosexuals who

17   engage in or have the propensity to engage in homosexual acts further discipline and combat readiness in

18   the military by preventing risks to unit cohesion posed by the presence of such homosexuals.  *See* 10

19   U.S.C. § 654(a)(15).  This conclusion on the part of Congress was reached following extensive hearings in

20   which testimony was received from military commanders, gay rights activists, experts in military personnel

21   policy and other interested civilians and members of the Armed Forces.  Moreover, these hearings received

22   the benefit of self-analysis conducted from within the Department of Defense.  The Congressional Record

23   on this topic is voluminous.  The government's interest in maintaining effective armed forces has been

24   repeatedly upheld by the Ninth Circuit, *Holmes,* 124 F.3d at 1133, and every court, before and after

25   *Lawrence,* has upheld the constitutionality of DADT under rational basis review.  *See also Cook v.*

26   *Rumsfeld*, 429 F. Supp.2d 385 (D. Mass. 2006).  It is not for this Court, on rational basis review, to

27   conduct a re-weighing of the evidence that was before the legislative decision-makers.  *See Rotsker v.*

28   *Goldberg,* 453 U.S. 57, 82-83 (1981).  Don't Ask, Don't Tell represents a rational response to a legitimate

1  governmental concern.

2  **III.    Equal Protection Analysis**

3        The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to

4  any person within its jurisdiction the equal protection of the laws.  In other words, persons similarly

5  situated should be treated alike.  *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439

6  (1985).  It is generally accepted that the Due Process clause of the Fifth Amendment imposes an equal

7  protection obligation upon the federal government as well.  *High Tech Gays v. Defense Indus. Sec.*

8  *Clearance Office*, 895 F.2d 563, 570 (9th Cir. 1990).

9        Since homosexuals do not constitute a suspect or quasi-suspect class, the Ninth Circuit Court of

10  Appeals subjected DADT to rational basis review.  In *Holmes*, the Court upheld DADT under rational

11  basis review and that holding was not affected by the later Supreme Court decision in *Lawrence*.

12  **IV.    First Amendment Analysis**

13        The plaintiff's complaint alleges that any discharge of Major Witt pursuant to DADT would violate

14  the free speech clause of the First Amendment. [Complaint, para. 33, Dkt. #1].  The Ninth Circuit has

15  decided the issue where, as here, the discharge was for conduct, and not merely for speech.  The *Holmes*

16  court cited to *Thomasson v. Perry*, 80 F.3d 915 (4th Cir. 1996) and *Pruitt v. Cheney*, 963 F.2d 1160, 1164

17  (9th Cir. 1991) in support of its holding.  In *Thomasson*, the Navy discharged Lieutenant Thomasson after

18  he submitted a written statement indicating that he was gay and then failed to rebut the presumption by

19  presenting any specific evidence that he did not engage, nor intend to engage, in homosexual acts.  The

20  Fourth Circuit held that the statement prong of DADT is not directed at speech and therefore does not

21  violate the First Amendment.

22        Pruitt was discharged under the pre-DADT regulations when she admitted her homosexual

23  orientation.  Pruitt, a Methodist minister and U.S. Army reservist gave an interview to the Los Angeles

24  Times in which she revealed that she was a lesbian and had twice gone through marriage ceremonies to

25  wed other women.  The Ninth Circuit ruled that her First Amendment rights were not violated by Pruitt's

26  discharge.  Although the Court did find that Pruitt's complaint presented a plausible equal protection claim,

27  that conclusion did not prevail when applied to DADT in subsequent cases.  Because this case involved

28  acknowledged homosexual conduct, albeit not on base, the First Amendment right to free speech is not

implicated.  Similarly, the action pursued by the Air Force is not based purely on Major Witt's status as a homosexual.  The status cases cited by plaintiff are therefore unavailing.

During oral argument, plaintiff's counsel borrowed from First Amendment case law to argue that private, consensual, same sex intimacy is a fundamental right.  Citing *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537 (1987), counsel pointed out that the Courts have recognized that the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights.  In *Rotary*, the international organization was advancing its prohibition of women members based, in part, on this claimed liberty interest.  The Supreme Court acknowledged that the First Amendment protects those relationships, including family relationships, that presuppose "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."  *Id.* at 545 (*citing Roberts v. United States Jaycees*, 468 U.S. 609, 619-620 (1984)).  In rejecting the argument, the Court cautioned that it had "not attempted to mark the precise boundaries of this type of constitutional protection."  *Id.* at 545.

Nearly twenty years after the *Rotary* decision, no court has applied its holding to same sex intimate conduct.  The *Rotary* decision, applied literally to the case at hand, would suggest that persons in the military do not have a fundamental constitutional right to limit their association to heterosexuals.  That is not the question confronting this Court.  The question before this Court is: "Does Congress have the authority to regulate the military in a manner which excludes persons who engage in homosexual conduct?"  For the reasons stated earlier, the Court believes the answer is in the affirmative.

## V.    Procedural Due Process Analysis

Plaintiff argues[3] that procedural due process requires a reasonably prompt post-suspension hearing.

---

[3]Plaintiff further argues DADT's irrebuttable presumption that homosexuals are unfit for service violates her procedural due process rights.  DADT requires the separation of a service member who has engaged in or sought to engage in homosexual conduct, unless he or she can establish the application of a series of exceptions to the policy.  These exceptions, found at 10 U.S.C. §654(b)(1)(A) through (E), apply only where the service member can establish that he or she is not a homosexual and is not likely to engage in any homosexual acts during his or her service.  DADT does not have any exceptions allowing a sexually active homosexual service member to remain in the service.
    Plaintiff's argument is based on the correct assertion that irrebuttable presumptions that burden liberty interests protected by substantive due process violate procedural due process. As discussed at length above, there is no liberty interest protected by substantive due process at stake here.  Plaintiff's argument that DADT creates a constitutionally impermissible irrebuttable presumption is therefore rejected.

She points out that she has been suspended from duty since November of 2004, during which time she cannot earn pay or earn points for promotion or pension. It was not until March 6, 2006 that plaintiff was notified that steps were being taken to separate her from the military. No discharge hearing has yet been scheduled. She advocates the Court should bar her separation as an appropriate sanction. The government, on the other hand, asserts that no property or liberty interest is at stake and procedural due process principles do not apply.

The central meaning of procedural due process is that parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. The right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1983) (internal citations omitted). In order to succeed on a procedural due process challenge there must be a 1) deprivation, 2) of property, liberty, or life, 3) without due process afforded by law.

The parties acknowledge that there is no property or life interest at stake in this dispute. As a reservist, plaintiff does not have a property interest in continued employment in the military. *Beller v. Middendorf* 632 F.2d 788 (9th Cir. 1980); *see also Guerra v. Scruggs*, 942 F.2d 270, 278 (4th Cir. 1991) (finding that there was no property interest in military employment and the Army had discretion to discharge personnel); *Knehans v. Alexander,* 566 F.2d 312, 314 (D.C. Cir. 1977); *Ampleman v. Schlesinger,* 534 F.2d 825, 827-29 (8th Cir. 1976); *Sims v. Fox*, 505 F.2d 857, 860-62 (5th Cir. 1974); *BenShalom v. Secretary of Army*, 489 F.Supp. 964, 971-72 (E.D. Wis. 1980). Plaintiff argues that a liberty interest is affected by the manner in which the Air Force may characterize her ultimate discharge: general or dishonorable. The liberty guaranteed by the Fourteenth Amendment [and Fifth Amendment] "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life . . . and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972). A liberty interest vests if there is imposed "a stigma or other disability that foreclose[s] . . . freedom to take advantage of other employment opportunities." *Id*. at 573. Plaintiff argues that a general or dishonorable discharge reflecting lack of fitness for military service triggers such a stigma.

The government argues no such stigma has yet occurred. The parties dispute what form of

1   discharge is likely in the case of Major Witt.  The government argues that an honorable discharge is most

2   likely.  The Court's own research suggests that 82% of all discharges under DADT[4] have been honorable.

3   Certainly, the distinction of Major Witt's career would support an honorable discharge.  Involuntary

4   separation from military service with an honorable discharge, absent something more, does not infringe

5   upon a constitutionally protected liberty interest.  *See Sims*, 505 F.2d at 862-63 (holding that liberty

6   interests are involved only when separation from the military is carried out in such a fashion as to

7   stigmatize the separated member, typically this would be a dishonorable discharge); *BenShalom,* 489

8   F.Supp. at 971-972; *Diliberti v. Brown*, 583 F.2d 950, 952 (7th Cir. 1978).

9          This Court does not believe that at the current time Major Witt has any liberty interest which

10  required an earlier hearing.  A service member does not have a liberty interest which would trigger due

11  process rights <u>prior</u> to her discharge, absent any showing that the stated reason for the discharge is untrue.

12  *See Guerra v. Scruggs*, 942 F.2d 270 (4th Cir. 1991).  Here, the plaintiff acknowledges the truthfulness of

13  the allegations that implicate DADT.  Nevertheless, military authorities may not be permitted to discharge

14  a service member with an unfair and derogatory characterization of their military service without full due

15  process being afforded.  *Canonica v. United States*, 41 Fed. Cl. 516 (1998).  Where the discharge is

16  honorable and carries no stigma or derogatory connotation, it may be validly accomplished without notice

17  and hearing.  *Lane v. Secretary of Army,* 504 F.Supp. 39 (D. Md. 1980), aff'd 639 F.2d 780 (4th Cir.

18  1980).  At this time there is no reason to believe that the discharge of Major Witt will be anything less than

19  honorable or that it will reflect any stigmatizing language or derogatory connotation.

20                                          **CONCLUSION**

21         Prior to *Lawrence v. Texas*, DADT had been found constitutional under equal protection analysis

22  and First Amendment case law.  Similar provisions had passed constitutional muster under substantive due

23  process review.  The majority opinion in *Lawrence* did not change the framework within which DADT

24  should be evaluated.  Accordingly, prior case law approving DADT is not affected and DADT remains

25  constitutional as a regulation upon individual conduct.  Moreover, plaintiff fails to demonstrate that her

26  interest in liberty is affected by the government's effort to separate her from military service.  There has

27  ──────────────

28          [4]Administrative separation under DADT results in a discharge characterized as Honorable, General, or Under Other
     Than Honorable Conditions.  Of those separated under DADT as of 2005, 82% were with an Honorable Discharge, 13% a General
     Discharge, and 5% an Other Than Honorable Discharge.  GAO Report, GAO-05-299, 3 (23 Feb. 2005).

1    been no violation of her procedural due process rights.  Accordingly, plaintiff cannot state a cause upon

2    which relief may be granted and, the government's motion to dismiss [Dkt. #24] is hereby **GRANTED.**

3    Plaintiff's motion for preliminary injunction [Dkt. #8] is **DENIED**.  All other pending motions are

4    **DENIED** as moot.

5         **IT IS SO ORDERED.**

6         DATED this 26th day of July, 2006.

7

8                                    _Ronald B. Leighton_
                                     RONALD B. LEIGHTON
9                                    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28