Judge Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAJOR MARGARET WITT,<br><br>              Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF<br>THE AIR FORCE, et al.,<br><br>              Defendants. | No. C06-5195 RBL<br><br>**DEFENDANTS' MOTION FOR<br>PROTECTIVE ORDER REGARDING<br>THE DEPOSITIONS OF UNIT<br>MEMBERS**<br><br>(Noted for Consideration on March 12,<br>2010, pursuant to Local Rule 7(d)(2)(b))<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

In challenging the Air Force's "Don't Ask, Don't Tell" policy, plaintiff seeks to depose members of her former unit, the 446th Aeromedical Evacuation Squadron (the "446th AES"). Those depositions should not be permitted because they would be disruptive to military affairs, undermining unit morale and unit cohesion by creating unreasonable annoyance and embarrassment. The proposed depositions would compromise the military's constitutionally protected important interest in unit morale and cohesion by subjecting unit members to questioning on the divisive topic of open homosexuality. Moreover, the proposed depositions of individual unit members would be unduly burdensome, particularly in light of their limited probative value. Plaintiff already has deposed two unit commanders, both of whom are better-

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 1

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

positioned than selected unit members to assess the overall impact plaintiff's presence had and would have on the unit. In the two depositions of unit commanders, plaintiff's counsel has made extensive inquiries into suspicions about the sexual orientations of members of the 446th AES. That kind of inquiry directed at selected unit members, while highly disruptive, would serve little purpose in light of the commanders' assessments, in light of the unit climate surveys that defendant already has provided to plaintiff, and in light of the fact that the Ninth Circuit remanded the case for consideration of the effects of plaintiff's sexual conduct on unit cohesion and morale – not for a free-floating fishing expedition into the sexual practices of the entire unit. Plaintiff has thus already received more reliable and relevant discovery regarding unit morale and cohesion from the Air Force than she could get through the proposed unit member depositions.

For these reasons, as explained more fully herein, good cause exists to prevent the depositions of members of the 446th AES, and a protective order should issue to that effect.

## BACKGROUND

This case is presently on remand from the Ninth Circuit. On appeal, the Ninth Circuit affirmed the Court's dismissal of plaintiff's equal protection challenge to the Air Force's "Don't Ask, Don't Tell" policy (the "DADT" policy), but reversed and remanded the Court's dismissal of plaintiff's substantive and the procedural due process claims. *See Witt v. Dep't of Air Force*, 527 F.3d 806, 812-13, 821 (9th Cir. 2008). Central to the Ninth Circuit's decision was its determination that plaintiff's substantive due process claim should be evaluated under an as-applied, heightened scrutiny framework consisting of three factors. Those three *Witt* factors are (1) whether unit morale and cohesion constitute important governmental interests; (2) whether the particular circumstances of plaintiff's discharge significantly further morale and unit cohesion; and (3) whether plaintiff's discharge was necessary to further unit cohesion and morale. *See id.* at 818. The Ninth Circuit determined that the first of those *Witt* factors was satisfied because the Air Force has an important governmental interest in unit morale and unit cohesion. *See id.* at 821. The remaining two factors are to be evaluated on remand. *See id.* The Ninth Circuit cautioned, however, that on remand the district court should be mindful of the deference owed the the government in military affairs. *See id.*

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 2

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

Discovery has commenced on remand. Plaintiff has deposed two commanders of the 446th AES: Colonel Janette Moore-Harbert, the current commander of the 446th AES, and Colonel (Ret.) Mary Walker, a former commander of the 446th AES. Plaintiff has now also noticed the depositions of five current Reserve service members: Capt. Jill (Brinks) Robinson; Master Sgt. Stacey Julian; Master Sgt. Leah Crawford; Lt. Col. Kenneth Winslow; and Lt. Col. Thomas Hansen; as well as the deposition of one retired member of the 446th AES, Capt. (Ret.) Ed Hrivnak, who is married to a current member of the 446th AES. These six depositions have been noticed for March 16, 17, and 18, 2010 (copies of deposition notices attached at Ex. 1). The members of the 446th AES share the mission of deploying aeromedical evacuation crews, operations teams, and supporting personnel and assets to Medevac patients, including military members injured in combat, to appropriate medical treatment facilities. *See* Decl. of Col. Janette Moore-Harbert ¶¶ 6-7 (copy attached at Ex. 2).

**ARGUMENT**

Under Civil Rule 26(c)(1), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). After the parties have conferred in good faith to resolve a discovery dispute, a protective order is permitted, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Where any of those conditions exist upon a specifically articulated showing of good cause, a court may forbid the requested discovery. *See* Fed. R. Civ. P. 26(c)(1)(a); *see also San Jose Mercury News, Inc. v. U.S. District Court - Northern District (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999); *Stormans, Inc. v. Selecky*, 251 F.R.D. 573, 576 (W.D. Wash. 2008). Under that standard, a court may prevent a proposed deposition "when the facts and circumstances are such that it creates an inappropriate burden or hardship." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003). That standard is clearly satisfied here to prevent the noticed depositions.

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 3

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

**I.   The Noticed Depositions Would Be Disruptive To The Military, Undermining Unit Cohesion and Morale By Creating Unreasonable Annoyance And Embarrassment.**

A protective order should issue because the noticed depositions of unit members would be disruptive to the military. The importance of avoiding disruption to military affairs cannot be overstated, especially in a time of ongoing conflict in two theaters of war. Concerns regarding the disruption of military functions, such as a second-guessing military decisions and impairments of essential military discipline, have foreclosed entire causes of action. *See United States v. Shearer*, 473 U.S. 52, 57 (1985) (plurality opinion). Under the *Feres* doctrine, for example, the Supreme Court has barred service members from bringing claims under the Federal Tort Claims Act during activity incident to service. *See United States v. Johnson*, 481 U.S. 681, 689-91 (1987) (no Federal Tort Claims Act claims by service members); *Feres*, 340 U.S. 135, 146 (1950) (same). In explaining the *Feres* rationale, the Supreme Court emphasized the importance of not involving military officials in litigation:

> To permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct. But as we noted in *Chappell v. Wallace,* such "'complex, subtle, and professional decisions as to the composition, training, . . . and control of a military force are essentially professional military judgments.'"

*Shearer*, 473 U.S. at 58 (citations omitted). This line of reasoning has also led the Supreme Court to hold that no *Bivens* remedy is available for constitutional injuries that "arise out of or are in the course of activity incident to service." *United States v. Stanley*, 483 U.S. 669, 684 (1987); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983) (holding that "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations."). Relatedly, the Supreme Court has held that the military's interest in "effective, realistic training" outweighs a plaintiff's showing of irreparable harm. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008). In short, Supreme Court precedent demonstrates a reluctance to entertain entire classes of claims because "the special relationships that define military life have 'supported the military establishment's power to deal with its own personnel.'"

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 4

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

*Chappell*, 462 U.S. at 305 (1983) (quoting Earl Warren, *The Bill of Rights and the Military*, 37 N.Y.U. L. Rev. 181, 187 (1962)).

The Ninth Circuit has given broad recognition to these principles:

> Although the doctrine of intramilitary immunity is generally applied in connection with the FTCA, its applicability is not limited to FTCA cases. The doctrine is instead applicable whenever a legal action "would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States."

*Hodge v. Dalton*, 107 F.3d 705, 710 (9th Cir. 1997) (quoting *McGowan v. Scoggins*, 890 F.2d 128, 132 (9th Cir. 1989)). Put another way, "the test has been broadly construed to immunize the United States and members of the military from any suit which may 'intrude in military affairs,' 'second-guess[ ] military decisions,' or 'impair[ ] military discipline.'" *Jackson v. Brigle,* 17 F.3d 280, 282 (9th Cir. 1994) (quoting *Stauber v. Cline*, 837 F.2d 395, 398 (9th Cir. 1988)). Toward that end, the Ninth Circuit has precluded suits such as Title VII employment discrimination claims brought by service members. *See Mier v. Owens*, 57 F.3d 747, 749 (9th Cir. 1995) ("Title VII does not protect military personnel."); *see also Hodge*, 107 F.3d at 712 (holding that a uniformed service member "is excluded from coverage under Title VII of the Civil Rights Act"); *Gonzalez v. Dep't of the Army*, 718 F.2d 926 (9th Cir. 1983). The Ninth Circuit has also barred constitutional claims brought by a service member on the same rationale. *Zaputil v. Cowgill*, 335 F.3d 885, 886-87 (9th Cir. 2003) (barring due process and involuntary servitude claims brought by a service member). Put simply, the Ninth Circuit accords great weight to *Feres* principles, acknowledging that the doctrine "has been so broadly construed that 'practically any suit that implicates . . . military judgments and decisions runs the risk of colliding with *Feres*.'" *Jackson,* 17 F.3d at 282 (quoting *Persons v. United States*, 925 F. 2d 292, 295 (9th Cir. 1991)).[1]

---

[1] The Ninth Circuit has also adopted a test to determine whether a constitutional claim against the military is actionable. Under that test:

> [A]n internal military decision is unreviewable unless the plaintiff alleges (a) a violation of [a recognized constitutional right], a federal statute, or military regulations; and (b) exhaustion of available intraservice remedies. If the plaintiff meets both prerequisites, the trial court must weigh four factors to determine whether review should be granted:
> (1) The nature and strength of the plaintiff's claim.

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 5

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

1    The Ninth Circuit in *Witt* recognized that on remand the Court should be mindful of the
2 deference owed to the military. *See* 527 F.3d at 821. Such deference to the military certainly
3 supports a protective order here with respect to the proposed depositions. The depositions would
4 seek unit members' views on the very topics that the Ninth Circuit has expressly recognized as
5 being invasive. *See McGowan*, 890 F.2d at 132 (noting the applicability of *Feres* principles to
6 "decisions regarding management, discipline, supervision, and control of members of the armed
7 forces of the United States"). Thus, depositions of unit members regarding unit morale and
8 cohesion would necessarily intrude into military affairs. *See* Moore-Harbert Decl. ¶¶ 20-21.
9 And, courts should be extremely reluctant to permit judicial proceedings that would have such
10 effects. *See Rostker v. Goldberg*, 453 U.S. 57, 70 (1981) (explaining that "judicial deference . . .
11 is at its apogee when legislative action under the congressional authority to raise and support
12 armies and make rules and regulations for their governance is challenged."); *Orloff v.*
13 *Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as
14 scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to
15 intervene in judicial matters."). For that reason, a protective order is merited here to prevent the
16 service member depositions that would disrupt the military's functioning.

17    Indeed, the proposed depositions of individual members will not only cause
18 embarrassment, and thus serve to undermine the military's interest in unit cohesion and morale,
19 but also put the deposed unit members in a potentially impossible position. Plaintiff has made
20 clear her intention to probe the sexual activities and orientations of unit members. In the course
21 of deposing two unit commanders, plaintiff's counsel repeatedly asked the commanders about

---

(2)   The potential injury to the plaintiff if review is refused.
(3)   The extent of interference with military functions.
(4)   The extent to which military discretion or expertise is involved.
*Christoffersen v. Wash. State Air Nat'l Guard*, 855 F.2d 1437 (9th Cir. 1988) (quoting *Khalsa v. Weinberger*, 779 F.2d 1393 (9th Cir. 1985)). The *Witt* panel remanded this matter for fact-finding regarding plaintiff's effect on unit cohesion and morale. It did not, however, specify the type of evidence to be used in that fact-finding. If the *Witt* decision is taken to authorize the unit-level inquests envisioned by plaintiff, it cannot proceed under *Chirstofferson* and similar precedents because, at a minimum, it interferes with important military functions – the maintenance of good order, discipline, cohesion and morale – in a matter that has classically received considerable deference to the military's expertise.

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 6

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

1 any suspicions they had about the presence of homosexually-oriented persons in the military.  For
2 instance, in the deposition of plaintiff's former commander, Colonel Mary Walker, counsel
3 engaged in the following line of questions:

> Q: What I'm going to do now is somewhat laboriously go through a list of names of individuals just to make sure that -- I know you've already told me no, but I want to see if telling you a name jogs any kind of recollection. ***So, I'm going to ask you if you ever knew or suspected that any of these people were gay or lesbian.***  Okay?
> A: Okay.
> Q: Tech Sergeant Stacey Julian?
> A: No.
> Q: Sergeant James Schaffer?
> A: No.
> Q: Major Faith Mueller?
> A: No.
> Q: Major Julia Scott?
> A: No.
> Q: Major Sue Schindler?
> A: No.
> Q: Major Sharon Carlson?
> A: No.
> Q: Master Sergeant Jill Brinks?
> A: No.
> Q: Major Annie Thomas?
> A: No.
> Q: Major Vince Oda?
> A: No.
> Q: Tech Sergeant Leah Crawford?
> A: No.
> Q: Major Kenneth Winslow?
> A: No.
> Q: Major Carolyn Newhouse?
> A: No.
> Q: Captain Ed --
> A: Hrivnak.
> Q: H-r-i-v-n-a-k?
> A: No.
> Q: Sergeant Aaron Maness?
> A: No.
> Q: Lieutenant Jill Brinks?
> A: No.
> Q: Lieutenant Colonel Bethany Ruals?
> A: No.
> Q: Colonel Bruce Daugherty?
> A: No.
> Q: Sergeant Candace Newberry?
> A: No.
> Q: Sergeant Theron Smith?
> A: Theron.
> Q: Theron?
> A: No.
> Q: Sergeant Charlene Livingston?

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 7

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

1           A:      No.

2   Depo. of Col. (Ret.) Mary Walker at 48-50 (Jan. 8, 2010) (emphasis added) (copy attached at

3   Ex. 3). Five of the members identified in this line of questioning are persons who plaintiff has

4   currently noticed for deposition (Brinks, Julian, Crawford, Winslow, and Hrivnak).

5           Plaintiff persisted in a similar line of questions in the deposition of Colonel Janette

6   Moore-Harbert, the current commander of the 446th Aeromedical Evacuation Squadron:

7           Q:      And using suspect the way I said it, that is that it crosses your mind to
                    think this person probably is of this sexual orientation. In thirty-two years
8                   other than Major Witt have you ever suspected any other person in the
                    Armed Forces to be gay or lesbian?
9           A:      I don't know.

10  Depo. of Col. Janette Moore-Harbert at 79-80 (Feb. 24, 2010) (objections omitted) (copy

11  attached at Ex. 4).[2]

12          Such questioning is inherently disrespectful of privacy and potentially embarrassing to

13  both the object of the inquiry and the witness. More than that, it could place the unit members

14  between a rock and a hard place – to compel them, under penalty of perjury, to disclose their own

15  sexual activities and orientations, or opine on those of others, possibly triggering the application

16  of the DADT policy. This type of inquiry potentially creates tension, hostility, and/or dissension

17  among members of the unit. *See* Moore-Harbert Decl. ¶¶ 20-21. Indeed, this questioning is

18  inconsistent with the Air Force's regulation that regards sexual orientation as "a personal and a

19  private matter." *See* Dep't of Defense Directive 1304.26, attach. 2 § 8(a), p. 2-5; Air Force

20  Instruction 36-3209 ¶ 1.15 ("Sexual orientation is considered a private matter and is not a bar to

21  continued service unless manifested by homosexual conduct."). It is ironic that in the name of

22  challenging the application of the DADT policy on privacy and personal autonomy grounds,

23  plaintiff seeks to probe the sexual behavior of military members, even as the very policy that

24  plaintiff attacks provides that sexual orientation is a private matter. Moreover, the Ninth Circuit

25  in *Witt* made clear that it was remanding for an inquiry into how the DADT policy, as applied

26  ─────────────────

27      [2] Plaintiff has also recently served requests for document production that inquire into the specific
    relationships between various members of the 446th AES. *See* Pl's Second Set of Requests for Produc.
28  of Docs., Nos. 35-36 (copy attached at Ex. 5); *see also id.* Nos. 33-34.

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 8

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

"specifically to Major Witt," affected unit cohesion and morale; it did not suggest that plaintiff probe the sexual orientation and conduct of other unit members. 527 F.3d at 821. Such an intrusive inquiry does not justify the embarrassment that it would cause or the consequent disruption to the military, and the Court should enter a protective order precluding the proposed depositions. *See Gay-Straight Alliance of Okeechobee High Sch. v. Sch. Bd. of Okeechobee County*, 242 F.R.D. 644, 645 (S.D. Fla. 2007) (issuing a protective order to prevent inquiry into sexual orientation of members in plaintiff organization).

As further evidence still, some of the affidavits that plaintiff's counsel already has obtained in this case are embarrassing to unit personnel in a way corrosive to the 446th AES's morale and cohesion. For instance, in his declaration in support of plaintiff's preliminary injunction motion, Senior Master Sergeant James Schaffer claimed that the current commander of the 446th AES, Colonel Moore-Harbert, reported crying when she delivered the suspension paperwork to plaintiff. Decl. of James Schaffer ¶ 12 ("Colonel Moore-Harbert told me that she cried when she told Major Witt of Colonel Walker's action.") (copy attached at Ex. 6). Such a (disputed) report that a commander cried is, at a minimum, embarrassing to the current commander and the military leadership. *See* Moore-Harbert Depo. at 141 ("Q: Is it embarrassing to an officer in the military to cry in front of other military members? A: I think it would depend on the officer. Q: How about you? A: I find it difficult and embarrassing to cry in front of people." (objection omitted)). More importantly, such reports of a commander crying are disruptive to the commander's ability to lead the unit because they call into doubt the commander's ability to be strong. *See* Moore-Harbert Depo. at 143 ("A: And I think that across the board especially if you are in somewhat of a leadership-type position that you want to be able to demonstrate that you are strong. And that you can continue, that you won't emotionally break down in an issue * * * And I think that is what leads towards the aspect about seeing someone that is of a senior position crying that that is difficult."). These examples underscore the invasive nature of plaintiff's discovery, and there can be little doubt that the depositions of unit members would be distracting to the military's mission.

Finally, on appeal, the Ninth Circuit recognized as part of its constitutional analysis that

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 9

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

the Air Force had important governmental interests in unit morale and cohesion. *See Witt v. Dep't of Air Force*, 527 F.3d 806, 821 (9th Cir. 2008). In the parlance of constitutional jurisprudence, these interests were deemed "important," meaning that they were more protected than simply "legitimate" governmental interests. Yet, through the noticed depositions, plaintiff would compromise the Air Force's important governmental interests. By questioning unit members on such a controversial topic as gay rights or more specifically, the application of the DADT policy to a certain unit member, plaintiff risks factionalizing the unit. As explained by General Colin Powell as quoted in the Senate Report:

> [O]pen homosexuality in units is not just the acceptance of benign characteristics such as color or gender or background. It involves matters of privacy and human sexuality that, in our judgment, if allowed to exist openly in the military, would affect the cohesion and well-being of the force. ***It asks us to deal with fundamental issues that the society at large has not yet been able to deal with.***

S. Rep. No. 103-112, at 291 (1993) (emphasis added). Thus, simply by inquiring into unit morale and cohesion, plaintiff would compromise the Air Force's important constitutional interests. Even where no important governmental interest was found, the Supreme Court recognized that "[s]uits brought by servicemembers against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word." *Johnson*, 481 U.S. at 691. The same concern is present here to a greater degree due to the Air Force's important constitutional interest in unit morale and cohesion.

In short, the discovery of unit members would be disruptive to the military and would undermine the Air Force's constitutionally recognized important governmental interest in unit morale and cohesion. For these reasons, the proposed depositions should not be permitted.

## II.   The Noticed Depositions Are Unduly Burdensome.

In recognition of the scope of remand, the Air Force has made significant information available to plaintiff concerning unit morale and cohesion. The Air Force has permitted plaintiff to depose the commanders of the 446th AES, and the Air Force has produced anonymously conducted unit climate surveys from the 446th AES. The availability of those other resources underscores that unit member depositions are unduly burdensome, especially when their

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 10

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

disruption on unit cohesion and morale is contrasted with their minimal probative value. *See United Air Lines v. United States*, 26 F.R.D. 213, 219 n.9 (D. Del. 1960) ("It is well established that discovery has limits and that these limits grow more formidable as the showing of need decreases.").

Good cause exists for the Air Force's decision to permit plaintiff to depose the commanders of the 446th AES, but not the unit members. The recognized concept of "unit cohesion and morale" requires an ability to assess the overall cohesion of the unit (or others that the 446th AES would work with), and the commanders are in the best position to make that evaluation. *See* Moore-Harbert Decl. ¶¶ 22-23. For example, the commanders had access to unit climate surveys, which gauge the morale of the 446th AES at various points in time. *See id*.

In contrast, plaintiff's efforts to depose members of the unit will produce only limited anecdotal evidence. An individual unit member is not in a position to assess the unit's overall measure of cohesiveness or morale. But a unit commander is. *See id*. Even if plaintiff were to depose and inquire of every single unit member, there would be no reliable method, other than the unit commander's assessment, to evaluate the overall cohesiveness and morale of the unit as a whole. Nor would the depositions of unit members provide any new insight into plaintiff's on-the-job performance – the unit commanders have already stated that plaintiff was a very good and respected flight nurse. *See, e.g., id.* ¶ 5; Walker Depo. at 145. Thus, depositions of unit members, while invasive and highly disruptive (as set forth above), would be of limited probative value and thus unduly burdensome. Rather than offering the Court any meaningful evidence to evaluate the case, the depositions would inject a controversial issue into the midst of a unit that is actively deploying in support of its mission at a time when the military is engaged in two conflicts among other operations. *See* Moore-Harbert Decl. ¶¶ 20-23. In short, these depositions offer little and come at too high a cost.

## CONCLUSION

For the foregoing reasons, good cause exists to issue a protective order to preclude plaintiff from deposing members of the 446th Aeromedical Evacuation Squadron, and defendants' motion should be granted.

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 11

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

| | | |
|---|---|---|
| 1 | Dated: March 4, 2010 | Respectfully submitted, |
| 2 | | |
| 3 | | TONY WEST<br>Assistant Attorney General |
| 4 | | VINCENT M. GARVEY<br>Deputy Branch Director |
| 5 | | |
| 6 | |   /s/ *Peter J. Phipps*<br>PETER J. PHIPPS |
| 7 | Of Counsel:<br>LT. COL. TODI CARNES | Senior Counsel<br>United States Department of Justice |
| 8 | 1777 N. Kent Street, Suite 11400<br>Rosslyn, VA 22209-2133 | Civil Division, Federal Programs Branch<br>Tel: (202) 616-8482 |
| 9 | (703) 588-8428 | Fax: (202) 616-8470<br>E-mail: peter.phipps@usdoj.gov |
| 10 | | |
| 11 | | Mailing Address:<br>Post Office Box 883, Ben Franklin Station |
| 12 | | Washington, D.C.  20044 |
| 13 | | Courier Address:<br>20 Massachusetts Ave., N.W. |
| 14 | | Washington, D.C. 20001 |
| 15 | | *Attorneys for Defendants* |

(C06-5195-RBL) DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING
THE DEPOSITIONS OF UNIT MEMBERS - 12

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

**CERTIFICATE OF CONFERRAL**

Pursuant to Fed. R. Civ. P. 26(c)(1) and W.D. Wash. Civ. R. 26(c)(1), I hereby certify that I have telephonically conferred with counsel for plaintiff, James Lobsenz, on or about February 22, 2010, in an effort to resolve this protective order dispute without court action.

    /s/  *Peter J. Phipps*
PETER J. PHIPPS
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-8482
Fax: (202) 616-8470
E-mail: peter.phipps@usdoj.gov
*Attorney for Defendants*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2010, I electronically filed the foregoing Defendants' Motion for Protective Order Regarding the Depositions of Unit Members, with the Clerk of the Court using the CM/ECF system which I understand will send notification of such filing to the following persons:

| | |
|---|---|
| James E. Lobsenz<br>Carney Badley Spellman, P.S.<br>701 Fifth Avenue, Suite 3600<br>Seattle, WA 98104<br>Tel: (206) 622-8020<br>Fax: (206) 622-8983<br>E-mail: lobsenz@carneylaw.com | Sarah A. Dunne<br>American Civil Liberties Union of Washington<br>705 Second Avenue, Suite 300<br>Seattle, WA 98104<br>Tel: (206) 624-2184<br>E-mail: dunne@aclu-wa.org |

    /s/ *Peter J. Phipps*
PETER J. PHIPPS
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-8482
Fax: (202) 616-8470
E-mail: peter.phipps@usdoj.gov
*Attorney for Defendants*