**REQUEST AND AUTHORIZATI~~OR~~ ~~ACTIVE~~ DUTY TRAINING/ACTIVE DUTY TO~~UR~~**

PRIVACY ACT STATEMENT: AUTHORITY ~~10 USC 8~~ ~~Executive Order 9397.~~ PRINCIPAL PURPOSES: ~~1 T~~ request and authorize Air Force reservists ~~to perform~~ ~~of active duty~~ as well as acting as a temporary duty travel ~~on~~ is used to make positive identification of mili~~tary~~ personnel. Becomes record copy of orders after authentication; enables reservist to procure transportation, receive reimbursement for travel expenses and be paid military pay, as applicable. ROUTINE USES: A copy of the orders may be provided to civilian employers to substantiate active duty military requirements. DISCLOSURE IS VOLUNTARY: However, without this information and SSN the Air Force cannot act on your travel, per diem and pay entitlements.

**BY ORDER OF THE SECRETARY OF THE AIR FORCE**

| 1. NAME (Last, First, MI) | 2. GRADE | 3. SSN | 4. SECURITY CLEARANCE |
|---|---|---|---|
| WITT, MARGARET H. | MAJ | ███████ | SECRET |

| 5. PRESENT STREET ADDRESS | 6. CITY | 7. STATE | 8. ZIP CODE |
|---|---|---|---|
| 1022 W. 19TH AVE | SPOKANE | WA | 99203- |

| 9. UNIT OF ASSIGNMENT | 10. LOCATION | 11. PAS CODE |
|---|---|---|
| 446AES | MCCHORD AFB  WASHINGTON 98438-1326 | T21LFLW0 |
| | | (A7774592-83A0-4443-9C40-80C37C76C71E) |

12. Member is ordered to MPA tour for 37 * days plus authorized travel time.
Order need not be amended unless it exceeds N/A days.

| 13. WILL REPORT TO (Unit and Location) | 14. REPORTING DATA (Hour)  (YYYYMMDD) | 15. RELEASE DATE (YYYYMMDD) |
|---|---|---|
| 446AES  MCCHORD AFB, WASHINGTON | 0800   20030106 | 20030211 |

19. REMARKS  AUTH: AFMAN 36-8001     (File travel voucher and completed statement of tour of duty within 5 workdays after tour completion. Travel days will not exceed DODPM authorized travel time.  Per diem is based on availability of govt quarters and mess.  Travel quarters must be used when available.  Turn in all promotional items (gifts, bonus tickets, etc) to the AFO.)

| 16. CORPORATE-LIMITS | 17. COMMUTING AREA | 18. BAS CODE |
|---|---|---|

Further TDY to: SEATAC, WASHINGTON.  Auth: Title USC 10, Section 12301(d) and AFI 36-2619.  Additional distribution: 1 copy to HQ USAF/DPRR.  Variations in itinerary authorized.  Report to MPF/DPMUO prior to departure.  Per AFI 24-101, govt procured transportation directed; contact your commercial travel office (CTO) or transportation management office as soon as possible. 5 pieces, 360 pounds excess accompanied baggage authorized according to AFI 24-101. 5 pieces excess accompanied baggage authorized according to AFI 24-101.  In accordance with Public Law 105-264, Govt Travel Card use is mandatory for all authorized expenses unless otherwise exempted under the specific provisions detailed in paragraph E of the Travel Transportation Reform Act. Advance by FSO is not authorized.  Traveler has a govt charge card and PIN, which will be used for ATM cash advances for meals and incidental expenses (M&IE) plus miscellaneous expenses. Member's Duty Status is 20, PerstempoCode is A (TDY Contingency Operation). Govt meals are not available or directed. Member pays lodging costs and standard meal rate at govt.mess. While further TDY, member pays lodging and standard meal rate at govt mess. Authorization CMAS# 0363271 and #0361576. Dual lodging/billeting authorized. Member will be on further TDY from SEATAC, Washington in support of Southern Watch.   The period of service under these orders is ... (CONTINUED ON NEXT PAGE...)

| 20. TNG-CAT-CODE | 21. TOUR-IND | 22. MEAN CODE | 23. MAN-DAY ID |
|---|---|---|---|
| IL | SOUTHERN WATCH | 800 | 3O8001LB20 |

| ESTIMATED | 24. TRAVEL  F012023  P027086 | 25. PER DIEM | 26. OTHER | 27. TOTAL |
|---|---|---|---|---|
| | $0 | $1,250 | $270 | $1,520 |

28. PAY AND ALLOWANCE     5733500 323 510 525725 VA
TRAVEL AND PER DIEM     9730130.1883 2X3 65RL 105898 B8 409 525700 7C FCA:31A30009 $1,520

| 29. FUNDS CERTIFYING OFFICIAL | 30. APPROVING OFFICIAL (Typed name,grade, DSN) | 31. SIGNATURE  A signed letter requesting the issuance of this order is on file with the orders authenticating official | 32. DATE |
|---|---|---|---|
| D.Hendrickson | LINDA L. CARNEAL COL 982-6836 | | 20030103 |

| 33. DEPARTMENT OF THE AIR FORCE (Include designation & location of headquarters) | TDN:  FOR THE COMMANDER |
|---|---|
| 446 AIRLIFT WING (AFRC) MCCHORD AFB, WA 98438-1326 | 37. SIGNATURE ELEMENT OF AUTHENTICATING OFFICIAL |

| 34. RESERVE ORDER NO. | 35. DATE | 36. DISTRIBUTION | PAMELA J. BATAYOLA,GS11 |
|---|---|---|---|
| D -04285 | 20030103 | D+1 - | FINANCIAL ANALYSIS OFFICER |
| | | | 382-9124 |

OFFICIAL  446th Airlift Wing (AFRC)

38.

**STATEMENT OF TOUR OF DUTY**

| | LOCATION | HOUR (mil) | DAY | MONTH | | LOCATION | HOUR (mil) | DAY | MONTH | MODE OF TRAVEL |
|---|---|---|---|---|---|---|---|---|---|---|
| a. DEPART | | | | | b. ARRIVE | | | | | |
| c. DEPART | | | | | d. ARRIVE | | | | | |

39. I certify that I have complied with the above order.  The statements on this form are true and complete.  If this tour was extended under the variable tour provisions, it was with my prior knowledge and consent.  If a Federal Civil Service Employee, I certify that I have applied for appropriate leave.  My Spouse (Circle One) was / was not in Active Duty status during this tour.  I (Circle One) did / did not occupy gov't quarters.

**CERTIFICATION**

42. Member reported for duty at ___ hours on ___ and was released from duty at ___ hours on ___ and was

| 40. MEMBER'S SIGNATURE | 41. DATE | 43. CERTIFYING OFFICIAL'S PRINTED NAME | 44. DSN |
|---|---|---|---|
| | | 45. CERTIFYING OFFICIAL'S SIGNATURE | 46. DATE |

| 47. TIMEKEEPER STATEMENT  I certify receiving a copy of this order for civilian pay related review and processing. | 48. TIMEKEEPER SIGNATURE | 49. FMO INITIALS |
|---|---|---|

AF FORM 938, 20000401 (EF-1)  (TBAS for Windows)     PREVIOUS EDITION IS OBSOLETE

CONTINUED FROM AF FORM 938, BLOCK #19        'RKS        AN 36-8001)

MARGARET WITT▮▮▮▮▮▮D -0428S 03 JAN 2003

exempt from the five-year limit as provided in 38 USC.4312(c) (4) (B).  Dates of leave and travel are inclusive.

DEPARTMENT OF THE AIR FORCE
HEADQUARTERS AIR RESERVE PERSONNEL CENTER
DENVER COLORADO 80280-5000

RESERVE ORDER
DA-02112

18 MAR 199¢

POINT OF CONTACT: Cookie Partee, DSN 926-6429 COMM 1-800-525-0102 EXT 410.

CPT WITT MARGARET H
7037 GRANDVIEW PARK          SSN: ███████
GIG HARBOR WA  98335         EDCSA: 13 APR 1996
                            AAN: 0460MT2013
                            RR/DATE: 16 DEC

AAR: VOLUNTEER FOR REASSIGNMENT (RU)
                                      RESERVE STATUS: READY
MEMBER IS RELIEVED FROM: HQ AIR RESERVE PERSONNEL CENTER/S73IFZ6M/RD
MAJCOM:

ASSIGNED TO: 446 AEROMED EVAC SQ MCCHORD AFB WA 98438
IMA MAJCOM:
UNIT MPF: 446 MSS/DPMAE 1205 12TH ST NE RM 102W MCCHORD AFB WA 98438-1326

TRAINING ATTACH/PAS: /

RES SEC/ASGND PAS: AI/T21LFLW0 DUTY LOC: PQWY  TRNG CAT/TYPE OF ASGN: A/UNIT
REC ID: H04M POS#: 0529262 AUTH GRADE: CPT  AUTH AFSC: X46F3 DAFSC: X46F3
SECURITY CLEARANCE DATA: SECRET/NAC/870721

NO TRAINING WILL BE PERFORMED BEFORE THE EFFECTIVE DATE: 13 APR 1996

MEMBERS DATE LAST PHYSICAL IS:     IF THIS DATE IS OVER FIVE YEARS OLD STARTING
AT AGE 25 OR THREE YEARS OLD STARTING AT AGE 40 (ONE YEAR FOR RATED PERSONNEL) OR
BLANK, A MEDICAL EXAM IS REQUIRED WITHIN 90 DAYS OF EDCSA OR THE DATE OF THE ORDERS
WHICHEVER IS LATER.  RATED PERSONNEL; A FLYING CLASS II PHYSICAL IS REQUIRED FOR PA
CAT A AND B ASSIGNMENTS.  THIS ORDER AUTHORIZES SCHEDULING THE REQUIRED EXAM. IF AN
EXAM IS NOT COMPLETED, ORDERS WILL BE ISSUED TO REASSIGN YOU TO HQ ARPC INACTIVE
RESERVE STATUS.

AFI 36-2903 AND AFI 40-502 STANDARDS APPLY.

REMARKS: UNIT POC IS DAVE LANGFORD DSN 984-5434 COMM 206-984-5434. DUTY TITLE FLIGHT
NURSE.

FOR THE COMMANDER

OFFICIAL

B. ROSE WEINRICH
DEPUTY DIRECTOR OF PERSONNEL

RO DA-02112

AF000651

# VETERANS' ...ONAL ASSISTANCE ACT ... (NEW GI BILL)
### (Chapter 30, Title 38, U.S. Code)

**AUTHORITY:**

**PRINCIPAL PURPOSE:**

**ROUTINE USES:**

**DISCLOSURE:**

### Privacy Act Statement

Chapter 30, Title 38, US Code, Sections 1411 and 1412; and EO 9397, November 1943 (SSN).

To establish eligibility to participate in the Veterans' Educational Assistance Act of 1984 (New GI Bill.)

Information will be used as a source document indicating participation status of each service member in the New GI Bill Educational Benefits Program.

Disclosure of your social security number and other personal information is voluntary. However, this form CANNOT be processed if requested information is not provided.

**1. SERVICE MEMBER**

a. NAME (Last, First, Middle Initial)
Witt, Magaret H.

b. SOCIAL SECURITY NUMBER (SSN)

**2. STATEMENT OF UNDERSTANDING**

a. I am eligible for the New GI Bill based on my initial entry on active duty on or after July 1, 1985.

b. I understand that I am automatically enrolled and that I have the option to disenroll.

c. If I disenroll, I must do so on the date designated by my service. *(See paragraph 3 or 4)*

d. I am a Service academy or ROTC scholarship graduate and I am NOT ELIGIBLE for the New GI Bill. (X if applicable) ➤

e. I understand that if enrolled in the New GI Bill, my basic pay will be reduced $100 per month for EACH of the first full 12 months of active duty and CANNOT BE REFUNDED, SUSPENDED OR STOPPED.

f. I must complete three years of active duty service before I am entitled to $300 per month for 36 months.

g. If I have a two year obligation, I understand that I must complete two years of active duty to receive $250 per month for 36 months.

h. I must complete two years of active duty service and join the Selected Reserve for a minimum four year service agreement before I am entitled to $300 per month for 36 months.

i. If a non-high school graduate, I must complete all requirements for a high school diploma (or an equivalency certificate) before completion of my initial tour in order to qualify for the New GI Bill.

j. I must use my benefits within 10 years of my separation or discharge from active duty for the entitlement in paragraph 2.g., or complete my Selected Reserve obligation for the entitlement in paragraph 2.h.

k. I must receive an honorable discharge for service which established entitlement to the New GI Bill.

l. SERVICE MEMBER

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) RANK/GRADE | (3) SIGNATURE | (4) DATE SIGNED |
|---|---|---|---|
| Witt, Margaret H. | O-1/2 Lt | | |

m. WITNESSING OFFICIAL

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) RANK/GRADE | (3) SIGNATURE | (4) DATE SIGNED |
|---|---|---|---|
| Schleng, Joseph J. | E-3/A1C | | 21 Dec 88 |

**3. STATEMENT OF ENROLLMENT**
I am enrolling in the "New GI Bill" and ACCEPT THE TERMS OF 2.a. through k.

a. SERVICE MEMBER

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) RANK/GRADE | (3) SIGNATURE | (4) DATE SIGNED |
|---|---|---|---|
| Witt, Margaret H. | O-1/2 Lt | | 21 Dec 88 |

b. WITNESSING OFFICIAL

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) RANK/GRADE | (3) SIGNATURE | (4) DATE SIGNED |
|---|---|---|---|
| Schleng, Joseph J. | E-3/A1C | | 21 Dec 88 |

**4. STATEMENT OF DISENROLLMENT**
I do not desire to participate in the New GI Bill. I understand that I WILL NOT be able to enroll at a later date.

a. SERVICE MEMBER

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) RANK/GRADE | (3) SIGNATURE | (4) DATE SIGNED |
|---|---|---|---|
| | | | |

b. WITNESSING OFFICIAL

| (1) TYPED OR PRINTED NAME (Last, First, Middle Initial) | (2) RANK/GRADE | (3) SIGNATURE | (4) DATE SIGNED |
|---|---|---|---|
| | | | |

**5. SERVICE UNIQUE EDUCATION ASSISTANCE OPTIONS**

If I enroll in the New GI Bill, I may be eligible for additional educational assistance based on my military specialty and/or years of service as shown below.

Open period eligible applicant has been counseled that a total of $1200 must be reduced from his/her basic pay to establish eligibility for the MGIB and that all MGIB basic pay reductions are non-refundable under law. Individual will indicate understanding of this section by placing initials here _____. BLMPS DIM EBG CODE W UPDATED ON 27 JAN 1989.

DD Form 2366, MAR 87

*Previous editions are obsolete.*

AF000652

CLASSIFICATION/ON-THE-JOB TRAINING ACTIONS

WITT MARGARET H
57 AES                      SGS          ████████ CPT                     14 JUL

PERSONNEL DATA CHANGES

AFSC INFORMATION
AWARD AFSC    046S3   AS PRIMARY   AFSC        DUTY INFORMATION
EFFECTIVE                                      DAFSC        EFFECTIVE DATE   950731
PAFSC FROM   046S3   TO   046S3               OFFICE SYMBOL SGS
2AFSC FROM   046F3   TO   N/C                 DUTY PHONE 6182565088
3AFSC FROM           TO                       POSITION NO.
WITHDRAW AFSC                                 DUTY TITLE CH MED AIRCREW STAN EVAL   COMD LVL
                                              CLASS UPG DT
-------------------------------------------------------------------------------------
REQUESTING OFFICIAL:     LAURA E. BAUGH, TSGT,
                         NCOIC, ORD RM                         DATE: 950712
-------------------------------------------------------------------------------------
APPROVAL BY CMDR OR
AUTHORIZED REP:          LAURA E. BAUGH, TSG
                         NCOIC, ORD RM                         DATE: 950712
-------------------------------------------------------------------------------------
ACTION BY MPF
             OFFICIAL:      X  APPROVED        DISAPPROVED
                         JAMES H. COLEMAN JR., SRA
                         PERSONNEL EMPLOYMENT                  DATE: 950714

NOTE:   AFMPC AND/OR MAJCOM APPROVAL/DISAPPROVAL IS REQUIRED
        FOR DAFSC CHANGES, PCAS (EXCEPT SUPPORT AND NONRATED
        OPERATIONS), AND COLONELS DUTY TITLE CHANGES.

                              REMARKS
CH OF DUTY TITLE WITH EFF DT OF 950731

-------------------------------------------------------------------------------------
DPM  :    /              MPF COORDINATION RECORD
DPM  :    /              DPM  :    /              DPM  :    /
                         DPM  :    /              DPM  :    /

AF000653

CLASSIFICATION/ON-THE-JOB TRAINING ACTIONS

12 JUL 9

WITT MARGARET H      ▓▓▓▓▓▓▓▓ CPT
57 AES          SGS

PERSONNEL DATA CHANGES

AFSC INFORMATION              DUTY INFORMATION
AWARD AFSC    046S3   AS PRIMARY   AFSC   DAFSC       EFFECTIVE DATE   950424
EFFECTIVE                         OFFICE SYMBOL SGS
PAFSC FROM   046S3   TO   046S3       DUTY PHONE 6182565088
2AFSC FROM   046F3   TO   N/C   --       POSITION NO.           COMD LVL
3AFSC FROM       TO          DUTY TITLE EVALUATOR FLIGHT NURSE
WITHDRAW AFSC                   CLASS UPG DT
------------------------------------------------------------------------------
REQUESTING OFFICIAL:   LAURA. E. BAUGH, TSGT
                   NCOIC, ORD RM               DATE: 950711

------------------------------------------------------------------------------
APPROVAL BY CMDR OR
AUTHORIZED REP:          LAURAE. BAUGH, TSGT
                   NCOIC, ORD RM             DATE: 950711
------------------------------------------------------------------------------
ACTION BY MPF        X   APPROVED     DISAPPROVED
       OFFICIAL: JAMES H. COLEMAN JR., SRA     DATE: 950712
            PERSONNEL EMPLOYMENT

NOTE:   AFMPC AND/OR MAJCOM APPROVAL/DISAPPROVAL IS REQUIRED
       FOR DAFSC CHANGES, PCAS (EXCEPT SUPPORT AND NONRATED
       OPERATIONS), AND COLONELS DUTY TITLE CHANGES.

REMARKS

CHG OF DUTY TITLE ONLY

------------------------------------------------------------------------------
                   MPF COORDINATION RECORD
DPM :     /           DPM :    /             DPM :     /
DPM :     /           DPM :    /             DPM :     /

AF000654

CLASSIFICATION/ON-THE-JOB TRAINING ACTIONS

DUTY MARGARET H                    CPT                              08 JUL 94
                        SGNT
                        PERSONNEL DATA CHANGES

AFSC INFORMATION
AWARD AFSC    046S3   AS PRIMARY   AFSC      DUTY INFORMATION
EFFECTIVE                                    DAFSC X046F3 EFFECTIVE DATE   940630
PAFSC FROM   046S3   TO   046S3              OFFICE SYMBOL SGNT
DAFSC FROM   046F3   TO   N/C                DUTY PHONE 6182565088
CAFSC FROM           TO                      POSITION NO. 0157377   COMD LVL
WITHDRAW AFSC                          DUTY TITLE FLIGHT EXAMINER
                                            CLASS UPG DT
------------------------------------------------------------------------
MEMBERS CONCURRENCE         DO   DO NOT CONCUR
                                                            DATE:
------------------------------------------------------------------------
REQUESTING OFFICIAL:   LAURA E. BAUGH, TSGT
                       NCOIC, ORD RM                  DATE: 940701
------------------------------------------------------------------------
APPROVAL BY CMDR OR
AUTHORIZED REP:        LAURA E. BAUGH, TSGT
                       NCOIC, ORD RM                  DATE: 940701
------------------------------------------------------------------------
ACTION BY PERSONNEL     X   APPROVED       DISAPPROVED
           OFFICIAL: NANCY M TAULBEE, TSGT, USAF
                     EMPLOYMENT MANAGER               DATE: 940708
------------------------------------------------------------------------

                            REMARKS

CHANGE OF DUTY TITLE AND POS NUMBER
------------------------------------------------------------------------

                     MPF COORDINATION RECORD
MSPRE:  NT/189       MSP  :    /
MSP  :     /         MSP  :    /              MSP  :      /
                                             MSP  :      /

PERSONAL DATA - PRIVACY ACT OF 1974

PREPARED 88-NOV 26 82:13                    REPORT ON INDIVIDUAL PERSONNEL (PA)                    AS OF 88 NOV 25   PCN N133872 CH CHR3602X

REPLY TO
ATTN OF: CBPO/DPMPC

SUBJECT: OFFICER AFSC UPGRADE /PREFIX AWARD ACTIONS

TO: COMMANDER W/SUPERVISOR  93 STRATEGIC

1. 2LT, KITT MARGARET M                                    HP                              EFF

THE FOLLOWING DATA IS FOR YOUR INFO:      , SGHSG   , SHOULD BE CONSIDERED) FOR AWAROF AFSC /PREFIX

SSAN:         DATE-SSN       AFSC S-SH

89731 , 29APR88, 89731 ,  DATE-8T   AFSC   , 11APR87, 19DEC88

a. (  ) OFFICER HAS SATISFIED ALL MANDATORY REQUIREMENTS FOR AWARD OF PREFIX.

b. (  ) OFFICER HAS SATISFIED ALL MANDATORY REQUIREMENTS FOR UPGRADE.

c. (  ) OFFICER MEETS THE MINIMUM EXPERIENCE REQUIREMENTS, BUT HAS NOT SATISFIED THE FOLLOWING ADDITIONAL MANDATORY REQUIREMENTS.

IF OFFICER IS CONSIDERED QUALIFIED FOR A WAIVER OF MANDATORY REQUIREMENT(S) PER AFR 35-1, PARA 4-28, A WAIVER REQUEST WITH JUSTIFICATION MUST BE ATTACHED AND RETURNED BY SUSPENSE DATE.

1ST IND

TO: CBPO/DPMPC

1. (  ) OFFICER IS RECOMMENDED FOR UPGRADE TO THE AFSC AND/OR PREFIX INDICATED.   REDESIGNATE AFSC AS FOLLOWS:

2. (  ) OFFICER IS RECOMMENDED FOR UPGRADE AND/OR AWARD OF PREFIX, ALTHOUGH ALL REQUIREMENTS HAVE NOT BEEN MET. A WAIVER REQUEST IS ATTACHED. IF APPROVED, REDESIGNATE AFSCS AS FOLLOWS:

3. (  ) OFFICER IS NOT CONSIDERED QUALIFIED FOR UPGRADE AT THIS TIME.   THE BASIS FOR THIS DETERMINATION IS ATTACHED.

SIGNATURE OF COMMANDER/SUPERVISOR

2ND IND

TO: CBPO/DPMPC

(  ) IS APPROVED.       (  ) DO NOT CONCUR

SIGNATURE OF CBPO OFFICIAL

THIS IS THE SOURCE DOCUMENT FOR ABOVE AFSC ACTIONS.                    END PAGE

MAR-31-2003 MON 03:40 PM HQ ARPC/SGE          FAX NO. 3039875590          P. 03

**FIRST ENDORSEMENT**

| TO | FROM |
|---|---|
| 446 AES | HQ ARPC/SGE |

☑ RECOMMEND  ☑ APPROVAL  ☐ DISAPPROVAL  *(State reason(s) in the "REMARKS" section.)*  UIF ☐ YES ☑ NO

REMARKS

MEMBER MEETS QUALITY FORCE STANDARDS

RONALD J. LIVINGSTONE, Lt Col, USAF, BSC
NAME AND TITLE *(Please type)* Reserve Mgmt Div
Directorate of Health Services
Individual Reserve Programs

SIGNATURE

DATE
31 Mar 03

**SECOND ENDORSEMENT**

| TO | 446 AES/CC | FROM |
|---|---|---|

☐ RECOMMEND  ☑ APPROVAL *(Furnish assignment data)*  ☐ DISAPPROVAL *(State reason(s) in the "REMARKS" section.)*

| AUTHORIZED GRADE | AUTHORIZED AFSC | FUNCTIONAL CODE | TRNG & RETIREMENT CATEGORY |
|---|---|---|---|
| MAJOR | 46F3 | 564000 | A  A |

UNIT OR TYPE OF ASSIGNMENT  ☑ UNIT  ☐ MA  ☐ RO  ☐ OTHER *(Specify)*

| RESERVE SECTION CODE | DUTY POSITION NUMBER | ASSIGNMENT LOCATION |
|---|---|---|
| AI | 0070632 | MCCHORD AFB, WA |

| UNIT OF ATTACHMENT | REPORTING OFFICIAL *(Name and SSN)* |
|---|---|
| 446TH AES, MCCHORD AFB, WA | LT COL MOORE-HARBERT |

| PAS | UNIT OF ATTACHMENT PAS |
|---|---|
| T21LLLND | |

| EDCSA | RECRUITER ID CODE | RECRUITER DUTY PHONE |
|---|---|---|
| 14 APR 03 | | DSN |

GRADE WAIVER  ☐ YES  ☑ NO  AUTH    COMMERCIAL

REMARKS

FWD FPR TO 446 MSS/DPMSAE 1205 12TH ST NE RM 102W MCCHORD AFB WA 98438-1326
UMD CODE 3.

NAME AND TITLE *(Please type)* Operations Officer
Janette Moore Harbert Lt Col

SIGNATURE
Janette L Moore Harbert

DATE
31 Mar 03

**THIRD ENDORSEMENT** *(Do not include assignment data except to correct original data)*

| TO | FROM |
|---|---|
| HQ ARPC | 446 MSS/DPMSAE |

☐ RECOMMEND  ☑ APPROVAL  ☐ DISAPPROVAL  *(State reason(s) in the "REMARKS" section.)*

REMARKS

NAME AND TITLE *(Please type)*
MARK M. MARINOV, TSgt. USAFR
NCOIC, Personnel Employment

SIGNATURE

DATE
2 APR 03

**FOURTH ENDORSEMENT** *(Do not include assignment data except to correct original data)*

| TO | FROM |
|---|---|

☐ RECOMMEND  ☐ APPROVAL  ☐ DISAPPROVAL  *(State reason(s) in the "REMARKS" section.)*

REMARKS

| NAME AND TITLE *(Please type)* | SIGNATURE | DATE |
|---|---|---|

AF FORM 1288, 19970801 *(REVERSE)*  *(EF-V2)*

AF000657

VUC 3-1-96

## APPLICATION FOR READY RESERVE ASSIGNMENT

AUTHORITY: U.S.C. 275 and Executive Order 9397.
PRINCIPAL PURPOSES: Request for Ready Reserve assignment must contain current personal information to complete processing. Use of the member's social security number is necessary to make positive identification of the individual and his or her records.
ROUTINE USES: Provides personal data and information concerning the member's requested assignment. Information contained hereon may be disclosed to any DOD component, including the Department of the Air Force at base, major command, and HQ USAF levels; and upon request, to other Federal, State, and local agencies in the pursuit of their official duties. It may be used for other lawful purposes including law enforcement and litigation.
DISCLOSURE IS VOLUNTARY: An individual who chooses not to submit necessary documentation will not be eligible for Ready Reserve assignment.

INSTRUCTIONS: Complete the application in duplicate. If you need additional space for any item, attach another sheet which indicates the applicable item number(s).

| 1. NAME (Last, First, Middle Initial) | | 2. GRADE | 3. DATE OF GRADE | 4. SSN |
|---|---|---|---|---|
| WITT, MARGARET H.  *Helen* | | 03/CAPT | 11 APR 91 | ▓▓▓▓ |

| 5. HOME ADDRESS (If different than permanent address, indicate both) | 6. PHONE (Include prefix) | | 7. AFSC |
|---|---|---|---|
| 7037 GRANDVIEW PARK<br>GIG HARBOR WA 98335 | Office 509-534-2381<br>Home  206-858-6339 | | Primary X46F3<br>Add'l  X46S3 |

| 8. DATE OF BIRTH | 9. HEIGHT (Inches) | 10. WEIGHT | 11. % DISABILITY COMP REC'D |
|---|---|---|---|
| 64 | 67½" | 155# | NONE |

| 12. OFFICER | REGULAR | | RESERVE | DATE OF ORIGINAL COMMISSION | 13. AIRMAN (ETS) |
|---|---|---|---|---|---|
| | | X | | 23 MAR 87 | NA |

14. AERONAUTICAL RATING (Indicate if on flying status. If requested assignment will authorize flying duty, indicate flying experience by type of aircraft and hours in each, date and type of instrument card now held, and date of last physical examination.)

9C    C-9A  1328.3 HRS
     C-21A 4.7 HRS

               LAST PHYSICAL 18 JAN 95 - SHORT

| 15. PRESENT ASSIGNMENT AND ATTACHMENT (Indicate military branch, unit address, training, and retirement category) | 16. ASSIGNMENT DESIRED (Indicate unit preferred, specific program training, and retirement category or description of type of training desired.) |
|---|---|
| HQ ARPC/DPRB     FLIGHT NURSE / 03<br>6760 E IRVINGTON PL #2200<br>DENVER CO 80280-2200<br>IRR AS OF DOS          DOS: 15DEC95 | 446 AES/SG<br>1205 12TH ST NE SUITE 102W<br>MCCHORD AFB WA 98438-1326<br>PAY/TRNG A                    X46F3 |

| 17. MILITARY SCHOOLS ATTENDED (Indicate date, course number and title, and location.) | 18. MILITARY EXPERIENCE (Indicate DAFSC, position title, level of command, highest grade, and duration. List only experience that directly substantiates your qualifications for assignment requested.) |
|---|---|
| SOS<br>NSM<br>FLIGHT SCHOOL NOV 91<br>BATTLE FIELD MEDICINE FEB 89 | 92 - 95  SCOTT AFB IL 375 AES  AFSC: X46F3<br>AUG 95 - PRES  375 OG/OGV CHIEF STAN EVAL<br>90 - 92  O.R. STAFF NURSE WIESBADEN AFB GERMANY<br>87 - 90 CASTLE AFB CA - O.R. STAFF NURSE |

| 19. CIVILIAN EDUCATION (Indicate years completed, major subject, and degree, if any.) | 20. CIVILIAN EXPERIENCE (In chronological order showing latest experience first, indicate pertinent experience to include employers, positions held, and duration.) |
|---|---|
| PACIFIC LUTHERAN UNIVERSITY<br>TACOMA WA   AUG 82 | PRIOR TO AD AF  I WAS AN OPERATING NURSE<br>                   TACOMA WA<br>1982 - 1987 |

21. FOR INDIVIDUALS REQUESTING ASSIGNMENT TO A TRAINING SITE BEYOND 100 MILES OF 3 HOURS ONE-WAY DRIVING TIME (AFR 35-41, VOLUME I). I acknowledge my responsibility for any hardships, including financial, incurred in performing the duties of the assignment. I understand I will not be reimbursed for travel expenses incurred for inactive duty training.

| | APPLICANT'S INITIALS |
|---|---|
| I CERTIFY THAT THE DATA CONTAINED HEREIN ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. I ALSO ACKNOWLEDGE THAT UPON MY ASSIGNMENT TO THE READY RESERVE, I AM RESPONSIBLE TO NOTIFY MY EMPLOYER OF MY READY RESERVE STATUS AND THAT AS A READY RESERVIST, I SHALL BE SUBJECT TO INVOLUNTARY ORDER TO ACTIVE DUTY IN TIME OF WAR OR NATIONAL EMERGENCY DECLARED BY THE CONGRESS, A NATIONAL EMERGENCY DECLARED BY THE PRESIDENT, OR WHEN OTHERWISE AUTHORIZED BY LAW. | *MHW* |

| 22. SIGNATURE OF APPLICANT | 23. DATE |
|---|---|
| *Margaret H. Witt* | 22 Sep 95 |

AF000658

From
To

## FIRST INDORSEMENT

| TO | 446 AES/SG   1205 12th ST NE SUITE 102W<br>McChord AFB WA 98438-1326 | FROM<br>To | 932 AW/RSHC   2400 EAST DR RM 133<br>SCOTT AFB IL 62225-5408 |

| XX RECOMMEND | X APPROVAL | DISAPPROVAL | (State reason(s) in the "REMARKS" section.) |

REMARKS

Block position # 0529<del>278</del> 62

| NAME AND TITLE (Please type)<br>Janette L. Moore-Harbert<br>Chief Staff Eval   maj | SIGNATURE<br>Janette L Moore Harbert | DATE<br>25 Oct 95 |

| TO | HQ ARPC/DPRS   6760 E IRVINGTON PL #2200<br>DENVER CO 80280-2200 | FROM<br>446MSS/DPMAE |

## SECOND INDORSEMENT

| RECOMMEND | ✓ APPROVAL (Furnish assignment data) | DISAPPROVAL | (State reason(s) in the "REMARKS" section.) |

| AUTHORIZED GRADE<br>CPT | AUTHORIZED AFSC<br>X46E3 | FUNCTIONAL CODE<br>5640 | TRNG & RETIREMENT CATEGORY<br>A/A |

| UNIT OR TYPE OF ASSIGNMENT | | UNIT | MA | RD | OTHER (Specify) | |

| RESERVE SECTION CODE<br>AI | DUTY POSITION NUMBER<br>0529262 | ASSIGNMENT LOCATION<br>446 AES MCCHORD AFB WA |

| UNIT OF ATTACHMENT | REPORTING OFFICIAL (Name and SSN) |

| PAS<br>T21LFLWO | UNIT OF ATTACHMENT PAS |

| EDCSA<br>13APR96 | RECRUITER ID CODE<br>H3SH04M/ | H04M | RECRUITER DUTY PHONE   MSGT BOBBIE D. BORDERS<br>AUTOVON  576-5939      FAX 2053 |

| GRADE WAIVER | YES | ✓ NO | AUTH | COMMERCIAL  618-256-5939 |

REMARKS      TTI535 INPUT 13MAR96 W/AAN 0460MT2013. FWD FPR TO: 446MSS DPMAE 1205 12TH ST NE
MCCHORD AFB WA 98438 1326.

FIRST UTA: 20 APR 96

| NAME AND TITLE (Please type)<br>DAVE LANGFORD MIL PER CLK<br>984 5434 FAX 984 2856 | SIGNATURE | DATE<br>3-13-96 |

## THIRD INDORSEMENT  (Do not include assignment data except to correct original data)

| TO | HQ AFRES/SGSR   ROBINS AFB GA 31098-1635 | FROM<br>932 AW/RSHC   SCOTT AFB IL 62225-5408 |

| X RECOMMEND | X APPROVAL | DISAPPROVAL | (State reason(s) in the "REMARKS" section.) |

REMARKS

CAPTAIN MARG WITT MEETS ALL REQUIREMENTS IAW AFI 36-2005 PER INTERVIEW WITH HEALTH PROFESSION
RECRUITING.  REGULAR OFFICE.  WILL TAKE RESERVE OATH OF OFFICE DAY OF SEPARATION 15 DEC 95.

| NAME AND TITLE (Please type)<br>BOBBIE D. BORDERS, MSGT, USAF<br>HEALTH PROFESSIONS RECRUITING | SIGNATURE<br>Bobbie Borders | DATE<br>17 OCT 95 |

## FOURTH INDORSEMENT  (Do not include assignment data except to correct original data)

| TO | | FROM | |

| RECOMMEND | APPROVAL | DISAPPROVAL | (State reason(s) in the "REMARKS" section.) |

REMARKS

| NAME AND TITLE (Please type) | SIGNATURE | DATE |

AF000659

Mon May 23 18:51:41 2005

PERSONAL DATA - PRIVACY ACT OF 1974 (USC 552a)

ANG/USAFR POINT CREDIT SUMMARY

DATE PREPARED : 23 MAY 2005

446 AEROMED EVAC SQ 2005

MAJ WITT, MARGARET H
1022 U 16TH AVE
SPOKANE, WA 99203-0000

PAS : T21LFLM0 AI
RET/RETIRE : 0324
CLOSEOUT DATE : 23 MAR 2005
SATISFACTORY SVE : 180000
STATEMENT REASON : ANNUAL

TO THE GUARDSMAN/RESERVIST:
COMPUTERIZED INFORMATION ON YOUR PARTICIPATION IS SHOWN BELOW.  IT IS
POSSIBLE IT MAY BE INACCURATE.  THEREFORE, IT IS NOT A GUARANTEE OF POINTS
SUBJECT TO AUDIT AND ADJUSTMENT.  PAYMENT, RETENTION, PROMOTION, OR RETIRED PAY PURPOSES
SERVICE FOR RETENTION, PROMOTION, OR RETIRED PAY PURPOSES
FOUND, CONTACT YOUR MPF WITHIN 30 DAYS OF RECEIPT OF THIS FORM AND PROVIDE
DOCUMENTATION OF CORRECT POINTS OR SERVICE.  FAILURE TO IDENTIFY ERRORS
PROMPTLY COULD AFFECT FUTURE CREDITING OF POINTS AND SERVICE.

| FROM DT | THRU DT | AD | IDT | IDS | ECI | NBR | TOTAL | RETIRE | SATSVC |
|---|---|---|---|---|---|---|---|---|---|
| 20040324 | 20050323 | 0022 | 0046 | 0000 | 0000 | 015 | 00083 | 00083 | 010000 |

1. ACTIVE DUTY OTHER
2. SPECIAL TOUR
3. SCHOOL TOUR
4. ANNUAL TOUR

5. EXTENDED ACTIVE DUTY
6. AFTP
7. PAID INACTIVE DUTY
8. NONPAID INAC DUTY
9. ECI

TYPE DUTY CODES (TD)

A. NONPAID ACTIVE DUTY
B. CONTINUATION PAY
C. RRPSS...
D. RHP INACTIVE PAY
E. ACTIVE DUTY FHD
F. INAC DUTY STATUS FHD

| FROM DT | THRU DT | TD | PTS | FROM DT | THRU DT | TD | PTS | FROM DT | THRU DT | TD | PTS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 20040415 | 20040415 | 7 | 002 | 20040416 | 20040416 | 7 | 002 | 20040417 | 20040417 | 7 | 002 |
| 20040418 | 20040417 | 7 | 002 | 20040421 | 20040423 | 4 | 003 | 20040514 | 20040517 | 4 | 001 |
| 20040517 | 20040521 | 4 | 004 | 20040522 | 20040522 | 4 | 001 | 20040612 | 20040612 | 7 | 002 |
| 20040520 | 20040522 | 7 | 002 | 20040521 | 20040612 | 4 | 002 | 20040622 | 20040622 | 7 | 002 |
| 20040613 | 20040521 | 4 | 001 | 20040624 | 20040624 | 7 | 002 | 20040630 | 20040630 | 7 | 002 |
| 20040621 | 20040624 | 7 | 002 | 20040629 | 20040630 | 7 | 001 | 20040724 | 20040724 | 7 | 001 |
| 20040623 | 20040623 | 7 | 002 | 20040723 | 20040724 | 7 | 002 | 20040821 | 20040821 | 7 | 002 |
| 20040628 | 20040628 | 7 | 001 | 20040820 | 20040821 | 7 | 002 | 20040918 | 20040918 | 7 | 002 |
| 20040629 | 20040629 | 7 | 001 | 20040927 | 20040927 | 4 | 007 | 20041016 | 20041016 | 7 | 003 |
| 20040701 | 20040701 | 7 | 002 | 20041102 | 20041104 | 4 | 003 | | | | |
| 20040723 | 20040723 | 7 | 002 | | | | | | | | |
| 20040725 | 20040724 | 7 | 002 | | | | | | | | |
| 20040820 | 20040820 | 7 | 001 | | | | | | | | |
| 20040822 | 20040821 | 7 | 002 | | | | | | | | |
| 20040919 | 20040919 | 7 | 001 | | | | | | | | |
| 20041017 | 20041017 | 7 | 002 | | | | | | | | |

AF FORM 526   (COMPUTER GENERATED)

Page:  1  of  3

RRPCSR

AF000660

AF FORM 526   (COMPUTER GENERATED)

Mon May 23 18:51:41 2005

PERSONAL DATA - PRIVACY ACT OF 1974 (USC 552a)

Page:   2 of 3

RRPCSR

AF000661

Mon May 23 18:51:41 2005

PERSONAL DATA - PRIVACY ACT OF 1974 (USC 552a)

SERVICE HISTORY

| FROM DT | THRU DT | AD | IDT | IDS | ECI | MBR | TOTAL | RETIRE | SATSVC |
|---|---|---|---|---|---|---|---|---|---|
| 19870324 | 19880323 | 0350 | 0048 | 0000 | 0100 | 015 | 0365 | 0365 | 010000 |
| 19880324 | 19890323 | 0365 | 0000 | 0000 | 0000 | 015 | 0380 | 0380 | 010000 |
| 19890324 | 19900323 | 0365 | 0000 | 0000 | 0000 | 015 | 0380 | 0380 | 010000 |
| 19900324 | 19910323 | 0365 | 0000 | 0000 | 0000 | 015 | 0380 | 0380 | 010000 |
| 19910324 | 19920323 | 0366 | 0000 | 0000 | 0000 | 015 | 0381 | 0381 | 010000 |
| 19920324 | 19930323 | 0365 | 0000 | 0000 | 0000 | 015 | 0366 | 0366 | 010000 |
| 19930324 | 19940323 | 0365 | 0000 | 0000 | 0000 | 013 | 0338 | 0338 | 010000 |
| 19940324 | 19950323 | 0365 | 0067 | 0000 | 0000 | 000 | 0565 | 0565 | 010000 |
| 19950324 | 19960323 | 0000 | 0052 | 0000 | 0000 | 015 | 0378 | 0378 | 010000 |
| 19960324 | 19970323 | 0000 | 0000 | 0000 | 0000 | 015 | 0365 | 0365 | 010000 |
| 19970324 | 19980323 | 0000 | 0000 | 0000 | 0000 | 015 | 0327 | 0327 | 010000 |
| 19980324 | 19990323 | 0000 | 0071 | 0000 | 0000 | 015 | 0071 | 0071 | 010000 |
| 19990324 | 20000323 | 0000 | 0088 | 0000 | 0000 | 015 | 0088 | 0088 | 010000 |
| 20000324 | 20010323 | 0000 | 0090 | 0000 | 0000 | 015 | 0090 | 0090 | 010000 |
| 20010324 | 20020323 | 0000 | 0089 | 0000 | 0000 | 015 | 0089 | 0089 | 010000 |
| 20020324 | 20030323 | 0000 | 0097 | 0000 | 0000 | 015 | 0097 | 0097 | 010000 |
| 20030324 | 20040323 | 0112 | 0097 | 0000 | 0044 | 015 | 0202 | 0202 | 010000 |
| 20040324 | 20050323 | 0138 | 0020 | 0000 | 0000 | 015 | 0173 | 0173 | 010000 |
| TOTAL POINTS ACCRUED THRU 20050323 | | 3537 | 0448 | 0000 | 0100 | 253 | 04338 | 04218 | 180000 |

AF FORM 526   (COMPUTER GENERATED)

Page:  3  of  3        RRPCSR

AF000662

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES                    ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

## CORRECTION TO DD FORM 214,
## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER (Also, Service Number if applicable) |
|---|---|---|
| WITT  MARGARET  HELEN | AIR FORCE -- USAFR | |

4. MAILING ADDRESS (Include ZIP Code)
1022 WEST 19TH AVE     SPOKANE WA 99203

5. ORIGINAL DD FORM 214 IS CORRECTED AS INDICATED BELOW:

| ITEM NO. | CORRECTED TO READ |
|---|---|
| | SEPARATION DATE ON DD FORM 214 BEING CORRECTED: 2003 JUL 30 |
| 18. | OPERATION ENDURING FREEDOM  SHOULD BE OPERATION SOUTHERN WATCH |

| 6. DATE (YYYYMMDD) | 7. OFFICIAL AUTHORIZED TO SIGN | | | |
|---|---|---|---|---|
| | a. TYPED NAME (Last, First, Middle Initial) | b. GRADE | c. TITLE | d. SIGNATURE |
| 20000127 | BARKER, JEFFREY A. | MSGT | CHIEF, PERSONNEL RELOCATIONS | *Jeffrey A. Barker* |

DD FORM 215, FEB 2000          PREVIOUS EDITION IS OBSOLETE.

SERVICE - 7



AF000663

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES                    THI'  \N IMPORTANT RECORD.
                                           SAFEGUARD IT.                          \N  _TERATIONS IN SHADED AREAS
                                                                                      RENDER FORM VOID

## CE_ _IFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| WITT, MARGARET HELEN | AIR FORCE – USAFR | ▮▮▮▮▮ |

| 4a. GRADE, RATE OR RANK | b. PAY GRADE | 5. DATE OF BIRTH (YYYYMMDD) | 6. RESERVE OBLIGATION TERMINATION DATE |
|---|---|---|---|
| MAJ | O4 | 1964 ▮ | (YYYYMMDD) NA NANA |

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY | b. HOME OF RECORD AT TIME OF ENTRY(City and state, or complete address if known) |
|---|---|
| MCCHORD AFB WA | 1022 WEST 19TH AVENUE SPOKANE WA  99203 |

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | b. STATION WHERE SEPARATED |
|---|---|
| 446 AES  (AFRC)          (     ) | MCCHORD AFB WA |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE     NONE |
|---|---|
| USAFR | AMOUNT: $250,000 |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | YEAR(s) | MONTH(s) | DAY(s) |
|---|---|---|---|---|
| X46F3, FLIGHT NURSE, 7 MONTHS | a. DATE ENTERED AD THIS PERIOD | 2003 | JAN | 01 |
| | b. SEPARATION DATE THIS PERIOD | 2003 | JUL | 30 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 00 | 07 | 00 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 09 | 00 | 09 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 06 | 08 | 28 |
| | f. FOREIGN SERVICE | 00 | 00 | 00 |
| | g. SEA SERVICE | 00 | 00 | 00 |
| | h. EFFECTIVE DATE OF PAY GRADE | 1999 | OCT | 01 |

| 13. DECORATIONS. MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED  (All periods of service) | 14. MILITARY EDUCATION(Course title, number of weeks, and month and year completed) |
|---|---|
| AIR FORCE COMMENDATION MEDAL, AIR FORCE ACHIEVEMENT MEDAL WITH 2 DEVICES, AERIAL ACHIEVEMENT MEDAL, COMBAT READINESS MEDAL WITH 4 BRONZE STARS, SMALL  (SEE REMARKS) | NONE |

| 15a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | | YES | X | NO |
|---|---|---|---|---|
| b. HIGH SCHOOL GRADUATE OR EQUIVALENT | | X | YES | NO |

| 16. DAYS ACCRUED LEAVE PAID  0.0 | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | X | YES | NO |
|---|---|---|---|---|

18. REMARKS

ITEM 13:  ARMS EXPERT MARKSMANSHIP RIBBON WITH DEVICE, NATIONAL DEFENSE
SERVICE MEDAL WITH 1 DEVICE, AIR FORCE OVERSEAS LONG TOUR RIBBON , AIR
FORCE TRAINING RIBBON, AIR FORCE LONGEVITY SERVICE AWARD WITH 3 DEVICES,
ARMED FORCES EXPEDITIONARY MEDAL, AIR FORCE OUTSTANDING UNIT AWARD WITH
3 DEVICES, MERITORIOUS SERVICE MEDAL, ARMED FORCES RESERVE MEDAL WITH
"M" DEVICE     MEMBER SERVED IN OPERATION ENDURING FREEDOM, MCCHORD AFB WA
1 JAN 2003-30 JUL 2003. MEMBER IN AOR 6 JAN 03-28 FEB 05. PERIOD OF
SERVICE UNDER 10 USC 12302 IS EXEMPT FROM 5 YEARS CUMULATIVE SERVICE
UNDER TITLE 38 CHAPTER 43 SECTION (C)(4)(A).

The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and or continued compliance with, the requirements of a Federal benefit program.

| 19a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | b. NEAREST RELATIVE(Name and address - include Zip Code) |
|---|---|
| MARGARET H. WITT 1022 WEST 19TH AVENUE SPOKANE WA  99203 | FRANK WITT 7037 GRANDVIEW PLACE GIG HARBOR WA  98335 |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO    WA   DIRECTOR OF VETERAN' AFFAIRS | | X | YES | NO |
|---|---|---|---|---|

| 21. SIGNATURE OF MEMBER BEING SEPARATED | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
|---|---|
| MEMBER NOT AVAILABLE TO SIGN | JEFFREY A. BARKER, MSGT, USAFR CHIEF, PERSONNEL RELOCATIONS |

### SPECIAL ADDITIONAL INFORMATION  (For use by authorized agencies only)

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| RELEASE FROM ACTIVE DUTY | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AFI 36-3209 | T50 | NOT APPLICABLE |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| USAFR MEMBER RELEASED DUE TO DEMOBILIZATION |

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD) | 30. MEMBER REQUESTS COPY 4 (Initials) N/A |
|---|---|
| NONE | |

DD Form 214-AUTOMATED, FEB 2000          PREVIOUS EDITION IS OBSOLETE.

AF000664

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SH
AREAS RENDER FORM

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) | | | 2. DEPARTMENT, COMPONENT AND BRANCH | | 3. SOCIAL SECURIT |
|---|---|---|---|---|---|
| WITT MARGARET HELEN | | | AIR FORCE -- REG AF | | |

| 4.a. GRADE, RATE OR RANK | 4.b. PAY GRADE |
|---|---|
| CAPT | O3 |

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY | 5. DATE OF BIRTH (YYMMDD) | 6. RESERVE OBLIG. TERM. DA |
|---|---|---|
| TACOMA WA | 64 | Year N/A | Month | Day |

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or comple address if known) |
|---|---|
| 375 AES (AMC) | TACOMA WA |

| 9. COMMAND TO WHICH TRANSFERRED | 8.b. STATION WHERE SEPARATED |
|---|---|
| NOT APPLICABLE | SCOTT AFB   IL |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 10. SGLI COVERAGE   [ ] None |
|---|---|

11. PRIMARY SPECIALTY
046S3 - OPERATING ROOM NURSE, 5 YEARS
3 MONTHS
X046F3 - AIRCREW FLIGHT NURSE, 3 YEARS,
4 MONTHS

10. SGLI COVERAGE   Amount: $ 200,000

| 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|
| a. Date Entered AD This Period | 1987 | Apr | 29 |
| b. Separation Date This Period | 1995 | Dec | 15 |
| c. Net Active Service This Period | 08 | 07 | 17 |
| d. Total Prior Active Service | 00 | 00 | 00 |
| e. Total Prior Inactive Service | 00 | 00 | 00 |
| f. Foreign Service | 00 | 01 | 05 |
| g. Sea Service | 02 | 01 | 07 |
| h. Effective Date of Pay Grade | 1991 | Apr | 11 |

**13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED** (All periods of service)

MERITORIOUS SERVICE MEDAL, AF COMMENDATION MEDAL, AF ACHIEVEMENT MEDAL
WITH ONE OAK LEAF CLUSTER, AF OUTSTANDING UNIT AWARD WITH TWO OAK LEAF
CLUSTERS, COMBAT READINESS MEDAL WITH BRONZE STAR, SMALL ARMS (SEE REMARKS

**14. MILITARY EDUCATION** (Course title, number of weeks, and month and year completed)

MILITARY INDOCTRINATION MEDICAL SERVICE OFFICER, 2 WKS, APR 87.  NURSING
SERVICE MANAGEMENT, CORRESPONDENCE, MAY 88.  BATTLEFIELD NURSING CRSE, 2
WKS, FEB 90.  COACHING AND COUNSELING FOR THE NEW SUPERVISOR, (SEE REMARKS

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes | No | 16. DAYS ACCRUED LEAVE PAID |
|---|---|---|---|---|---|---|
| | | X | | X | | - . 5 - |

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | X | N |
|---|---|---|---|

**18. REMARKS**

ITEM 13:  MARKSMANSHIP RIBBON WITH BRONZE SERVICE STAR.  NATIONAL DEFENSE
SERVICE MEDAL.  AF OVERSEAS LONG TOUR RIBBON.  AF LONGEVITY SERVICE AWARD
WITH ONE OAK LEAF CLUSTER.  AF TRAINING RIBBON.  ITEM 14.  8 HRS, NOV 90.
FLIGHT SCHOOL, 5 WKS, NOV 91.  MS DOS, 8 HRS, FEB 94.  EMAIL COMPUTER CRSE
4 HRS, FEB 94.  WORDPERFECT FOR WINDOWS, 8 HRS, MAR 94.  TEAMS AND TOOLS,
8 HRS, MAR 94.  QUALITY AWARENESS TRAINING, 8 HRS, FEB 94.  NEONATAL
RESUSCITATION, 2 DAYS, AUG 95.  ADVANCED CARDIAC LIFE SUPPORT, 2 DAYS, JUN
95.  SQUADRON OFFICER SCHOOL, CORRESPONDENCE, JUL 95.  LIEUTENANTS
PROFESSIONAL DEVELOPMENT PROGRAM, 1 WK, OCT 89.  MEMBER HAS COMPLETED
INITIAL ACTIVE DUTY SERVICE COMMITMENTS.  SERVED 2 AUG 90 TO 15 DEC 95 IN
Data herein are subject to computer matching within DoD or with other agencies for verification purposes and determining
eligibility or compliance for Federal benefits.

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address - include Zip Code) |
|---|---|
| 7037 GRANDVIEW PLACE | GLORIA & FRANK WITT |
| GIG HARBOR WA 98335 | 7037 GRANDVIEW PLACE |
| | GIG HARBOR WA 98335 |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO WA. DIR OF VET AFFAIRS | (w) | X | Yes | No |
|---|---|---|---|---|

| 21. SIGNATURE OF MEMBER BEING SEPARATED | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and sign) |
|---|---|
| | NANCY M. TAULBEE, MSgt, USAF   SUPT, Retirements & Separations |

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| DISCHARGE | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AFI 36-3207 | FBK | NOT APPLICABLE |

| 28. NARRATIVE REASON FOR SEPARATION | | |
|---|---|---|
| COMPLETION OF REQUIRED ACTIVE SERVICE | | |

| 29. DATES OF TIME LOST DURING THIS PERIOD | 30. MEMBER REQUESTS COPY 4 |
|---|---|
| NONE | initials |

AF000665

JY 3067 PAGE 392

1. NAME (LAST, FIRST, MI)   2. DEPARTMENT, COMPONENT AND BRANCH   3. SOCIAL SECURITY
WITT MARGARET HELEN                     AIR FORCE -- REG AF

4a. GRADE, RATE, OR RANK      4b. PAY GRADE      4c. DATE OF SEPARATION
CAPT                                 O3                    1995  Dec 15

SUPPORT OF OPERATION DESERT SHIELD/STORM.--------NOTHING FOLLOWS-----------

WITT  MARGARET  HELEN

NANCY M. TAULBEE, MSgt, USAF
SUPT, Retirements & Separations

✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱ ✱

AF000666

Mon Jul 01 22:46:06 2002

PERSONAL DATA - PRIVACY ACT OF 1974 (USC 552a)

WITT, MARGARET H                                    *RECORD REVIEW RIP*
446 AEROMED EVAC SQ

                              (PART I)

                    ********** PERSONAL DATA **********

MAJ
MIL PH:                                SEX: FEMALE
DOB:         1964                      HOME PH: 5094567353          RACE: CAUCASIAN
                                                                   BUS PH:

            RELIGION: LUTHERAN CHURCHES
ETHNIC GROUP: OTHER
MARITAL STATUS: SINGLE
DEPEN IN HOUSEHOLD: 0
MIL STATUS OF SPOUSE:
SPOUSE'S SSAN:              TOTAL DEPEN: 0

MAILING ADDRESS: 1022 W 19TH AVE
                 SPOKANE WA 99203-0000

CIV-OCCUPATION: REGIST-NURSE
AIRLINES:
POSITION:
TYPE ACFT:

                    ********** EDUCATION DATA **********

CIVILIAN -   HIGHEST: AWARDED MASTERS DEG         YEAR: 01 JAN 1998
             2ND HIGHEST: ALL SCI-PROF SV-PHYS THERAP
             SPECIALTY: AWARDED BACCALAUREA       YEAR:
             PHE COURSE: NURSING SCIENCE

MILITARY -   SQ OFF SCH

                                    METHOD: NON-RESIDENC  YEAR: JAN 1995
RESC-NGIB-ELIG-STAT: C               METHOD:              YEAR:
                                     METHOD:              YEAR:
                                     METHOD:              YEAR:

* * * * * * * *
* CANNOT LIST THE INDIVIDUALS ON THIS PRINTOUT YOU DESIGNATED TO BE *
* NOTIFIED IN CASE OF AN EMERGENCY OR WHO WILL RECEIVE PAYMENT IN CASE OF *
* DEATH; REQUEST YOU VERIFY YOUR EMERGENCY DATA AND SGLI FORMS FOR ACCURACY *
* BY CONTACTING THE MPF THAT MAINTAINS YOUR PERSONNEL RECORDS. IMA CONTACT *
* HQ ARPC/DPSS TOLL FREE AT 1-800-525-0102 EXT 388. *
* * * * * * * *

                    *RECORD REVIEW RIP*

                         RRROR - 1

Mon Jul 01 22:46:06 2002

PERSONAL DATA - PRIVACY ACT OF 1974 (USC 552a)

MAJ WITT, MARGARET H ▓▓▓▓▓▓

***************DECORATIONS AND AWARDS DATA*************
(PART II)

DECORATION                              NR      AUTH      DECOR HQ      CLOSE DATE
AF ACHIEV MED                            3       000296    446TH MSS     27 JUN 1998
AF COMM MED                              1       000085    7100CSW       30 JUN 1992

ADDL DECOR: 0                                                  FOREIGN DECOR:
DATE DUE NEXT AFRESM: DEC 2005

CAMPAIGNS AND SVC AWARDS   DEVICES           UNIT CITATIONS       DEVICES
CBT RDY MDL                                  AFOUA                3
SM ARM EX RBN              2                  FOREIGN AWARDS       DEVICES
NTL DEF SVC MDL           1
AF OS LT SVC T RBN        0
AF TRAINING RBN          0
AF LGY SVC AWD           2

*********** GRADE DATA ***********
CURRENT: MAJ            DOR: 01 OCT 1999      GR-PERM-DOR-PSD: 01 OCT 1999

*********** SECURITY DATA ***********
SECURITY CLEARANCE: SECRET

********** HEALTH DATA **********
BLOOD TYPE: A    RH-FACTOR: POS
IMMUNIZATION AREA: IIY (S AMER/PARTS OF AFRICA)

RRROR - 2

AF000668

Mon Jul 01 22:46:06.2002

PERSONAL DATA - PRIVACY ACT OF 1974 (USC 552a)
(PART III)

MAJ WITT, MARGARET H [REDACTED] *RECORD REVIEW RIP*

********** RETIREMENT DATA **********

RETIRE/RETEN DATE: MAR 24
RETIREMENT POINTS: 3760
MANDATORY SEPARATION DATE: 22 APR 2015

LAST AF FROM 526, 2002
SAT SVC: 150000

********** PERFORMANCE DATA **********

NEXT-OPR-DUE-DT: 12 APR 2003
REASON-NEXT-OPR: A-ANNUAL
AST-OPR-C/O-DATE: 12 APR 2002

SUPVN-BEGAN: 13 APR 2002
SUPVR-SSAN: 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
SUPVR-GRD-NAME: MAJ WINSLOW, KENNETH H

********** AVIATION DATA **********

AVIATION SVC CODE: 4

AERO RATING:

********** SERVICE DATA **********

PAYDATE: 24 MAR 1987
TAFCS:
TAFMS: 081112
DIEUS: 24 MAR 1987

ETO:
TYSD: 24 MAR 1987
SOURCE OF COMMISSION:        MIL SVC OBLGN:
DIERF: 16 DEC 1995

FORCE ADJ RSN: D
DIR APPOINTMT-CIV
UIF DATA:

********** LANGUAGE DATA **********

LANG ID 1ST:          LANG ID 2ND:
READ:                 READ:
LSTN:                 LSTN:
SPEAK:                SPEAK:
LANG-SELF-ASSESSED-DATA      LANG-SELF-ASSESSED-DATA
LANG-SELF-ASSESSED-ID-1ST: GERMAN     DATE: 01 NOV 1996
LEVEL: FAIR — UNDERSTANDS SOME WORDS AND PHRASE
LANG-SELF-ASSESSED-ID-2ND:
LEVEL:
LANG-SELF-ASSESSED-ID-3RD:
LEVEL:

********** CLASSIFICATION DATA **********

PAFSC: 46S3          SEI:
2AFSC: 46F3          SEI:
3AFSC:               SEI:
UPGRADE SUSPENSE DATE:

CLASSIFICATION INTERVIEW/AUDIT CONDUCTED BY

RRRROR - 3

AF000669

Mon Jul 01 22:46:06 2002

PERSONAL DATA - PRIVACY ACT OF 1974 (USC 552a)

*RECORD REVIEW RIP*

████████████

(PART IV)

MAJ WITT, MARGARET H

********** DUTY ASSIGNMENT DATA **********

DT ASSIGN MPF:    13 APR 1996        DY LOCATION: MCCHORD
DY EFF DATE:      22 OCT 1997        CMD LEVEL: NL
DY POSN NR:       0070632            AUTH GRADE: 04
EDSC:             13 APR 1996        OVERAGE CODE:
DAFSC:            X46F3              OV-EXP DATE:
AFR SECTION ID:   A1                 ART ID:
'Y TITLE: FLIGHT NURSE EXAMINER
tCH PAS:

********** FITNESS DATA **********

STATUS CODE:
STATUS DATE:                         STATUS SCORE:
EXEMPT CODE:          -              EXEMPT EXP DATE:

DEERS:

REMINDER:  IF YOU WISH TO CHANGE PERSONAL OR DEPENDENT DATA, BRING BIRTH
CERTIFICATE(S), MARRIAGE LICENSE AND/OR OTHER LEGAL DOCUMENTS TO THE MPF.  FOR
IMAS, CONTACT HQ ARPC/DPSS, TOLL FREE 1-800-525-0102, EXTENSION 388.
ALL DATES ON THIS RIP ARE IN DAY-MONTH-YEAR FORMAT.

TO THE BEST OF MY KNOWLEDGE, THE INFORMATION CONTAINED
ON THIS FORM IS CORRECT AND COMPLETE, AS NOTED:

MAJ WITT, MARGARET H.    _____

_ORD REVIEW/AUDIT PERFORMED BY _____ 31/May 02
                                                        DATE

FWD TO: U  W/C:          TEL:        FOR:

RRROR - 4



**DEPARTMENT OF THE AIR FORCE**
HEADQUARTERS, 62D AIRLIFT WING (AMC)
MCCHORD AIR FORCE BASE, WASHINGTON

20 Oct 04

MEMORANDUM FOR 446 AW/CC

FROM:  62 AW/JA (Maj Torem)

SUBJECT:  Commander Directed Report of Investigation of Alleged Homosexual Conduct of Major Margaret Witt, 446 AES

1.  This letter memorandum presents my findings of fact, opinions, and recommendations as requested in your letter of 7 July 2004 appointing me to conduct a fact-finding inquiry into alleged homosexual activities by Major Margaret Witt, 446th Aeromedical Evacuation Squadron (AES).  In sum, I have reached the conclusion that it IS more likely than not that Maj Witt has engaged in homosexual conduct and has a propensity to do so in the future.  As fully explained and supported below by findings of fact and opinions reached through the investigative process, I recommend that you initiate the process to discharge Maj Witt from the United States Air Force in accordance with Air Force Instruction (AFI) 36-3209, *Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members*, paragraphs 2.30 and 4.12; accordingly, an administrative discharge board should be appointed per AFI 36-3209, para 4.12 through 4.18.

2.  **Scope and Authority.**  On 7 July 2004, 4 AF/CC sent a memorandum to 446 AW/CC granting authority to conduct a fact-finding inquiry into alleged homosexual conduct by Major Margaret Witt, 446 AES.  That same day, 446 AW/CC appointed the undersigned Major Adam E. Torem, a "Category B" JAG Reservist (IMA) attached to 62 AW/JA, to conduct the inquiry into whether Maj Witt had engaged in homosexual activities and then file a report detailing facts, opinions, and recommendations no later than 23 July 2004 (see Tab 1).  In coordination with 446 AW/JA, you subsequently extended this deadline to 20 October 2004.

3.  **Introduction: Background and Allegations.**  On 14 June 2004, Mr. Patrick McChesney, a 54 year old civilian man residing in Spokane, Washington, sent an electronic mail message to General John Jumper, HQ USAF/CC.  Mr. McChesney alleged that Laurie McChesney, his wife of over 20 years, had left him for another woman in December 2003:  Major Margaret Witt.  The e-mail contained specific allegations, including the name of Major Witt's previous long-term lesbian partner, Tiffany Jenson, and also focused on Mr. McChesney's anger at Major Witt's adulterous behavior and its impact on his marriage and his family.  Attached to the e-mail were several copies of declarations filed in the pending McChesney divorce action which asserted that Laurie McChesney and Maj Witt were engaged in a homosexual extramarital affair (see Tab 2).

General Jumper's staff forwarded this e-mail through AFRC to Maj Witt's command.  Review of the e-mail and the information it contained led to 446 AW/CC seeking and receiving approval

*FOR OFFICIAL USE ONLY*

from 4 AF/CC to initiate this inquiry. Mr. McChesney's e-mail and its allegations raised the following specific issues:

### Specific Allegations Investigated

A.1. Was Maj Witt previously engaged in a long-term committed homosexual relationship with another woman, Tiffany Jenson?

A.2. If so, did Maj Witt engage in homosexual conduct with Tiffany Jenson?

B.1. Is Maj Witt now engaged in a homosexual extramarital affair with another woman, Laurie McChesney (complainant Pat McChesney's wife)?

B.2. If so, is Maj Witt engaging in homosexual conduct with Laurie McChesney?

C. Has Maj Witt made comments to others indicative of her homosexual orientation?

In accordance with AFI 36-3209, para 2.30.1, as well as the definitions contained in Atch 11 to that regulation, affirmative answers to any of the above questions would constitute homosexual conduct and therefore *require* Maj Witt's discharge from the U.S. Air Force Reserve.

4. **Chronology of Events.** The following sequence of events is important to this investigation:

| DATE | EVENT |
| --- | --- |
| 14 Jun 04 | Mr. McChesney's e-mail to Gen Jumper alleging that Maj Witt has engaged in homosexual acts and adultery with Laurie McChesney, his wife, leading to Mr. McChesney seeking a divorce |
| Jun/Jul 04 | 446 AW/CC seeks 4 AF/CC approval to conduct formal inquiry |
| 07 Jul 04 | 4 AF/CC authorizes 446 AW/CC to proceed with formal inquiry |
| 07 Jul 04 | 446 AW/CC appoints Maj Torem to conduct formal inquiry |
| 07-13 Jul 04 | Maj Torem contacts potential witnesses in Spokane, WA |
| 14 Jul 04 | Maj Torem travels to Spokane, WA, to conduct interviews of Mr. Patrick McChesney and Ms. Tiffany Jenson |
| 24 Jul 04 | Maj Torem meets with Col Mary Walker, 446 AES/CC and attempts to interview Maj Witt (aborted due to scheduling conflict) |
| 25 Jul 04 | Maj Torem informs Maj Witt of allegations against her and explains her rights under AFI 36-3209 (but *not* under UCMJ) |
| 27 Jul 04 | James Lobsenz, civilian attorney for Maj Witt, contacts Maj Torem to request information supporting allegations against Maj Witt; |

*FOR OFFICIAL USE ONLY*

4. Chronology of Events (continued).

| DATE | EVENT |
|---|---|
| 27 Jul 04 (cont.) | Maj Torem provides contact information for Area Defense Counsel (ADC) at McChord AFB |
| 6 Aug 04 to 7 Sep 04 | Temporary Delay in Investigation – Family Crisis for Maj Torem |
| 8 Sep 04 | Maj Torem provides attorney Lobsenz with copy of sworn witness statement made by Mr. McChesney and summary of interview with Ms. Jenson; Maj Witt's response requested no later than 14 Sep 04 |
| 13 Sep 04 | Attorney Lobsenz contacts Maj Torem seeking extension of response deadline to allow consultation with military defense counsel. Attorney Lobsenz again referred to McChord AFB ADC, 446 AW/JA and, HQ AFRC to obtain military co-counsel for Maj Witt; extension granted to 15 Oct 04 |
| 14 Oct 04 | Maj Witt declines to make any formal response to investigation |

5. **Investigation – Witness Interviews.** Following various telephone contacts, an in-person interview of Mr. Patrick McChesney was conducted on 14 Jul 04, at his apartment in Spokane, WA. Shortly thereafter, he provided a sworn written statement dated 19 Jul 04 (see Tab 3). In addition to Mr. McChesney's sworn confirmation of his original allegations, an in-person interview of Ms. Tiffany Jenson, Maj Witt's past lesbian lover for over six years, was also conducted on 14 Jul 04 at a Starbuck's coffee shop in Spokane, WA. Although Ms. Jenson was cooperative and willing to be interviewed regarding her first-hand knowledge of Maj Witt's homosexual conduct, she did not wish to provide a written statement against Maj Witt. Instead, she acknowledged the accuracy of a written summary of her interview (see Tab 4). In sum, these witnesses provided the following information (see actual statements for full details):

5A. *Mr. McChesney.* He was married to Laurie McChesney for over 22 years. Laurie has worked with Maj Witt in her civilian capacity as a physical therapist for the Spokane Public School District since approximately December 2000; Laurie is Maj Witt's assistant. Within months of beginning to work with Maj Witt, Laurie McChesney informed her husband that Maj Witt was a homosexual and residing with her lesbian lover, Tiffany Jenson. Laurie McChesney and Maj Witt became close friends and the entire McChesney family would socialize with both Maj Witt and Ms. Jenson. Pat McChesney even installed a wireless intranet computer system in Maj Witt's home as recently as November 2003. Shortly thereafter, Maj Witt and Ms. Jenson ended their relationship due to a disagreement over whether or not Ms. Jenson should bear a child. In the weeks thereafter, Laurie McChesney and Maj Witt began to spend more and more time together, making Pat McChesney suspicious of the nature of their relationship. Some time thereafter, in December 2003, Pat McChesney determined that his wife and Maj Witt had initiated a romantic relationship. According to Pat McChesney, his wife actually admitted to

FOR OFFICIAL USE ONLY

other family members that she and Maj Witt were engaged in homosexual acts together. Given these circumstances, Pat McChesney filed for divorce from his wife of over 22 years.

5B. *Ms. Jenson.* She met Maj Witt in 1996 while they both attended an advanced degree program in physical therapy. In July 1997, Ms. Jenson and Maj Witt became involved in a homosexual relationship. This relationship continued for over six years, until October 2003. During the course of their relationship, Ms. Jenson and Maj Witt engaged in homosexual acts. Ms. Jenson was aware of Maj Witt's service in the Air Force Reserve and, when Maj Witt traveled to the Tacoma area to perform military service, Ms. Jenson would often accompany her and stay off-base, usually at Maj Witt's parents' home in Gig Harbor, WA. Their relationship came to an impasse over Ms. Jenson's desire to have a child, via artificial insemination, and Maj Witt's eventual decision not to go through with such a plan. In early Fall 2003, Ms. Jenson went forward with this plan, announcing to Maj Witt on 31 Oct 03 that she was pregnant; this event drove the actual break-up of the relationship. Since that time, Ms. Jenson observed Maj Witt spend increasingly more time with Laurie McChesney and believes that they began their own romantic relationship before the end of 2003. Ms. Jenson knows that Maj Witt was previously involved in lesbian relationships, including one she personally observed during their time at physical therapy school (immediately preceded their own) and believes that Maj Witt may even have been active as a homosexual during her high school years.

5C. *Laurie McChesney.* Given her current and ongoing relationship with Major Witt, and in an attempt to maintain the relative secrecy of the investigation, no effort was made to interview Mrs. Laurie McChesney.

5D. *Other Potential Witnesses.* In his e-mail to Gen Jumper, Pat McChesney submitted copies of unsigned declarations filed in support of an early hearing in his dissolution action. These items were reviewed for background information, but no attempt was made to contact or interview the people involved in the McChesney divorce case.

6a. **Investigation – Subject Interview.** The subject interview was conducted in accordance with AFI 36-3209, Attachment 11, as well as the procedures recommended in Attachment 4 of the Air Force Commander-Directed Investigation (CDI) Guide dated 1 Feb 00. Thus, Maj Witt was alerted to the reason for the interview and the negative information that had been provided against her, then advised that failure to respond truthfully would be a violation of Article 107 of the Uniform Code of Military Justice. Maj Witt was given the option of immediately providing a verbal or written response or having time to consider the allegations and, as necessary, seeking military or civilian legal counsel. Maj Witt requested time to collect her thoughts and determine an appropriate course of action. She was told to contact Maj Torem, either personally or through legal counsel, the following week. Two days later, James Lobsenz, a civilian attorney with the Seattle law firm of Carney Badley Spellman retained by Maj Witt, contacted Maj Torem to request copies of any evidence supporting the investigation (see Tab 5a). Due to a delay for personal reasons, Maj Torem was unable to provide the requested information until 8 Sep 04. Maj Torem asked that Mr. Lobsenz and Maj Witt submit any responsive statement no later than 14 Sep 04 (see Tab 5b). Mr. Lobsenz requested additional time to allow consultation with military defense counsel (see Tab 5c) and, eventually, he and Maj Witt decided that she would not make any response to the investigation (see Tab 5d).

*FOR OFFICIAL USE ONLY*

AF000674

6b. **Investigation – Observations from Subject Interview.** Although Maj Witt did not provide any formal sworn statements, verbal or written, on 25 Jul 04, I was able to make various observations about her reaction to the allegations against her. From the outset, Maj Witt appeared shocked by the suggestion that she had committed homosexual acts. When she learned that Mr. Pat McChesney was the source of the complaint against her, she stated "he's a lunatic!" Upon learning that Ms. Jenson had confirmed the allegations, Maj Witt became more emotionally upset, turning tearful and red-faced. Expressing frustration, she rhetorically asked "why?" several times and inquired as to whether Ms. Jenson was upset with her for some reason. Maj Witt characterized Ms. Jenson as a "former roommate" and nothing more. During the explanation of her rights under and the processes set out in AFI 36-3209, Maj Witt was tearful and variously repeated "I didn't do anything wrong" and "I can't believe this" several times each. At the end of the 45 minutes we spent during the interview in the 446 AES conference room, Maj Witt asked permission to leave the building and not return to her duty station until later that afternoon, after she had a chance to recompose herself. I secured this permission on her behalf and allowed her to depart the area. 446 AES/CCF confirmed Maj Witt's return to duty later that same afternoon.

7. **Findings, Analysis, and Conclusions.** Based on a review of the original complaining e-mail and its attached supporting declarations as well as the personal interviews conducted in the course of this investigation, I make the following findings:

7a. *Allegations Concerning Maj Witt's Homosexual Conduct with Tiffany Jenson.* I find that it is a fact that Maj Witt and Ms. Jenson were engaged in a long-term romantic homosexual relationship. I further find that it is a fact that during the course of this committed relationship, Maj Witt engaged in homosexual acts with Ms. Jenson. In my opinion, any issue of credibility presented by Mr. McChesney's clear motivation to avenge the demise of his marriage is overcome by Ms. Jenson's independent confirmation of his allegations against Maj Witt. When I spoke to Ms. Jenson to arrange our interview, I offered her every opportunity to back out of the in-person appearance we were scheduling for later that week in Spokane. Not only did she appear at that scheduled meeting, she informed me that she had just given birth to her son a mere 10 days prior to our meeting. Although Ms. Jenson was not in agreement with the military's policy of prohibiting active homosexuals from serving their country, she was upset and disturbed by Maj Witt's adulterous behavior. Thus, she was supportive of Mr. McChesney's complaint against her ex-lover. Given no other hint of any alternative motivation to "turn in" Maj Witt for committing homosexual acts, I found Ms. Jenson wholly credible. Recognizing that her unwillingness to provide a written sworn statement could be problematic (for evidentiary concerns) at a future discharge board, I obtained her promise to review my written summary of our interview and make any necessary corrections. Ms. Jenson upheld that promise and recently reaffirmed what we had discussed many weeks earlier. In accordance with AFI 36-3209, para 2.30.1.1 and A11.5.1, these findings alone would be sufficient to justify a recommendation for discharging Maj Witt from the armed forces.

7b. *Allegations Regarding Maj Witt's Homosexual Conduct with Laurie McChesney.* I find that it is more likely than not that Maj Witt has engaged in a romantic homosexual relationship with Laurie McChesney, to include the commission of homosexual acts. While the evidence in this area is not nearly as clear as that relating to Maj Witt's prior relationship with Ms. Jenson,

*FOR OFFICIAL USE ONLY*

the statements of both Ms. Jenson and Mr. McChesney point to a blossoming relationship between Maj Witt and Laurie McChesney in the latter portion of 2003. This relationship appears to be much more than a work-related friendship, and the declarations submitted with the original complaining e-mail support a conclusion that it is a homosexual relationship.

7c. *Allegations Regarding Maj Witt's Comments about her Sexual Orientation.* I find that it is NOT more likely than not that Maj Witt made comments that a reasonable person would find indicative of the her homosexuality. The portions of her Declaration apparently filed in support of Laurie McChesney in the divorce action (as included with Mr. McChesney's original e-mail) are not of the type contemplated by the definitions contained in AFI 36-3209, para A11.6.9. While one could "read between the lines" and conclude that Maj Witt and Laurie McChesney were lesbian lovers, no evidence was presented or uncovered during the course of this investigation that Maj Witt herself made any direct or open statements in that regard. Further, Mr. McChesney's observation that homosexual couples were present at various social events at Maj Witt's home is not legally sufficient to allow a conclusion that Maj Witt is also a homosexual. Therefore, this allegation should not be relied upon as a basis for discharging Maj Witt from her military service.

8. **Recommendation.** As noted in Title 10 of the United States Code, Section 654(a), and reiterated in AFI 36-3209, paragraph 1.15.15, "the presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability." Therefore, after full consideration of the mission detailed to me in my appointment letter, I make the following recommendation:

*In accordance with my above-noted findings that it is a fact, or at the very least more likely than not, that Maj Witt is a homosexual who has already engaged in homosexual conduct, and has demonstrated a propensity to engage in homosexual acts, I recommend that 446/CC consult with 446 AW/JA and immediately initiate administrative discharge proceedings against Major Margaret Witt, 446 AES, as mandated by AFI 36-3209, para 2.30.1.*

Maj Witt chose not to submit a statement that might have altered the view of the evidence relied upon in reaching this *Recommendation.*

9. **Discharge of Major Witt.** The required procedures for discharging Maj Witt are fully explained in AFI 36-3209, specifically para 2.30 through 2.33 and para 4.12 through 4.18. As noted in subparagraph 4.12.2, all officers recommended for discharge for homosexual conduct are given an opportunity to have the case heard by an administrative discharge board. Thus, if you choose to follow my recommendation regarding discharge of Maj Witt, she will have the option of either accepting your discharge notification without a challenge or of demanding a board to review the evidence in this matter. In any case, under the pertinent portions of AFI 36-3209 (see Table 2.1, Rule 33, restricted by para A2.5.4.2), she will most probably receive an honorable discharge because there is no evidence that she committed any homosexual conduct that involved the use of force, threats, intimidation, or non-consensual partners. Despite her probable commission of adultery with Laurie McChesney, a violation under the UCMJ, it is my

FOR OFFICIAL USE ONLY

AF000676

understanding that it was never the intention of 446 AW/JA to pursue criminal prosecution of Maj Witt for any such offense. Even so, if Maj Witt's immediate commander reviews the evidence and determines that the adulterous behavior described therein is sufficiently aggravating, then a general discharge may be warranted (see AFI 36-3209, para A2.2.2). In this case, the characterization of Maj Witt's service could be used as a negotiating tool to avoid any insistence on her behalf of pursuing the matter to an administrative discharge board.

10. If necessary, I can schedule an appointment to meet with you at your office at any time you deem convenient. I will be able to answer any questions you might have about the conduct of this investigation, as well as its findings and recommendations. In the meantime, please contact me at my civilian office at (360) 753-6291 or via my cell phone at (253) 307-1862 if you have any immediate questions or further directions for me.

ADAM E. TOREM, Maj, USAFR
Assistant Staff Judge Advocate

Attachments:
1. Appointment Letters
2. E-mail Complaint and Attachments – Patrick McChesney (14 Jun 04)
3. Sworn Witness Statement – Patrick McChesney (19 Jul 04)
4a. Summarized Witness Interview – Tiffany Jenson (14 Jun 04)
4b. E-mail Confirmation of Accurate Summary – Tiffany Jenson (9 Sep 04)
5a. Fax from Attorney James Lobsenz (27 Jul 04)
5b. Fax Cover Sheet to Attorney James Lobsenz (8 Sep 04)
5c. Letter from Attorney James Lobsenz re: Military Defense Counsel (14 Sep 04)
5d. Letter from Attorney James Lobsenz re: Declining to Respond (14 Oct 04)

FOR OFFICIAL USE ONLY

# DEPARTMENT OF THE AIR FORCE
Headquarters 446 Airlift Wing (AFRC)
McChord Air Force Base, Washington 98438-1326

MEMORANDUM FOR MAJOR ADAM TOREM

7 July 2004

FROM: 446 AW/CC

SUBJECT: Homosexual Conduct Fact-Finding Inquiry

1. This letter appoints you to inquire into the allegation that a member of the 446 AW has engaged in homosexual conduct.

2. Report facts, opinions, and recommendations in letter form by 23 July 2004, unless an extension is granted. Ensure facts, opinions, and recommendations made are appropriately characterized. Refer to the Air Force's guidebook on Commander Directed Investigations (CDI) before beginning the investigation.

3. Consult with the Staff Judge Advocate prior to investigation.

4. By copy of this appointing order, members of 446 AW will provide the necessary assistance to help you in executing this tasking. Access to records germane to this investigating and clerical assistance will be provided.

ERIC W. CRABTREE, Colonel, USAFR
Commander, 446 AW

Attachment:

4 AF/CC memorandum

AF000678

07/07/2004  12:56    9476566                    CMDSECTION

PAGE  01/01



# DEPARTMENT OF THE AIR FORCE
### AIR FORCE RESERVE COMMAND

July 7, 2004

MEMORANDUM FOR  446 AW/CC

FROM:  4 AF/CC
      895 Baucom Ave  SE
      March  ARB CA  92518-2266

SUBJECT:  Homosexual Conduct Fact-Finding Inquiry

1. I have reviewed your request for authorization to proceed with a fact-finding inquiry of homosexual conduct by Major Margaret Witt, 446 AES.

2. I have also reviewed the evidence and find the information provided to me, considering its source and surrounding circumstances, supports a reasonable belief that there is a basis for conducting an investigation.  Therefore, I authorize this fact-finding inquiry.

ROBERT E. DUIGNAN, Maj Gen, USAFR
Commander

AF000679

-----Original Message-----
From: Pat McChesney [mailto:patmcchesney@att.net]
Sent: Monday, June 14, 2004 17:08
To: Jumper John Gen AF/CC
Subject: Major Margaret Witt

General John Jumper:

On 1 December 2003 my wife, Laurie McChesney, informed me she was leaving me for Major Margaret Witt, USAF Reserve. Laurie and I had been married for nearly 22 years and had three children, ages 13, 19 and 21 together.

My wife's relationship changed dramatically on 31 October 2003 when Major Witt's then six year lesbian partner, Tiffany Jenson, informed Major Witt that she was pregnant. Tiffany and Major Witt had for some time planned to have Tiffany artificially inseminated. My wife and I were attending a family Halloween party that night. Major Witt called and asked my wife to leave the party. My wife told me her friend Major Witt was despondent, hysterical and suicidal due to the devastating news that Tiffany was pregnant.

Laurie admitted to me and several others in sworn declarations filed in the subsequent divorce proceedings that her friendship with Major Witt became romantic in November 2003. She and Major Witt spent the night together on 31 October 2003, 3 November 2003, 6 November 2003, 8 November 2003 and 31 December 2003 that I am aware of.

I initiated divorce proceedings in an effort to have my wife removed from my home where I was living with my 13 year-old son, S■ M■■■■■■, where my wife continued her adulterous love affair with Major Witt by phone from the home. Laurie told me on several occasions she was going to move in with Major Witt once the divorce was final.

In Laurie's response to the divorce filing, a sworn declaration was submitted by Major Witt on her behalf. In her Declaration Major Witt attempts to paint me as a danger to my son S■ based on my reaction to 1) the devastating news of 1 December 2003 that my wife was a lesbian in love with Major Witt and going to leave me and 2) my reaction two days later on 3 December 2003 when my wife left my home to "get some space" and specifically told me she was NOT going to Major Witt's house. She in face did go to Major Witt's house, picked her up and the two of them went to another lesbian couples house to spend the night. My wife has specifically told me on her way out of the house she was NOT going to Major Witt's house and told me to call her cell phone if I didn't believe her. Prior to the traumatic news on 1 December, my wife had repeatedly denied to me that her relationship with Major Witt more than just professional. Major Witt and my wife work together daily for the Spokane Public School District.

Major Witt never states in her sworn declaration that her adulterous love affair with my wife and the betrayal of our friendship was the cause of my extreme emotional trauma, the break up of my twenty-two year marriage and my family.

Major Witt also spends considerable time in her declaration portraying

AF000680

herself as the benevolent safe harbor for my son S█ while portraying me as the dangerous unstable unpredictable ill-tempered father.

In my opinion, Major Witt's adulterous love affair with my wife and the sworn Declaration she filed which clearly contains half-truths, lies and self-serving statements attempting to separate me from my son is amoral and perjurious. I believe she is a potential predator to other heterosexual women in the armed services and her behavior and statements in her sworn declarations demonstrates her willingness to go extreme measures to get what she wants.

It was only after serious consideration over the last few months that I decided to report the conduct of Major Witt to the Air Force. All of those who have been or are currently on active or reserve duty in the armed forces who know of my circumstances encouraged me to report her conduct. I did not consult with my Godfather, Admiral Jackson D Arnold, USN, Ret. due to his age and the recent death of his wife Muriel.

I am willing to provide additional information if the Air Force decides this warrants further investigation. Tiffany Jenson is also willing to provide further information regarding Major Witt including information regarding an affair Major Witt had with a female teacher while attending junior high school.

I believe Major Witt operates out of McChord Air Force base in Tacoma Washington.

List of attachments (all declarations filed with Spokane Superior Court under penalty of perjury):

1) Declaration of Major Witt dated January 14, 2004 (Maj_Witt_Declaration.pdf). See paragraph for Major Witt's description of her relationship with my wife.
2) Declaration of Melinda McChesney (Melinda_Declaration.pdf). See page 5 line 7 for the beginning of my wife's description of her relationship with Major Witt.
3) Declaration of Heather McGuinness (Heather_Declaration.pdf). See paragraph 5 through 7.
4) Declaration of Bridgette Halverson (Halverson_Declaration.pdf). See paragraph 2 through 7.

Please contact me if you require additional information: ==================
Pat D McChesney 326 W. 6th Ave. Apt 301 Spokane, WA 99204 patmcchesney@att.net 509 217 5058 (mobile home phone) 509 991 5880 (cell) 775 599 2249 (fax) ==================

AF000681

## Torem Adam Maj 62 AW/JA

**From:**   Torem Adam Maj 62 AW/JA

**Sent:**   Wednesday, September 08, 2004 4:18 PM

**To:**   'tjenson@advantagept.net'; 'aptherapy2@qwest.net'

**Subject:** Air Force Investigation

TO:  Tiffany Jenson

RE:  Investigation of Maj Margaret Witt

As you will recall, we met on the afternoon of Wednesday, July 14, 2004.  You were willing to speak to me about Margaret Witt, but you were not willing to reduce your sworn verbal comments to a formal written statement.  In this e-mail, I have summarized our discussion and ask that you review the following paragraphs for accuracy.  If I have misstated or mischaracterized any of your sworn verbal comments, please reply to me and point out any mistakes.  If you agree that this e-mail contains an accurate summary of your sworn verbal comments to me, please reply to me and indicate as much.  In order to ensure greater timeliness, please send your reply to my home e-mail address:  adamtorem@writeme.com.

Thanks you very much for your continued cooperation with this investigation.  I appreciate your understanding of the reasons for my delay in completing this phase of the investigation.

Major Adam E. Torem
USAF Reserve

- - - - - - - - - - Summary of Interview with Tiffany Jenson - - - Weds, Sept 14, 2004 - - - - - - -

My name is Tiffany Jenson.  I am 34 years old.  I reside in Spokane, Washington.  I swear that all of the information I am providing to Major Adam E. Torem in this interview is true and accurate.

I met Margaret Witt in 1996 while attending the physical therapy school at Eastern Washington University.  We were both enrolled in a master's degree program.  There were about 30 people in our class; our group graduated in December 1998.

At first, Margaret and I were just classmates, but we became romantically involved in a lesbian relationship in July 1997.  This was not the first homosexual relationship for me or for Margaret Witt.  At the time we became involved, Margaret was just ending another homosexual relationship.  Margaret was my second lesbian lover.  We engaged in a committed and loving relationship from July 1997 through October 2003.  Our relationship included sexual relations and intercourse.  For the majority of our relationship, we lived in a home that we owned together in Spokane; the house was titled in Margaret's name, but I owned a portion of the residence.  Throughout the course of our six year relationship, Margaret was always fearful of the Air Force discovering our relationship.

My relationship with Margaret came to an end on October 31, 2003, due to my desire to have a family and Margaret's decision not to participate with me in this endeavor.  We had previously been in agreement about this and had even identified a friend of her to act as a sperm donor, the intent being for me to undergo artificial insemination and then carry our child.  Margaret's friend actually provided his sperm sample to a facility sometime in 2002.  In addition, Margaret obtained the necessary blood and communicable disease testing to allow us to go forward with this plan.  However, following a visit from Margaret's parents in the summer of 2002, Margaret learned that her family would not support her.  She decided that she didn't want to be a parent.  Margaret asked that we delay following through on our plan to have a family.  I agreed, and Margaret and I attended some counseling sessions together over the course of the next year in an attempt to work things out.

In summer 2003, I decided that I still wanted to be a parent, with or without Margaret.  Therefore, in mid-August 2003, I made arrangements to go forward with my plan to have a family.  I did not use the sperm sample donated by Margaret's friend, but identified an alternate donor.  In mid-October 2003, while Margaret was away performing military duties, I was inseminated.  Fortunately, this resulted in my pregnancy and I gave birth to my son, T█, on July 4, 2004.

AF000682

When Margaret and I realized that we would not be able to resolve our differences regarding the desire to have a family, we decided that Margaret would buy me out of my portion of the Spokane home. We had not yet finalized this buy-out on October 31, 2003, when I first informed Margaret of my insemination and positive pregnancy test. In fact, we only worked out the financial details of the buy-out in early 2004.

During my relationship with Margaret, I would accompany her over to the Seattle area when she had weekend military duty at McChord Air Force Base. We would stay at her parents' home in Gig Harbor, Washington. Gloria and Frank Witt are retired school teachers and Margaret had grown up in that area, attending and graduating from Curtis High School in University Place, Washington. In my opinion, Margaret knew she was a lesbian well before she accepted a commission in the U.S. Air Force. I think she may have know when she was still in high school.

In late 2003, it came to my attention that Margaret was spending a lot more time with one of her colleagues from work: Laurie McChesney. They both worked for the Spokane School District, Margaret as a physical therapist and Laurie as her aide. They had developed a close friendship over at least a year, but in Fall 2003 they began to spend a lot more time together. Outside of work, they attended a yoga class together at least one evening per week and then went out together afterwards, to bars or to coffee shops or similar places. My relationship with Margaret was definitely on its way to ending and Margaret was having a hard time with that. Laurie apparently provided some emotional support for Margaret and it later became more than that, turning into a romantic relationship.

On October 31, 2003, I talked with Margaret about Laurie McChesney. At that time, I told her I thought she was spending a lot of time with Laurie. We spoke about it again in early 2004, when we were finalizing the buy-out of the home. Based on the McChesney's pending divorce, I had concluded that Margaret and Laurie had become engaged in a lesbian relationship. When I told this to Margaret, she did not deny it or otherwise protest. I even told Margaret that I thought her decision to engage in the affair with Laurie was devastating to the McChesney marriage and their household, and Margaret did not refute what I was saying to her whatsoever.

Obviously, I do not have any objection to Margaret's homosexual orientation or to her homosexual conduct. I am concerned that Margaret engaged in adultery with another man's wife and contributed to the destruction of a 20+ year marital relationship. If the military wants to do anything to discipline Margaret, I believe that they should focus on her adulterous behavior, not her existence as a lesbian. However, I have been advised of the military's policy on homosexual conduct and I realize that my statements regarding Margaret's homosexual relationships with me and with Laurie McChesney can and probably will be used to terminate her years of service.

Tiffany Jenson

AF000683

## Torem Adam Maj 62 AW/JA

**From:**   Adam & Cheryl Torem [ctorem@earthlink.net]

**Sent:**   Thursday, September 09, 2004 5:20 PM

**To:**   Torem, Adam -- Work; Torem Adam Maj 62 AW/JA

**Subject:** Fw: investigation

Print for Investigation File -- Attach as Exhibit
----- Original Message -----
**From:** Tiffany Jenson
**To:** adamtorem@writeme.com
**Sent:** Thursday, September 09, 2004 1:22 PM
**Subject:** investigation

Adam:

I reviewed my statement on the email and it is accurate.  The only change is that Margie and I co-owned our home legally.

I am sorry to hear about your sister.

Good luck with everything.  Let me know if you need anything else from me.  Tiffany

AF000684

MAY-16-2005  08:05          62HW/JH                                    P.02/03

## STATEMENT OF TIFFANY JENSON

My name is Tiffany Jenson.  I am ~~34~~ 35 years old.  I reside in Spokane, Washington.

I met Margaret Witt in 1996 while attending the physical therapy school at Eastern Washington University.  We were both enrolled in a master's degree program.  There were about 30 people in our class; our group graduated in December 1998.

At first, Margaret and I were just classmates, but we became romantically involved in a lesbian relationship in July 1997.  This was not the first homosexual relationship for me or for Margaret Witt.  At the time we became involved, Margaret was just ending another homosexual relationship.  Margaret was my second lesbian lover.  We engaged in a committed and loving relationship from July 1997 through October 2003.  Our relationship included sexual relations and intercourse.  For the majority of our relationship, we lived in a home that we co-owned together in Spokane.  Throughout the course of our six year relationship, Margaret was always fearful of the Air Force discovering our relationship.

My relationship with Margaret came to an end on October 31, 2003, due to my desire to have a family and Margaret's decision not to participate with me in this endeavor.  We had previously been in agreement about this and had even identified a friend of her to act as a sperm donor, the intent being for me to undergo artificial insemination and then carry our child.  Margaret's friend actually provided his sperm sample to a facility sometime in 2002.  In addition, Margaret obtained the necessary blood and communicable disease testing to allow us to go forward with this plan.  However, following a visit from Margaret's parents in the summer of 2002, Margaret learned that her family would not support her.  She decided that she didn't want to be a parent.  Margaret asked that we delay following through on our plan to have a family.  I agreed, and Margaret and I attended some counseling sessions together over the course of the next year in an attempt to work things out.

In summer 2003, I decided that I still wanted to be a parent, with or without Margaret.  Therefore, in mid-August 2003, I made arrangements to go forward with my plan to have a family.  I did not use the sperm sample donated by Margaret's friend, but identified an alternate donor.  In mid-October 2003, while Margaret was away performing military duties, I was inseminated.  Fortunately, this resulted in my pregnancy and I gave birth to my son, T█████ on July 4, 2004.

When Margaret and I realized that we would not be able to resolve our differences regarding the desire to have a family, we decided that Margaret would buy me out of my portion of the Spokane home.  We had not yet finalized this buy-out on October 31, 2003, when I first informed Margaret of my insemination and positive pregnancy test.  In fact, we only worked out the financial details of the buy-out in early 2004.

During my relationship with Margaret, I would accompany her over to the Seattle area when she had weekend military duty at McChord Air Force Base.  We would stay at her parents' home in Gig Harbor, Washington.  Gloria and Frank Witt are retired school teachers and Margaret had grown up in that area, attending and graduating from Curtis High School in University Place,

AF000685 

Washington. In my opinion, Margaret knew she was a lesbian well before she accepted a commission in the U.S. Air Force. I think she may have known when she was still in high school.

In late 2003, it came to my attention that Margaret was spending a lot more time with one of her colleagues from work: Laurie McChesney. They both worked for the Spokane School District, Margaret as a physical therapist and Laurie as her aide. They had developed a close friendship over at least a year, but in Fall 2003 they began to spend a lot more time together. Outside of work, they attended a yoga class together at least one evening per week and then went out together afterwards, to bars or to coffee shops or similar places. My relationship with Margaret was definitely on its way to ending and Margaret was having a hard time with that. Laurie apparently provided some emotional support for Margaret and it later became more than that, turning into a romantic relationship.

On October 31, 2003, I talked with Margaret about Laurie McChesney. At that time, I told her I thought she was spending a lot of time with Laurie. We spoke about it again in early 2004, when we were finalizing the buy-out of the home. Based on the McChesney's pending divorce, I had concluded that Margaret and Laurie had become engaged in a lesbian relationship. When I told this to Margaret, she did not deny it or otherwise protest. I even told Margaret that I thought her decision to engage in the affair with Laurie was devastating to the McChesney marriage and their household, and Margaret did not refute what I was saying to her whatsoever.

Obviously, I do not have any objection to Margaret's homosexual orientation or to her homosexual conduct. I am concerned that Margaret engaged in adultery with another man's wife and contributed to the destruction of a 20+ year marital relationship. If the military wants to do anything to discipline Margaret, I believe that they should focus on her adulterous behavior, not her existence as a lesbian. However, I have been advised of the military's policy on homosexual conduct and I realize that my statements regarding Margaret's homosexual relationships with me and with Laurie McChesney can and probably will be used to terminate her years of service.

I swear that all the information above in this statement of Tiffany Jenson is true.

_____
Tiffany Jenson

STATE OF WASHINGTON, COUNTY OF _Spokane_, ss.

Subscribed and sworn to by Tiffany Jenson before me, a person authorized to administer oaths as a Notary Public, in the County of _Spokane_ and State of Washington, as witness my hand and official seal, on _May 2,_ 2005.

_____
Notary Public
My commission expires on 5/5/08

Notary Public
State of Washington
BARBARA J JOHNSON
My Appointment Expires May 5, 2008

2

AF000686

## STATEMENT OF SUSPECT/WITNESS/COMPLAINANT

| | SUSPECT |
|---|---|
| | WITNESS/COMPLAINANT |

### PRIVACY ACT STATEMENT

AUTHORITY 10 U.S.C. 8013; 44 U.S.C. 3101, and EO 9397
PRINCIPAL PURPOSES: Used to record information and details of criminal activity which may require investigative action by commanders, supervisors, security police, AFOSI special agents, etc., and to provide information to appropriate individuals within DoD organizations who ensure proper legal and administrative action is taken.
ROUTINE USES: Information may be disclosed to local, county, state, and federal law enforcement/investigative authorities for investigation and possible criminal prosecution or civil court action. Information extracted from this form may be used in other related criminal and/or civil proceedings.
DISCLOSURE IS VOLUNTARY. SSN is used to positively identify the individual making the statement.

### I. STATEMENT INFORMATION

| DATE (YYYYMMDD) | TIME | LOCATION AND INSTALLATION (Bldg/Room No) | UNIT TAKING STATEMENT | | REPEAT (If known) |
|---|---|---|---|---|---|
| 20040719 | 16:55 | Spokane, WA | 446 AW/JA | | OFFENSE |
| | | | | | COMPLAINT |

### II. PERSONAL IDENTIFICATION (Print or Type)

| NAME (Last, First, Middle Initial) | SSN | STATUS/GRADE |
|---|---|---|
| McChesney, Patrick, D | ██████████ | |

LOCAL ADDRESS (Include Zip Code)
326 W Sixth Ave Apt 301, Spokane, WA 99204

| DATE AND PLACE OF BIRTH (If required) | TELEPHONE | |
|---|---|---|
| ██████████ | HOME ████████ | DUTY |

PERMANENT ADDRESS OR HOME OF RECORD (Include Zip Code)
326 W Sixth Ave Apt 301, Spokane, WA 99204

| MILITARY ORGANIZATION/EMPLOYER | DEROS |
|---|---|

### SPONSOR INFORMATION

| NAME (Last, First, Middle Initial) | GRADE | SSN | ORGANIZATION | DUTY PHONE |
|---|---|---|---|---|

### III. ACKNOWLEDGEMENT OF OFFENSES AND 5TH AMENDMENT/ARTICLE 31 RIGHTS ADVISEMENT (Suspect Only)

I have been advised that I am suspected of the following offenses:

ADVISED BY (Full Name and Rank)

INDIVIDUAL IDENTIFIED HIMSELF/HERSELF AS A (SF, special agent, etc)

| SUSPECT INITIALS | and advised me that I have the following rights according to the 5th Amendment of the U.S. Constitution/Article 31 of the Uniform Code of Military Justice. |
|---|---|
| n/a | I have the right to remain silent - that is to say nothing at all. |
| n/a | Any statement I make, oral or written, may be used as evidence against me in a trial or in other judicial, non-judicial, or administrative proceedings. |
| n/a | I have the right to consult with a lawyer. |
| n/a | I have the right to have a lawyer present during this interview. |
| n/a | I may obtain a civilian lawyer of my own choice at no expense to the government. |
| n/a | I may request a lawyer any time during this interview. |
| n/a | If I decide to answer questions with or without a lawyer present, I may stop the questioning at any time. |
| n/a | MILITARY ONLY: If I want a military lawyer, one will be appointed for me free of charge. |
| n/a | CIVILIANS ONLY: If I cannot afford a lawyer and want one, a lawyer will be appointed for me by civilian authorities. |

| SUSPECT INITIALS | I have read my rights as listed above and I fully understand my rights. No promises, threats, or inducements of any kind have been made to me. No pressure or coercion has been used against me. I make the following choice. (Initial One) |
|---|---|
| n/a | I do not want a lawyer. I am willing to answer questions or make a statement or both, about the offense(s) under investigation. |
| n/a | I do not want a lawyer and I do not wish to make a statement or answer any questions. |
| n/a | I want a lawyer. I will not make any statement or answer any questions until I talk to a lawyer. |

I fully understand my rights and that my signature does not constitute an admission of guilt.

SIGNATURE OF SUSPECT

SIGNATURE OF WITNESS/INTERVIEWER

AF IMT 1168, 19980401, V2

PREVIOUS EDITIONS ARE OBSOLETE.

PAGE 1 OF 4 PAGES

AE000687

## IV. STATEMENT

On January 14, 1982, I married Laurie Ann McChesney in San Diego, CA. We have three children by this marriage - A███ M███ D███ M███ and S███ ███ M███, ages 21, 19 and 13 respectively. I have a daughter, Melinda Marie McChesney (age 30) by a previous marriage. I thought my marriage was a secure and loving relationship. I was blindsided by what was about to occur beginning in November 2003.

On December 1, 2003, my wife informed me she was leaving me for Margaret Witt. On January 5, 2004, I filed for divorce in Spokane County, Washington. This divorce is "in progress" for lack of better term and is scheduled for a court hearing on November 15, 2004.

My wife met Margaret Witt in December 2000 when Laurie started working for Spokane Public Schools District 81. Witt is a physical therapist (PT) and Laurie is a PT assistant. I met Margaret sometime in the first year of Laurie's employment. Laurie told me Margaret was a lesbian and was living with another women, Tiffany Jenson, her partner for approximately six years total, since 1997.

Laurie and Margaret were close friends and eventually my family (Laurie, S██ & I) would go to Margaret and Tiffany's house and they would come to our house for social events, usually connected with Margaret and Laurie's employment with Spokane Public Schools. I considered Margaret a friend and helped her with technical questions related to computers, set up a wireless intranet in her home in early November 2003, even re-arranged the bed in her master bedroom to make it easier for Margaret to get in and out of once she had knee surgery on November 4, 2003. My family would go to Margaret and Tiffany's house on a regular basis to watch The West Wing episodes on Wednesday nights.

In the fall of 2003, Laurie and Margaret started to spend more time together. On October 31, Laurie and I were attending a Halloween party when Margaret called Laurie and told her that Tiffany had gone ahead with a family plan they had worked on for over a year and was pregnant via artificial insemination. Laurie told me Margaret was beside herself. Later, I was told Margaret was suicidal over this news. Margaret was scheduled to have knee surgery on November 4, 2003. She was on a leave of absence from Spokane Public Schools from November 2003 until February or March 2004.

Margaret kicked her pregnant partner Tiffany out of the house they owned together and Laurie became the primary person assisting Margaret in her post-surgery care. Laurie spent several nights at Margie's house in November and December 2003. Once Tiffany was kicked out, Laurie and Margaret's relationship became romantic. I became suspicious of their relationship and told my wife it was affecting our marriage. Laurie denied their relationship was anything but professional until I confronted her with a cell phone bill on December 1, 2003. Background information and a chronology of the November – December time frame is documented in my *Reply Declaration* dated January 16, 2004 and filed in my divorce action.

## V. OATH/SIGNATURE

"I hereby voluntarily and of my own free will make this statement without having been subjected to any coercion, unlawful influence, or unlawful inducement. I swear (or affirm) I have read this statement, initialed all pages and corrections, and it is true and correct to the best of my knowledge."

SIGNATURE OF PERSON MAKING STATEMENT

*[signature]*

SIGNATURE OF WITNESS/INTERVIEWER

*[signature]*

Subscribed and sworn to before me, a person authorized by law to administer oaths, this ___ 19TH day of ___ JULY ___ 2004 (year).

SIGNATURE OF PERSON ADMINISTERING OATH

*[signature]*    ADAM E. TCREM, MAJ, USAF

## VI. INSTRUCTIONS FOR CONTINUATION PAGE(S)

Use plain bond paper (both sides optional). At the top right of each page, print or type "(Last name of individual making the Statement) on (Date)." At the bottom of each page, print or type: "Page ___ of ___ Pages." The individual must initial the top and bottom entries and sign his/her name at the bottom of each page.

AF IMT 1168, 19980401, V2    (REVERSE)

AF000688

McChesney on 20040719

When I asked Laurie if she had consummated her lesbian relationship with Margaret in early December, Laurie said she had not. Laurie had told others she had but never admitted it to me. The first family member Laurie told about her romantic relationship with Margaret was my daughter Melinda the day she arrived from Birmingham AL on December 22, 2003 for the Christmas holidays. In a *Declaration* dated January 15, 2004 prepared by Laurie's cousin, Heather McGuinness, Laurie told Heather she was romantically involved with Margaret beginning in November 2003. In a conversation with Heather in February or March of 2004, Heather told me she had asked Laurie "How is the sex (with Margaret)?" Laurie replied, "Pretty good."

Laurie continued to carry on her relationship with Margaret through the holidays and into January. When Laurie told me she expected me to continue to live in my house in the guest room with my 13 year old son S███ in his room and Laurie talking to Margaret on her cell phone from the master bedroom and continuing their romantic involvement at Margie's home located in Spokane until the divorce was final in 8 to 10 months, I decided it was time to file for divorce and have Laurie removed from the house.

Laurie told all of the family members and me several times throughout December that she intended to move in with Margaret as soon as the divorce was final and all she needed was a set of bedroom furniture for the second bedroom in Margaret's house for Sam to sleep in.

On January 7, 2004 Laurie was served the divorce papers. Laurie responded to this filing with several declarations, including one filed by Margaret on January 14, 2004. In this *Declaration*, Margaret attempts to paint me as a person who is unstable, ill tempered and violent. Margaret indicated that I would "blow-up" for reasons unknown. What Margaret never indicated in her *Declaration* is that the reason for my anger and the divorce was her extramarital lesbian affair with my wife. See her *Declaration* dated January 14, 2004. In this *Declaration*, she clearly is attempting to portray me as a danger to my son Sam and paint herself as the benevolent friend who can provide a safe haven for S███. Never does she tell the whole truth, that it is her relationship with my wife that is the cause for the break up of my family and my marriage.

Laurie and Margaret have spent the following nights that I am aware of together:
31 October 2003
3 November 2003
6 November 2003
8 November 2003
31 December 2003

I believe Margaret is now living in my house with my 13-year-old son S███ at 4604 S Dyer Road, Spokane, WA 99223. I no longer am allowed to drive down my own driveway without permission from my wife as a result of an appeal hearing on February 5, 2004. On January 19, 2004 a court commissioner kicked Laurie out of the house. Her and her attorney appealed this ruling and on February 5, 2004 a judge reversed the commissioners ruling and kicked me out of my house. As a result, Margaret's access to my house is now unfettered.

Since my access to my house is restricted, I do not know for certain if Margaret is living there. I drive by Margaret's house located at 1022 W 19th Ave here is Spokane on my way to swim workout at 6 AM. Margaret's Volvo is rarely if ever in front of her house.

On May 11-12, daughter A███ spent a couple of nights at Dyer Road with her mother and S███ I asked her if Margaret was living at the house. She told me she tried not to notice. She did tell that in addition to Laurie's notation on a calendar on the master bathroom wall indicating when Laurie started her menstrual cycle with the acronym "LSP" (Laurie Starts Period) there was also "MSP" on the calendar which may mean "Margie Starts Period."

I know of at least three trips the two of them have taken together. On March 27-28 weekend, Laurie's nephew was married in Carlsbad CA. Laurie and Margaret took this trip together leaving March 25th and returning March 28th 2004. They also took a trip to Florida together from May 14th through May 25th 2004. There was also a weekend trip they took together in March to the Seattle area, perhaps when Margaret was doing her Air Force Reserve weekend.

Page 3 of 4

AF000689

McChesney on 20040719

It was only after serious consideration over the last few months that I decided to report the conduct of Margaret Witt to the Air Force. All of those who have been or are currently on active or reserve duty in the armed forces that know of my circumstances encouraged me to report her conduct. I decided to report Margaret's conduct to the Air Force because of her adulterous affair with my wife, the betrayal of friendship and the devastation to my marriage and family, and Margaret's self-serving perjurious *Declaration* attempting to separate me from my son S█████ Margaret's sexual orientation was not an issue in my decision to report her conduct. I would have done the same thing if a male Air Force officer conducted himself in this manner instead of Margaret Witt. In my opinion, her conduct is dishonorable to the Air Force and unbecoming of an officer.

AF000690

CARNEY
BADLEY
SPELLMAN

James E. Lobsenz

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION

700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020
DIRECT LINE (206) 607-4205

Email: lobsenz@carneylaw.com

July 27, 2004

Major Adam Torem
JAG – 62nd Airway
Ft. McChord

RECEIVED

JUL 2 7 2004

OAH - Olympia

Re:    Investigation of Major Witt

SENT IMMEDIATELY BY FAX TO 360-586-6563

Dear Major Torem:

I am writing in response to your phone message which I just received. I have been retained by Major Witt to advise her with respect to your investigation into her conduct. I understand that Major Witt is also entitled to have military defense counsel appointed to advise her as well. On her behalf I am requesting that military counsel be appointed for her. I would like to work with someone with has more familiarity with military law than I do. Although I did once represent an Army soldier in an administrative discharge proceeding, that was over 20 years ago and I have not done one since. It is my understanding that Captain Adrian Ingram will be arriving at Ft. McChord sometime in late August, and will be taking over the area defense duty at that time. However, I would like to have someone appointed to advise Major Witt before that time, if that is at all possible. Please consider this a formal request for such an appointment.

I am requesting that you provide me with information regarding your investigation, the evidence you have gathered, and the nature of the allegations which are under investigation. I can be reached at the address listed above. The quickest way to reach me is by e-mail at Lobsenz@carneylaw.com.

Thank you for your assistance.

Sincerely,

CARNEY BADLEY SPELLMAN, P.S.

James E. Lobsenz
James E. Lobsenz

cc:    Client

WIT corr fg274202

AF000691

SEP-14-2004  16:44          CARNEY BADLEY

P.02

CARNEY
BADLEY
SPELLMAN

James E Lobsenz

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION

700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020
DIRECT LINE (206) 607-4205

Email: lobscnz@carneylaw.com

September 14, 2004

Major Adam Torem
JAG – 62nd Airway
525 A Street, Suite 21
McChord AFB, WA 98438-1324

Re:    Investigation of Major Witt

SENT IMMEDIATELY BY FAX TO OFFICE OF THE STAFF JUDGE
ADVOCATE, 62 AIRLIFT WING (AMC) AT 253-982-5905

Dear Major Torem:

As you will recall, I first relayed Major Witt's request for the appointment of military counsel on July 27th. I mentioned to you yesterday that I still have not been able to learn whether Captain Ingram, or anyone else from Area Defense Counsel, had been appointed to serve as co-counsel with me in the representation of Major Witt. Acting on your suggestion, yesterday I left messages for both Major Geringer and Captain Jacobsen. Captain Jacobsen returned my call and she told me that Captain Ingram was married on Saturday and is now on a short honeymoon. That may explain why no one is answering the phone at the Area Defense Counsel office at McChord.

Captain Jacobsen suggested that the delay may have been caused by the fact that Major Witt is Air Force Reserve. She said that she thought it could be that the appointment of defense counsel for a reservist has to be made by the command in Atlanta, Georgia. Captain Jacobsen suggested I call Lt. Col Mark Allison, Chief Circuit Defense Counsel, at 707-424-1519.

I called Colonel Allison and left him a message stating that I was hoping to be informed that someone had been appointed. He called back today and as soon as I told him that this was an investigation regarding an administrative discharge, he confirmed that the appointment of defense counsel will have to be made by the Air force Reserve Command Defense Services in Atlanta. He said he would contact them and urge them to appoint someone quickly. He said he could not appoint Captain Ingram or anyone local.

So the bottom line is I do not yet have any military co-counsel to confer with. I need to confer with co-counsel first before I can decide how best to respond to your inquiry. Therefore, I will not be able to respond to your inquiry by today, as you had hoped. I trust you will delay the completion of your report until I can decide how Major Witt wishes to respond to your inquiry. I

AF000692

SEP-14-2004  16:44        CARNEY BADLEY                                      P.03

Major Adam Torem
September 14, 2004
Page 2


will keep trying to push the appointment of military counsel and I will keep you apprised of the
progress of that endeavor.  Hopefully, I will be able to give you answer sometime next week.

Thank you for your assistance.

                              Sincerely,

                              CARNEY BADLEY SPELLMAN, P.S.

                              James E. Lobsenz

AF000693

*RCVD*
*OCT 15 2004*
8

CARNEY
BADLEY
SPELLMAN

James E. Lobsenz

LAW OFFICES
A PROFESSIONAL SERVICE CORPORATION

700 FIFTH AVENUE, SUITE 5800
SEATTLE, WA 98104-5017
FAX (206) 467-8215
TEL (206) 622-8020
DIRECT LINE (206) 607-4205

Email: lobsenz@carneylaw.com

October 14, 2004

Major Adam Torem
JAG – 62nd Airway
525 A Street, Suite 21
McChord AFB, WA 98438-1324

Re:    Investigation of Major Witt

SENT IMMEDIATELY BY FAX TO OFFICE OF THE STAFF JUDGE
ADVOCATE, 62 AIRLIFT WING (AMC) AT 253-982-5905

Dear Major Torem:

I have now had a chance to confer with military co-counsel, Captain Renee Voltz.  After getting the benefit of her advice, and mine, Major Witt has decided not to make any formal response to your report, or to offer any information at this time.

However, I do appreciate your having given us the opportunity to make a statement.  I understand that you will now send your final report on to Colonel Crabtree.

Sincerely,

CARNEY BADLEY SPELLMAN, P.S.

James E. Lobsenz

James E. Lobsenz

AF000694

## DECLARATION OF MAJ ADAM E. TOREM

I am Adam Erik Torem. I am an Individual Mobility Augmentee (IMA) assigned to 9005 ARS in Denver, Colorado, and attached to the 62d Airlift Wing, McChord AFB, Washington. In late June 2004, I was asked to conduct an investigation into whether or not Major Margaret Witt, a member of the 446 AES at McChord AFB had committed homosexual conduct.

On Wednesday, July 14, 2004, I traveled to Spokane, Washington, and interviewed Tiffany Jenson. Ms. Jenson is a 34 year old woman who had just given birth to a baby boy ten days earlier. I had been told that Ms. Jenson was Maj Witt's lesbian partner for the past several years; Ms. Jenson confirmed this fact and provided additional information about their relationship, as follows:

Ms. Jenson and Maj Witt met in 1996 while attending the physical therapy school at Eastern Washington University. They were both enrolled in a master's degree program and graduated in December 1998. Although at first they were just classmates, they became romantically involved in a lesbian relationship in July 1997. This was not the first homosexual relationship for Ms. Jenson or for Maj Witt and they engaged in a committed and loving relationship from July 1997 through October 2003. They lived together in a home in Spokane Their relationship included sexual relations and intercourse.

Ms. Jenson's relationship with Maj Witt came to an end on October 31, 2003, due to Ms. Jenson's desire to have a family and Maj Witt's decision not to do so despite a previous agreement with Ms. Jenson. Apparently, a visit from Maj Witt's parents in Summer 2002 changed her mind. A full year of attending counseling could not bring Ms. Jenson and Maj Witt back into agreement.

Therefore, in summer 2003, Ms. Jenson decided that she still wanted to be a parent, with or without Maj Witt. In mid-August 2003, she made arrangements to obtain a sperm sample and was inseminated in mid-October 2003. Ms. Jenson conceived and bore her child on July 4, 2004.

When Maj Witt and Ms. Jenson realized that they would not be able to resolve their differences regarding the desire to have a family, Maj Witt bought out Ms. Jenson's portion of their Spokane home. Ms. Jenson eventually moved out to a new residence.

During Ms. Jenson's relationship with Maj Witt, they would travel together to the Seattle area when Maj Witt had weekend military duty at McChord Air Force Base. They would stay at Maj Witt's parents' home in Gig Harbor, Washington. Ms. Jenson believes that Maj Witt knew herself to be a lesbian well before she accepted her commission in the U.S. Air Force, perhaps as early as in high school.

In late 2003, it came to Ms. Jenson's attention that Maj Witt was spending a lot more time with Laurie McChesney, one of Maj Witt's colleagues from work with the Spokane School District. Ms. Jenson had noticed that Maj Witt and Ms. McChesney

were attending yoga classes together, going out to bars, and generally spending evenings together. Although Ms. Jenson believed that the two friends were just giving each other emotional support during a tough time, she later learned that the two were developing a romantic relationship. On October 31, 2003, Ms. Jenson talked with Maj Witt about Laurie McChesney and the amount of time they were spending together, but Ms. Jenson did not confront her in any way. Later, in February 2004, Ms. Jenson voiced her opinion that Maj Witt and Ms. McChesney were engaging in a lesbian relationship and Maj Witt did not deny it or otherwise protest. Ms. Jenson expressed her opinion that engaging in an affair that destroyed the McChesney marriage was wrong.

I took copious notes during our interview and later reduced them to a written summary. I found Ms. Jenson to be fully credible in her description of her previous lesbian relationship with Maj Witt. In my mind, it only increased her credibility that she would meet me to discuss the matter only 10 days after having her child and, nearly 2 months later, re-confirm everything that she had told me face-to-face in Spokane.

As Ms. Jenson did not wish to sign a statement against her former lover, on September 8, 2004, I sent her an electronic mail message with the summarized statement and asked her to confirm its accuracy [see Attachment A]. One day later, on September 9, 2004, Ms. Jenson replied to the e-mail and made only one minor correction (regarding the home they owned in Spokane) [see Attachment B]. I included both of these items of electronic correspondence in my Report.

I declare under penalty of perjury that the foregoing is a true and accurate declaration describing my investigation in this matter. Executed this _10TH_ day of November, 2004.


Adam E. Torem, Major, USAF Reserve

US CODE: Title 10,654. Policy concerning homosexuality in the armed forces



LII / Legal Information Institute

# U.S. Code collection

**TITLE 10 > Subtitle A > PART II > CHAPTER 37 > § 654**

Prev | Next

## § 654. Policy concerning homosexuality in the armed forces

How Current is This?

**(a) Findings.—** Congress makes the following findings:

*Search this title:*

Notes
Updates
Parallel
authorities
(CFR)
Your
comments

**(1)** Section 8 of article I of the Constitution of the United States commits exclusively to the Congress the powers to raise and support armies, provide and maintain a Navy, and make rules for the government and regulation of the land and naval forces.

**(2)** There is no constitutional right to serve in the armed forces.

**(3)** Pursuant to the powers conferred by section 8 of article I of the Constitution of the United States, it lies within the discretion of the Congress to establish qualifications for and conditions of service in the armed forces.

**(4)** The primary purpose of the armed forces is to prepare for and to prevail in combat should the need arise.

**(5)** The conduct of military operations requires members of the armed forces to make extraordinary sacrifices, including the ultimate sacrifice, in order to provide for the common defense.

**(6)** Success in combat requires military units that are characterized by high morale, good order and discipline, and unit cohesion.

**(7)** One of the most critical elements in combat capability is unit cohesion, that is, the bonds of trust among individual service members that make the combat effectiveness of a military unit greater than the sum of the combat effectiveness of the individual unit members.

**(8)** Military life is fundamentally different from civilian life in that—

**(A)** the extraordinary responsibilities of the armed forces, the unique conditions of military service, and the critical role of unit cohesion, require that the military community, while subject to civilian control, exist as a specialized society; and

**(B)** the military society is characterized by its own laws, rules, customs, and traditions, including numerous restrictions on personal behavior, that would not be acceptable in civilian society.

**(9)** The standards of conduct for members of the armed forces regulate a member's life for 24 hours each day beginning at the moment the member enters military status and not ending until that person is discharged or otherwise separated from the armed forces.

**(10)** Those standards of conduct, including the Uniform Code of Military Justice, apply to a member of the armed forces at all times that the member has a military status, whether the member is on base or off base, and whether the member is on duty or off duty.

**(11)** The pervasive application of the standards of conduct is necessary

because members of the armed forces must be ready at all times for worldwide deployment to a combat environment.

**(12)** The worldwide deployment of United States military forces, the international responsibilities of the United States, and the potential for involvement of the armed forces in actual combat routinely make it necessary for members of the armed forces involuntarily to accept living conditions and working conditions that are often spartan, primitive, and characterized by forced intimacy with little or no privacy.

**(13)** The prohibition against homosexual conduct is a longstanding element of military law that continues to be necessary in the unique circumstances of military service.

**(14)** The armed forces must maintain personnel policies that exclude persons whose presence in the armed forces would create an unacceptable risk to the armed forces' high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability.

**(15)** The presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability.

**(b) Policy.—** A member of the armed forces shall be separated from the armed forces under regulations prescribed by the Secretary of Defense if one or more of the following findings is made and approved in accordance with procedures set forth in such regulations:

**(1)** That the member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts unless there are further findings, made and approved in accordance with procedures set forth in such regulations, that the member has demonstrated that—

**(A)** such conduct is a departure from the member's usual and customary behavior;

**(B)** such conduct, under all the circumstances, is unlikely to recur;

**(C)** such conduct was not accomplished by use of force, coercion, or intimidation;

**(D)** under the particular circumstances of the case, the member's continued presence in the armed forces is consistent with the interests of the armed forces in proper discipline, good order, and morale; and

**(E)** the member does not have a propensity or intent to engage in homosexual acts.

**(2)** That the member has stated that he or she is a homosexual or bisexual, or words to that effect, unless there is a further finding, made and approved in accordance with procedures set forth in the regulations, that the member has demonstrated that he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

**(3)** That the member has married or attempted to marry a person known to be of the same biological sex.

**(c) Entry Standards and Documents.—**

**(1)** The Secretary of Defense shall ensure that the standards for enlistment and appointment of members of the armed forces reflect the policies set forth

AF000698

US CODE: Title 10,654. Policy concerning homosexuality in the armed forces

in subsection (b).

**(2)**  The documents used to effectuate the enlistment or appointment of a person as a member of the armed forces shall set forth the provisions of subsection (b).

**(d) Required Briefings.—**  The briefings that members of the armed forces receive upon entry into the armed forces and periodically thereafter under section 937 of this title (article 137 of the Uniform Code of Military Justice) shall include a detailed explanation of the applicable laws and regulations governing sexual conduct by members of the armed forces, including the policies prescribed under subsection (b).

**(e) Rule of Construction.—**  Nothing in subsection (b) shall be construed to require that a member of the armed forces be processed for separation from the armed forces when a determination is made in accordance with regulations prescribed by the Secretary of Defense that—

**(1)**  the member engaged in conduct or made statements for the purpose of avoiding or terminating military service; and

**(2)**  separation of the member would not be in the best interest of the armed forces.

**(f) Definitions.—**  In this section:

**(1)**  The term "homosexual" means a person, regardless of sex, who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts, and includes the terms "gay" and "lesbian".

**(2)**  The term "bisexual" means a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual and heterosexual acts.

**(3)**  The term "homosexual act" means—

**(A)**  any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires; and

**(B)**  any bodily contact which a reasonable person would understand to demonstrate a propensity or intent to engage in an act described in subparagraph (A).

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

Prev | Next

AF000699



News Director: Maureen Shawn Kennedy, MA, RN
E-mail: shawn.kennedy@wolterskluwer.com

## 'Don't Ask, Don't Tell' Leads to Nurse's Discharge

*Decorated lesbian RN sues the U.S. Air Force.*

Major Margaret Witt wants her job back. Once photographed for a nurse-recruitment advertisement, she was a flight nurse and operating room nurse in the U.S. Air Force for 19 years, including a tour of duty in the Persian Gulf. In 2003, after saving the life of a Department of Defense employee who collapsed aboard a flight in Bahrain, Witt was awarded an Air Force Commendation Medal. As standards and evaluations flight commander, she supervised more than 200 flight nurses and medical technicians.

After returning from her unit's Persian Gulf duties in 1995, Witt became a regular air force reservist, while holding civilian jobs as an RN and physical therapist. In 2003 her six-year relationship with a civilian woman came to an end; in 2004 Major Witt, then assigned to McChord Air Force Base in Tacoma, Washington, was informed of an air force investigation of alleged "homosexual conduct." Later that year, as a preliminary to formal separation procedures, she was placed on unpaid leave and barred from performing military duties.

In March 2006 the 42-year-old learned that she was being discharged, and in April the American Civil Liberties Union (ACLU) in Washington State filed a lawsuit against the air force on her behalf, challenging her dismissal. The ACLU will submit statements from military colleagues, saying that Major Witt's forced absence is harmful to her unit's morale. A discharge from the air force would mean that Witt, according to the lawsuit, "could no longer earn pay and points towards a retirement pension, that she could not participate in any duty pending resolution of her separation action, and that she was no longer eligible for promotion."

Discharges from the armed forces for alleged homosexuality are common, says James Lobsenz, her pro bono ACLU attorney, "but not usually after so many years of service," he says. He expects a lengthy case, with a likely appeal. Lobsenz previously represented an army sergeant who challenged his dismissal for being gay. After a decade, the U.S. Court of Appeals ruled that the army could not discharge the man.

In a statement, the Air Force Reserve Corps said, "Before any findings are reached, allegations remain as unsubstantiated allegations and it would be unfair and inappropriate for the Air Force to comment upon any unresolved case."

According to the Servicemembers Legal Defense Network, the "don't ask, don't tell, don't pursue, don't harass" policy has led to the discharge of nearly 10,000 personnel. The ANA opposes the "don't ask, don't tell" policy; at its 2003 annual meeting, the ANA's House of Delegates directed the association to communicate with Congress, the president, and the Joint Chiefs of Staff, "urging the military to abandon discrimination against lesbians and gays."

"I love my job and the people," says Witt. "I've gotten nothing but support from everyone in my unit."

While still enthusiastic, Witt says, "The whole policy seems to be such a waste of talent." And it appears that the air force can hardly afford to lose experienced nurses: the air force reserve had 121 vacancies for flight nurses at the rank of major, as of April.
—Carol Milano



"The whole policy seems to be such a waste of talent," says Major Margaret Witt of the U.S. military's "don't ask, don't tell, don't pursue, don't harass" approach to the sexual orientation of service members. Witt was discharged from the air force in April for "homosexual conduct."

ajn@wolterskluwer.com

AF000700

SR.com: Lesbian reservist goes to court

Customer service
Classifieds
Jobs | Cars |
Homes
Place an ad

Get email alerts
Report site
problem
Submit a news tip

**SPOKESMANREVIEW.COM**



Current weather:
47° F   clear



single page   |   printer-friendly   |   e-mail this story

News
  Local/Regional
  Idaho
  Business
  Nation/World
  Voices
  Weather
  Columnists
  Newstracks
  Full headline list
  Archives

Opinion
  Letters
  Commentary

Sports
  Blogs
  Preps
  Outdoors

For the record
  Obituaries
  Announcements

Lifestyle
  Food
  Travel
  Tributes
  Book Club »
  Movie listings »
  Calendar »
  Blogs »
  HOME »
  7 »

Extra
  Health
  TV listings

About us »
S-R Jobs »
Online login »
Online profile »

# Lesbian reservist goes to court

## Fights discharge from military

**Richard Roesler**
Staff writer
April 13, 2006

SEATTLE – Saying that the U.S. Constitution trumps military regulations, attorneys for lesbian Air Force Reserve Maj. Margaret Witt on Wednesday sought a federal injunction to prevent the service from kicking her out.

"We recognize we have our work cut out for us," said pro-bono attorney Jim Lobsenz. But he said Air Force regulations and this particular statute are unconstitutional.

It is illegal discrimination to ban homosexuals from military service, said another of Witt's lawyers, American Civil Liberties Union attorney Aaron Caplan.



Witt ()

"The United States should not give effect to prejudice," Caplan said. "There are people in the military who are likely bigots, who don't like black people. We don't give in to them."

Advertisement

The case was filed Wednesday in U.S. District Court in Tacoma.

Supporters of the current policy argue that there are legitimate reasons for it. Given the military's close living conditions, said Center for Military Readiness President Elaine Donnelly, Congress overwhelmingly decided that it wouldn't be appropriate to force people to expose themselves to people sexually attracted to them.

AF000701

SR.com: Lesbian reservist goes to court



Read today's e-paper



# SMART FI

**Access denied to the system by attempting to retrieve**

Email the Your Local Helpdesk for Ass

BACK

*The request was denied, as specified in the SmartFilter Conte Filter configuration.*

"We don't expect women to routinely bed down and shower" with men they work alongside, she said. "The law basically reflects the desire for human modesty."

And the courts have historically deferred to the military regulations, she said.

"The armed forces are different from the civilian world," Donnelly said.

Witt and her lawyers take hope, however, from a 2003 Supreme Court decision ruling a Texas sodomy law unconstitutional.

"Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct," Justice Anthony Kennedy wrote in the majority opinion in Lawrence v. Texas.

Witt's case mirrors a still-pending 2004 Massachusetts suit by a dozen homosexual military members seeking reinstatement. Both lawsuits argue that the ban and the military's "don't ask, don't tell" regulations violate the constitutional rights to due process and free speech.

"The 'don't ask, don't tell' policy says you can believe these things in your heart but you can't act on them," said Caplan. "The Lawrence case says 'Get real.' "

Dressed in her Air Force flight suit, Witt faced a phalanx of reporters and news cameras in a Seattle law office Wednesday. She showed them medals and commendations, including one for saving the life of a 60-year-old Defense Department worker who collapsed midflight. Her photo is featured in two recruiting pamphlets for the Air Force nursing program.

A Pacific Lutheran University graduate, Witt joined the Air Force in 1987 after a short stint as an operating-room nurse at Tacoma General Hospital. An active-duty officer for nine years, she became a reservist in 1995. In civilian life, she's a physical therapist in Spokane.

In the summer of 2004, someone apparently told the Air Force that Witt was a lesbian. In a subsequent interview with an Air Force investigator, a civilian woman said that she and Witt "had engaged in a committed and loving relationship from July 1997 through October 2003," according to court paperwork.

On Nov. 4, 2004, Witt was called to her commander's office at McChord Air Force Base. The commander told Witt to stop reporting for reservist duty. The Air Force was discharging her "on grounds of homosexual conduct." Witt was told to pack up her office immediately and leave. Witt said she was stunned and speechless.

"My unit was my extended family, and the Air Force was my extended family," she said.

"I miss it very much ... It's devastating."

Her attorneys have interviewed 10 of her colleagues at the 446th Aeromedical Evacuation Squadron.

"They don't understand why this is being done," said Lobsenz. "They want her back."

"In fact, a lot of them thought she was gay," said Caplan. "Adult woman, never talks about men. And that was fine with them. They didn't care."

Capt. Jennifer Gerhardt, a spokeswoman for McChord's 446th Airlift Wing, said she couldn't discuss the case.

"I can't really comment because of the Privacy Act," she said.

As Witt's attorneys pointed out, many of America's military allies allow openly gay or lesbian troops to serve. Among them: Australia, Canada, Israel, Britain and the Netherlands.

Donnelly's response: "We do not take our law from foreign governments."

Witt is also appealing to the Air Force's Administrative Discharge Board, which is expected to convene a hearing in Georgia soon. But her lawyers say there's little reason for hope there. Under Air Force regulations, they said, the board's main focus will be to decide whether Witt is a lesbian or not. "Nobody's denying that," said Lobsenz.

---

**BACK TO TOP**

Gay News From 365Gay.com.                                                    Page 1 of 2


*America's most read gay news*

Forums | Make Us Your Home Page | Daily Email Updates | Bookmark Us | PDA Version

Google                          Go      Web      365Gay

▶ News      ▶ Entertainment   ▶ Lifestyle   ▶ Travel   ▶ Opinion   ▶ Health   ▶ Fun Zone   ▶ Personals
        Week In Review   |   Columnists   |   Your Weather   |   Business News   |   History

# News

Today's Top Stories      Print Page      Email page



## 'Tip' Leads To Lesbian Air Force Nurse's DADT Discharge

*by 365Gay.com Newscenter Staff*

April 13, 2006 - 11:00 am ET

(Seattle, Washington) For 19 years Major Margaret Witt served the Air Force with distinction. She served in the Persian Gulf, received medals, and was featured in a recruitment flyer for the Air Force Nurse Corps.

But after commanders received an anonymous tip in 2004 that she is a lesbian and in a long-term relationship the military began an investigation that led to her discharge under 'don't ask, don't tell' the military's ban on gays serving openly.

This week Witt began a lawsuit to get back her job. The suit, filed on by the ACLU on her behalf, charges the military acted unconstitutionally and seeks an injunction reversing the discharge.

'Don't ask, don't tell' requires that a commander receive "credible evidence" that a service member is lesbian or gay before beginning an investigation.

"Unfortunately, however, the definition of 'credible evidence' is determined by the command," Steve Ralls, a spokesperson for the Servicemembers Legal Defense Network told 365Gay.com.

"SLDN has represented numerous service members who were investigated based on questionable information, including anonymous emails and accusations made by individuals who were clearly untrustworthy," Ralls said.

"'Don't ask, don't tell' has become an effective weapon in the armed forces, where rumor, innuendo and hearsay can mean the end of an otherwise promising career.

Witt joined the Air Force in 1986. She served in the Persian Gulf and in 2003 was awarded an Air Force Commendation Medal for her action in saving the life of a Department of Defense employee who had collapsed aboard a government-chartered flight from Bahrain.

In 1993, she was selected to be the "poster child" for the Air Force Nurse Corps recruitment flyer.

AF000704

Gay News From 365Gay.com                                                    Page 2 of 2

Most recently she was a flight nurse and operating room nurse assigned to McChord Air Force Base near Tacoma, Washington.

It was while at McChord that her commanding officer began an investigation into her private life after receiving "a tip" from an unidentified source that Witt was in a relationship with another woman, a fact she does not deny.

In November 2004, Major Witt was placed on unpaid leave and told she could no longer participate in any military duties, pending formal separation proceedings. In March 2006, the Air Force informed Major Witt that she was being administratively discharged on grounds of homosexual conduct.

"I joined the Air Force because I wanted to serve my country. I have loved being in the military – my fellow airmen have been my family. I am proud of my career and want to continue doing my job," said Witt. "Wounded people never asked me about my sexual orientation. They were just glad to see me there," she added.

"Major Margaret Witt has been an exemplary member of the military with a distinguished record of service. To discharge her simply because of her sexual orientation is unfair and does not make our military stronger," said ACLU of Washington Executive Director Kathleen Taylor.

In a previous ACLU case, Lobsenz represented Army Sgt. Perry Watkins, who challenged his dismissal from the military for being gay. In 1989, the U.S. Court of Appeals for the Ninth Circuit ruled that, as a matter of fairness, the Army could not discharge Watkins.

Twelve lesbian and gay former members of the military are involved in a federal suit in Boston seeking reinstatement. Represented by SLDN oral arguments were held last July and a decision is pending.

©365Gay.com 2006

Today's Top Stories    Print Page    Email page

**365gay.com**

**Help/Feedback**
Corporate  Advertising Information  Links & Newsbox
Daily Email Updates  Wireless Edition  Make Us Your Homepage

365Gay.com is a wholly owned division of 365GayMedia Inc. Distribution, transmission or republication of any material from 365Gay.com is strictly prohibited without the prior written permission of 365GayMedia Inc.

AF000705

The Seattle Times: Local News: Lesbian challenges military policy

ADVERTISING

The Seattle Times Company

## 𝕿𝖍𝖊 𝕾𝖊𝖆𝖙𝖙𝖑𝖊 𝕿𝖎𝖒𝖊𝖘 | LOCAL NEWS

Jobs | Autos | Homes | Rentals | NWsource | Classifieds

Traffic | Weather | Your account

Search [Go]
Advanced search

Movies | Restaurants |

→ Marketplace
Jobs | Autos
Homes | Rent

Thursday. April 13. 2006 - Page updated at 12:00 AM

☑ E-mail article   🖨 Print view

**Home**
Local
Eastside
Snohomish Co.
Politics
Education
Columnists
Nicole Brodeur
Danny Westneat
David Postman
Sherry Grindeland
Letter from Washington
Inside The Times
Here and Now
Nation / World
Business / Tech
Editorials / Opinion
Columnists
Sports
Entertainment
Comics / Games
Living
Pacific Northwest Magazine
Travel / Outdoors
Real estate
Obituaries
Special reports
Photography
Corrections
Archive
Alerts / E-mails
Marketplace
Jobs
Autos
Homes
Rentals
Classifieds
Shopping
NWsource
Personals
Post an ad
Services
Your account

# Lesbian challenges military policy

**By Tan Vinh**
*Seattle Times staff reporter*

A decorated McChord Air Force Base major, who was once featured in a national recruiting pamphlet, sued the military Wednesday after she was suspended for being a lesbian.

Expecting her commanding officer to dismiss her after 19 years of service, Margaret Witt, a flight nurse from Spokane, filed an injunction in U.S. District Court in Seattle seeking to prevent her discharge.



⊕enlarge  ALAN BERNER / THE SEATTLE TIMES

Margaret Witt says at a news conference Wednesday, "My objective really is to go back to my unit [and] serve my country."

Witt's case is one of two active lawsuits, both with local ties, that challenge the constitutionality of the military's ban on openly gay personnel, under a policy known as "don't ask, don't tell." In Boston, a federal court is hearing a case involving a dozen service members, including three from Washington, who want their jobs back.

Dressed in her flight suit and holding her medals and commendation letters, Witt, 42, said that despite the attempts to kick her out of the military, she wants to return to the only life she has known for the past two decades: nine in the Air Force and nearly 10 in the Air Force Reserves.

"My objective really is to go back to my unit, serve my country and help the injured troops that need me at this time," she said at a news conference at the office of the American Civil Liberties Union (ACLU), which filed the suit on her behalf. "My unit is my ... family."

A nursing graduate from Pacific Lutheran University in Parkland, Pierce County, Witt joined the Air Force in March 1987 and quickly rose through the ranks. She was included in a 1993 Air Force recruitment pamphlet carrying the headline "Air Force Nursing makes the difference."

Witt, who is technically still a member of the 446th Aeromedical Evacuation Squadron at McChord, has provided medical assistance and helped

NWsource sh

**Local sales**
Search retail a

[Go ⊠]

Today's feat
More ads
**Don't miss it**
Shopping eve
Create sale al
Store guides
Grocery coup
Travel deals
Looking for a

The Seattle Times: Local News: Lesbian challenges military policy

Contact us
Submit listings
Send us news tips
Seattle Times store
Advertise with us
RSS feeds
Wireless
Newspapers In Education
Home delivery

transport injured U.S. soldiers and other multinational-coalition forces in the Afghanistan conflict.

Although she never told colleagues about her sexual orientation, her superiors received a tip. According to court documents, in summer 2004, the Air Force began an investigation and interviewed a civilian who said she had been in a sexual relationship with Witt from July 1997 through October 2003.

A year later, the Air Force ruled her "ineligible" for service and promotion, and Witt, now a physical therapist, could no longer earn "pay or points toward a retirement pension," according to court documents. The ACLU said the Air Force has begun the "paper work" to discharge her.

The Air Force declined to comment.

Witt's attorney, Jim Lobsenz, handling the case on behalf of the ACLU, said the U.S. Constitution "trumps other rules," including the military's ban on gays. In the 1980s, Lobsenz won a landmark case when the U.S. 9th Circuit Court of Appeals ruled that the Army could not discharge his client, Sgt. 1st Class Perry Watkins of Tacoma, just because he was gay.

About 650 military personnel were discharged in 2004 because they were gay, according to the Servicemembers Legal Defense Network, an advocacy group that tracks the issue.

Tan Vinh: 206-515-5656 or tvinh@seattletimes.com

Copyright © 2006 The Seattle Times Company

✉ E-mail article    🖨 Print view

More local news headlines...

**Most read articles**
1. Huskies soak it up
2. Hillary Clinton could outdraw the devil, Falwell says
3. Some PSE customers get a shock: back-charges worth thousands
4. Hawks hold off Giant scare
5. Missing boy's mother wrote suicide letter
6. Different tier of freshmen sprouting on UW branches
7. Bucs QB Simms has spleen removed after loss to Panthers
8. High-school students fight anti-cheating firm
9. Backing up the bravado  |  Steve Kelley
10. Two teens killed when SUV plunges into water off West Seattle

Most e-mailed articles

seattletimes.com home
Home delivery  |  RSS feeds  |  Low-graphic  |  Search archive
Site map  |  webmaster@seattletimes.com  |  Contact us  |  Privacy statement  |  Terms of service
NWclassifieds  |  NWsource  |  Advertise with us  |  The Seattle Times Company  |  Employment opportunities
Copyright © 2006 The Seattle Times Company
↑ Back to top

AF000707

KING5 Seattle News | KING5 Local News



## / Local News

Seattle, Washington
Monday September 25, 2006 9:40 a.m. EDT

Welcome, Visitor! Sign In/Become a registered member
Customize | Make this your home page | E-mail newsletters | MySpecialsDirect

| Search | Go |
|---|---|
| Home | |
| Local News | |
| Weather | |
| Traffic | |
| Video on Demand | |
| Sports | |
| HealthLink | |
| Biz/Tech | |
| U.S. News | |
| World News | |
| Entertainment | |
| Travel/Outdoors | |
| Lifestyles | |
| Blogger KING | |

**On Air**
Evening Magazine
NW Backroads
Up Front
Sports Blitz
Garden w/Ciscoe
KONG TV
TV Schedule
Newslinks

**Services**
Newsletters
Calendar
Contests
Pix
Slide Shows
Forums
Wireless
Podcasts
RSS Feeds **XML**
Desktop News
Lotteries
Advertising Info.
About Us

Advertising

 Print it | ⊕ Discuss it | ✉ E-mail it to a friend

# Air Force reservist fights discharge for being gay (Video)

03:19 PM PDT on Wednesday, April 12, 2006

**By TONYA MOSLEY / KING 5 News and KING5.com Staff**

SEATTLE -
Major Margaret
Witt, who is
assigned to
McChord Air
Force Base

| Video |
|---|
| Tonya Mosley reports |
| More ... |
| Custom Video ... |

near Tacoma, says she exemplified everything
the United States Air Force looked for in a
flight nurse.

During her 19-year career, Witt served in the
Persian Gulf, received several medals, and was
even featured in an Air Force Nurse Corps
recruitment flyer.

"I did my job to the best of my ability. I did
my job well," she said. "Wounded people
never asked me about my sexual orientation.
They were just glad to see me there."

But Witt says the military's view of her
changed in 2004 when she was notified that
the Air Force had begun an investigation her
sex life.

"It was a complete shock, really. I was in
shock," she said.

She says several months later, she was placed
on unpaid leave and told she could no longer

Advertising

**marketplace**
cars.com  ▸ Buy a car
          ▸ Sell a car

**other services**
▸ TicketCenter    ▸ DatingCenter
▸ Place an ad     ▸ Add an event

AF000708

KING5 Seattle News | KING5 Local News



participate in any military duties, pending formal separation

Major Margaret Witt

proceedings. Last month, she was discharged on grounds of "homosexual conduct."

The American Civil Liberties Union of Washington has filed a lawsuit on Witt's behalf.

"Major Witt is gay, but this does not affect her job performance," said ACLU attorney Aaron Caplan.

Witt says her sexual orientation should not determine if she's fit to serve her country.

Caplan said he is confident that Witt will be able to get her job back.

In a previous ACLU case in 1989, Army Sgt. Perry Watkins challenged his dismissal for being gay. The U.S. Court of Appeals for the Ninth Circuit ruled that, as a matter of fairness, the Army could not discharge Watkins.

"My objective is to go back to my unit, serve my country and help the injured troops that need me," said Witt.

Witt graduated from Pacific Lutheran University in Tacoma with a degree in Nursing in 1986 and joined the Air Force the next year. In her civilian life, she works as a physical therapist in Spokane.

---

**More headlines...**

Suspect sought in Seattle fatal stabbing

Word of threat closes U.S. -Canada crossings

Two teens killed when SUV plunges into water off West Seattle

State's fairs try to keep people coming back

New sensors planted around Mount St. Helens

**More...**

ARTICLE TOOLS: Print it | Discuss it | E-mail it to

AF000709