Judge Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAJOR MARGARET WITT          )
                             )
          Plaintiff,         )          No. C06-5195 RBL
                             )
     v.                      )          **EXHIBITS TO DEFENDANTS'**
                             )          **OPPOSITION TO PLAINTIFF'S**
UNITED STATES DEPARTMENT OF  )          **MOTION *IN LIMINE* TO EXCLUDE**
THE AIR FORCE, et al.        )          **EVIDENCE**
                             )
          Defendants.        )
                             )
                             )
                             )
                             )
                             )
_____)

Exhibit A     E-Mail from Patrick McChesney to Gen. John Jumper

Exhibit B     Report of Commander Directed Investigation, Oct. 20, 2004

Exhibit C     Memorandum from Mary Walker, Nov. 6, 2004

Exhibit D     Excerpts of Deposition of Margaret Witt

Exhibit E     Excerpts of Deposition of Dennis Laich

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 616-8482

**Exhibit A**

-----Original Message-----
From: Pat McChesney [mailto:patmcchesney@att.net]
Sent: Monday, June 14, 2004 17:08
To: Jumper John Gen AF/CC
Subject: Major Margaret Witt

General John Jumper:

On 1 December 2003 my wife, Laurie McChesney, informed me she was leaving me for Major Margaret Witt, USAF Reserve. Laurie and I had been married for nearly 22 years and had three children, ages 13, 19 and 21 together.

My wife's relationship changed dramatically on 31 October 2003 when Major Witt's then six year lesbian partner, Tiffany Jenson, informed Major Witt that she was pregnant. Tiffany and Major Witt had for some time planned to have Tiffany artificially inseminated. My wife and I were attending a family Halloween party that night. Major Witt called and asked my wife to leave the party. My wife told me her friend Major Witt was despondent, hysterical and suicidal due to the devastating news that Tiffany was pregnant.

Laurie admitted to me and several others in sworn declarations filed in the subsequent divorce proceedings that her friendship with Major Witt became romantic in November 2003. She and Major Witt spent the night together on 31 October 2003, 3 November 2003, 6 November 2003, 8 November 2003 and 31 December 2003 that I am aware of.

I initiated divorce proceedings in an effort to have my wife removed from my home where I was living with my 13 year-old son, S███ M█████████, where my wife continued her adulterous love affair with Major Witt by phone from the home. Laurie told me on several occasions she was going to move in with Major Witt once the divorce was final.

In Laurie's response to the divorce filing, a sworn declaration was submitted by Major Witt on her behalf. In her Declaration Major Witt attempts to paint me as a danger to my son S██ based on my reaction to 1) the devastating news of 1 December 2003 that my wife was a lesbian in love with Major Witt and going to leave me and 2) my reaction two days later on 3 December 2003 when my wife left my home to "get some space" and specifically told me she was NOT going to Major Witt's house. She in face did go to Major Witt's house, picked her up and the two of them went to another lesbian couples house to spend the night. My wife has specifically told me on her way out of the house she was NOT going to Major Witt's house and told me to call her cell phone if I didn't believe her. Prior to the traumatic news on 1 December, my wife had repeatedly denied to me that her relationship with Major Witt more than just professional. Major Witt and my wife work together daily for the Spokane Public School District.

Major Witt never states in her sworn declaration that her adulterous love affair with my wife and the betrayal of our friendship was the cause of my extreme emotional trauma, the break up of my twenty-two year marriage and my family.

Major Witt also spends considerable time in her declaration portraying

AF000122

herself as the benevolent safe harbor for my son S▮ while portraying me as the dangerous unstable unpredictable ill-tempered father.

In my opinion, Major Witt's adulterous love affair with my wife and the sworn Declaration she filed which clearly contains half-truths, lies and self-serving statements attempting to separate me from my son is amoral and perjurious. I believe she is a potential predator to other heterosexual women in the armed services and her behavior and statements in her sworn declarations demonstrates her willingness to go to extreme measures to get what she wants.

It was only after serious consideration over the last few months that I decided to report the conduct of Major Witt to the Air Force. All of those who have been or are currently on active or reserve duty in the armed forces who know of my circumstances encouraged me to report her conduct. I did not consult with my Godfather, Admiral Jackson D Arnold, USN, Ret. due to his age and the recent death of his wife Muriel.

I am willing to provide additional information if the Air Force decides this warrants further investigation. Tiffany Jenson is also willing to provide further information regarding Major Witt including information regarding an affair Major Witt had with a female teacher while attending junior high school.

I believe Major Witt operates out of McChord Air Force base in Tacoma Washington.

List of attachments (all declarations filed with Spokane Superior Court under penalty of perjury):

1) Declaration of Major Witt dated January 14, 2004 (Maj_Witt_Declaration.pdf). See paragraph for Major Witt's description of her relationship with my wife.
2) Declaration of Melinda McChesney (Melinda_Declaration.pdf). See page 5 line 7 for the beginning of my wife's description of her relationship with Major Witt.
3) Declaration of Heather McGuinness (Heather_Declaration.pdf). See paragraph 5 through 7.
4) Declaration of Bridgette Halverson (Halverson_Declaration.pdf). See paragraph 2 through 7.

Please contact me if you require additional information: ===================
Pat D McChesney 326 W. 6th Ave. Apt 301 Spokane, WA 99204
patmcchesney@att.net 509 217 5058 (mobile home phone) 509 991 5880 (cell)
775 599 2249 (fax) ====================

**Exhibit B**



**DEPARTMENT OF THE AIR FORCE**
HEADQUARTERS, 62D AIRLIFT WING (AMC)
MCCHORD AIR FORCE BASE, WASHINGTON

20 Oct 04

MEMORANDUM FOR 446 AW/CC

FROM: 62 AW/JA (Maj Torem)

SUBJECT: Commander Directed Report of Investigation of Alleged Homosexual Conduct of Major Margaret Witt, 446 AES

1. This letter memorandum presents my findings of fact, opinions, and recommendations as requested in your letter of 7 July 2004 appointing me to conduct a fact-finding inquiry into alleged homosexual activities by Major Margaret Witt, 446th Aeromedical Evacuation Squadron (AES). In sum, I have reached the conclusion that it IS more likely than not that Maj Witt has engaged in homosexual conduct and has a propensity to do so in the future. As fully explained and supported below by findings of fact and opinions reached through the investigative process, I recommend that you initiate the process to discharge Maj Witt from the United States Air Force in accordance with Air Force Instruction (AFI) 36-3209, *Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members*, paragraphs 2.30 and 4.12; accordingly, an administrative discharge board should be appointed per AFI 36-3209, para 4.12 through 4.18.

2. **Scope and Authority.** On 7 July 2004, 4 AF/CC sent a memorandum to 446 AW/CC granting authority to conduct a fact-finding inquiry into alleged homosexual conduct by Major Margaret Witt, 446 AES. That same day, 446 AW/CC appointed the undersigned Major Adam E. Torem, a "Category B" JAG Reservist (IMA) attached to 62 AW/JA, to conduct the inquiry into whether Maj Witt had engaged in homosexual activities and then file a report detailing facts, opinions, and recommendations no later than 23 July 2004 (see Tab 1). In coordination with 446 AW/JA, you subsequently extended this deadline to 20 October 2004.

3. **Introduction: Background and Allegations.** On 14 June 2004, Mr. Patrick McChesney, a 54 year old civilian man residing in Spokane, Washington, sent an electronic mail message to General John Jumper, HQ USAF/CC. Mr. McChesney alleged that Laurie McChesney, his wife of over 20 years, had left him for another woman in December 2003: Major Margaret Witt. The e-mail contained specific allegations, including the name of Major Witt's previous long-term lesbian partner, Tiffany Jenson, and also focused on Mr. McChesney's anger at Major Witt's adulterous behavior and its impact on his marriage and his family. Attached to the e-mail were several copies of declarations filed in the pending McChesney divorce action which asserted that Laurie McChesney and Maj Witt were engaged in a homosexual extramarital affair (see Tab 2).

General Jumper's staff forwarded this e-mail through AFRC to Maj Witt's command. Review of the e-mail and the information it contained led to 446 AW/CC seeking and receiving approval

FOR OFFICIAL USE ONLY

AF000113

from 4 AF/CC to initiate this inquiry.  Mr. McChesney's e-mail and its allegations raised the following specific issues:

<u>Specific Allegations Investigated</u>

A.1.  Was Maj Witt previously engaged in a long-term committed homosexual relationship with another woman, Tiffany Jenson?

A.2.  If so, did Maj Witt engage in homosexual conduct with Tiffany Jenson?

B.1.  Is Maj Witt now engaged in a homosexual extramarital affair with another woman, Laurie McChesney (complainant Pat McChesney's wife)?

B.2.  If so, is Maj Witt engaging in homosexual conduct with Laurie McChesney?

C.  Has Maj Witt made comments to others indicative of her homosexual orientation?

In accordance with AFI 36-3209, para 2.30.1, as well as the definitions contained in Atch 11 to that regulation, affirmative answers to any of the above questions would constitute homosexual conduct and therefore *require* Maj Witt's discharge from the U.S. Air Force Reserve.

4. **Chronology of Events.**  The following sequence of events is important to this investigation:

| DATE | EVENT |
|---|---|
| 14 Jun 04 | Mr. McChesney's e-mail to Gen Jumper alleging that Maj Witt has engaged in homosexual acts and adultery with Laurie McChesney, his wife, leading to Mr. McChesney seeking a divorce |
| Jun/Jul 04 | 446 AW/CC seeks 4 AF/CC approval to conduct formal inquiry |
| 07 Jul 04 | 4 AF/CC authorizes 446 AW/CC to proceed with formal inquiry |
| 07 Jul 04 | 446 AW/CC appoints Maj Torem to conduct formal inquiry |
| 07-13 Jul 04 | Maj Torem contacts potential witnesses in Spokane, WA |
| 14 Jul 04 | Maj Torem travels to Spokane, WA, to conduct interviews of Mr. Patrick McChesney and Ms. Tiffany Jenson |
| 24 Jul 04 | Maj Torem meets with Col Mary Walker, 446 AES/CC and attempts to interview Maj Witt (aborted due to scheduling conflict) |
| 25 Jul 04 | Maj Torem informs Maj Witt of allegations against her and explains her rights under AFI 36-3209 (but *not* under UCMJ) |
| 27 Jul 04 | James Lobsenz, civilian attorney for Maj Witt, contacts Maj Torem to request information supporting allegations against Maj Witt; |

FOR OFFICIAL USE ONLY

AF000114

4. **Chronology of Events** (continued).

| DATE | EVENT |
|------|-------|
| 27 Jul 04 (cont.) | Maj Torem provides contact information for Area Defense Counsel (ADC) at McChord AFB |
| 6 Aug 04 to 7 Sep 04 | Temporary Delay in Investigation – Family Crisis for Maj Torem |
| 8 Sep 04 | Maj Torem provides attorney Lobsenz with copy of sworn witness statement made by Mr. McChesney and summary of interview with Ms. Jenson; Maj Witt's response requested no later than 14 Sep 04 |
| 13 Sep 04 | Attorney Lobsenz contacts Maj Torem seeking extension of response deadline to allow consultation with military defense counsel.  Attorney Lobsenz again referred to McChord AFB ADC, 446 AW/JA and, HQ AFRC to obtain military co-counsel for Maj Witt; extension granted to 15 Oct 04 |
| 14 Oct 04 | Maj Witt declines to make any formal response to investigation |

5. **Investigation – Witness Interviews.** Following various telephone contacts, an in-person interview of Mr. Patrick McChesney was conducted on 14 Jul 04, at his apartment in Spokane, WA.  Shortly thereafter, he provided a sworn written statement dated 19 Jul 04 (see Tab 3).  In addition to Mr. McChesney's sworn confirmation of his original allegations, was also conducted on 14 Jul 04 at a Starbuck's coffee shop in Spokane, WA.  Although Ms. Jenson was cooperative and willing to be interviewed regarding her first-hand knowledge of Maj Witt's homosexual conduct, she did not wish to provide a written statement against Maj Witt.  Instead, she acknowledged the accuracy of a written summary of her interview (see Tab 4).  In sum, these witnesses provided the following information (see actual statements for full details):

5A. *Mr. McChesney.* He was married to Laurie McChesney for over 22 years.  Laurie has worked with Maj Witt in her civilian capacity as a physical therapist for the Spokane Public School District since approximately December 2000; Laurie is Maj Witt's assistant.  Within months of beginning to work with Maj Witt, Laurie McChesney informed her husband that Maj Witt was a homosexual and residing with her lesbian lover, Tiffany Jenson.  Laurie McChesney and Maj Witt became close friends and the entire McChesney family would socialize with both Maj Witt and Ms. Jenson.  Pat McChesney even installed a wireless intranet computer system in Maj Witt's home as recently as November 2003.  Shortly thereafter, Maj Witt and Ms. Jenson ended their relationship due to a disagreement over whether or not Ms. Jenson should bear a child.  In the weeks thereafter, Laurie McChesney and Maj Witt began to spend more and more time together, making Pat McChesney suspicious of the nature of their relationship.  Some time thereafter, in December 2003, Pat McChesney determined that his wife and Maj Witt had initiated a romantic relationship.  According to Pat McChesney, his wife actually admitted to

*FOR OFFICIAL USE ONLY*

AF000115

other family members that she and Maj Witt were engaged in homosexual acts together. Given these circumstances, Pat McChesney filed for divorce from his wife of over 22 years.

5B. *Ms. Jenson.* She met Maj Witt in 1996 while they both attended an advanced degree program in physical therapy. In July 1997, Ms. Jenson and Maj Witt became involved in a homosexual relationship. This relationship continued for over six years, until October 2003. During the course of their relationship, Ms. Jenson and Maj Witt engaged in homosexual acts. Ms. Jenson was aware of Maj Witt's service in the Air Force Reserve and, when Maj Witt traveled to the Tacoma area to perform military service, Ms. Jenson would often accompany her and stay off-base, usually at Maj Witt's parents' home in Gig Harbor, WA. Their relationship came to an impasse over Ms. Jenson's desire to have a child, via artificial insemination, and Maj Witt's eventual decision not to go through with such a plan. In early Fall 2003, Ms. Jenson went forward with this plan, announcing to Maj Witt on 31 Oct 03 that she was pregnant; this event drove the actual break-up of the relationship. Since that time, Ms. Jenson observed Maj Witt spend increasingly more time with Laurie McChesney and believes that they began their own romantic relationship before the end of 2003. Ms. Jenson knows that Maj Witt was previously involved in lesbian relationships, including one she personally observed during their time at physical therapy school (immediately preceded their own) and believes that Maj Witt may even have been active as a homosexual during her high school years.

5C. *Laurie McChesney.* Given her current and ongoing relationship with Major Witt, and in an attempt to maintain the relative secrecy of the investigation, no effort was made to interview Mrs. Laurie McChesney.

5D. *Other Potential Witnesses.* In his e-mail to Gen Jumper, Pat McChesney submitted copies of unsigned declarations filed in support of an early hearing in his dissolution action. These items were reviewed for background information, but no attempt was made to contact or interview the people involved in the McChesney divorce case.

**6a. Investigation – Subject Interview.** The subject interview was conducted in accordance with AFI 36-3209, Attachment 11, as well as the procedures recommended in Attachment 4 of the Air Force Commander-Directed Investigation (CDI) Guide dated 1 Feb 00. Thus, Maj Witt was alerted to the reason for the interview and the negative information that had been provided against her, then advised that failure to respond truthfully would be a violation of Article 107 of the Uniform Code of Military Justice. Maj Witt was given the option of immediately providing a verbal or written response or having time to consider the allegations and, as necessary, seeking military or civilian legal counsel. Maj Witt requested time to collect her thoughts and determine an appropriate course of action. She was told to contact Maj Torem, either personally or through legal counsel, the following week. Two days later, James Lobsenz, a civilian attorney with the Seattle law firm of Carney Badley Spellman retained by Maj Witt, contacted Maj Torem to request copies of any evidence supporting the investigation (see Tab 5a). Due to a delay for personal reasons, Maj Torem was unable to provide the requested information until 8 Sep 04. Maj Torem asked that Mr. Lobsenz and Maj Witt submit any responsive statement no later than 14 Sep 04 (see Tab 5b). Mr. Lobsenz requested additional time to allow consultation with military defense counsel (see Tab 5c) and, eventually, he and Maj Witt decided that she would not make any response to the investigation (see Tab 5d).

*FOR OFFICIAL USE ONLY*

AF000116

**6b. Investigation – Observations from Subject Interview.** Although Maj Witt did not provide any formal sworn statements, verbal or written, on 25 Jul 04, I was able to make various observations about her reaction to the allegations against her. From the outset, Maj Witt appeared shocked by the suggestion that she had committed homosexual acts. When she learned that Mr. Pat McChesney was the source of the complaint against her, she stated "he's a lunatic!" Upon learning that Ms. Jenson had confirmed the allegations, Maj Witt became more emotionally upset, turning tearful and red-faced. Expressing frustration, she rhetorically asked "why?" several times and inquired as to whether Ms. Jenson was upset with her for some reason. Maj Witt characterized Ms. Jenson as a "former roommate" and nothing more. During the explanation of her rights under and the processes set out in AFI 36-3209, Maj Witt was tearful and variously repeated "I didn't do anything wrong" and "I can't believe this" several times each. At the end of the 45 minutes we spent during the interview in the 446 AES conference room, Maj Witt asked permission to leave the building and not return to her duty station until later that afternoon, after she had a chance to recompose herself. I secured this permission on her behalf and allowed her to depart the area. 446 AES/CCF confirmed Maj Witt's return to duty later that same afternoon.

**7. Findings, Analysis, and Conclusions.** Based on a review of the original complaining e-mail and its attached supporting declarations as well as the personal interviews conducted in the course of this investigation, I make the following findings:

**7a.** *Allegations Concerning Maj Witt's Homosexual Conduct with Tiffany Jenson.* I find that it is a fact that Maj Witt and Ms. Jenson were engaged in a long-term romantic homosexual relationship. I further find that it is a fact that during the course of this committed relationship, Maj Witt engaged in homosexual acts with Ms. Jenson. In my opinion, any issue of credibility presented by Mr. McChesney's clear motivation to avenge the demise of his marriage is overcome by Ms. Jenson's independent confirmation of his allegations against Maj Witt. When I spoke to Ms. Jenson to arrange our interview, I offered her every opportunity to back out of the in-person appearance we were scheduling for later that week in Spokane. Not only did she appear at that scheduled meeting, she informed me that she had just given birth to her son a mere 10 days prior to our meeting. Although Ms. Jenson was not in agreement with the military's policy of prohibiting active homosexuals from serving their country, she was upset and disturbed by Maj Witt's adulterous behavior. Thus, she was supportive of Mr. McChesney's complaint against her ex-lover. Given no other hint of any alternative motivation to "turn in" Maj Witt for committing homosexual acts, I found Ms. Jenson wholly credible. Recognizing that her unwillingness to provide a written sworn statement could be problematic (for evidentiary concerns) at a future discharge board, I obtained her promise to review my written summary of our interview and make any necessary corrections. Ms. Jenson upheld that promise and recently reaffirmed what we had discussed many weeks earlier. In accordance with AFI 36-3209, para 2.30.1.1 and A11.5.1, these findings alone would be sufficient to justify a recommendation for discharging Maj Witt from the armed forces.

**7b.** *Allegations Regarding Maj Witt's Homosexual Conduct with Laurie McChesney.* I find that it is more likely than not that Maj Witt has engaged in a romantic homosexual relationship with Laurie McChesney, to include the commission of homosexual acts. While the evidence in this area is not nearly as clear as that relating to Maj Witt's prior relationship with Ms. Jenson,

AF000117

the statements of both Ms. Jenson and Mr. McChesney point to a blossoming relationship between Maj Witt and Laurie McChesney in the latter portion of 2003. This relationship appears to be much more than a work-related friendship, and the declarations submitted with the original complaining e-mail support a conclusion that it is a homosexual relationship.

7c. *Allegations Regarding Maj Witt's Comments about her Sexual Orientation.* I find that it is NOT more likely than not that Maj Witt made comments that a reasonable person would find indicative of the her homosexuality. The portions of her Declaration apparently filed in support of Laurie McChesney in the divorce action (as included with Mr. McChesney's original e-mail) are not of the type contemplated by the definitions contained in AFI 36-3209, para A11.6.9. While one could "read between the lines" and conclude that Maj Witt and Laurie McChesney were lesbian lovers, no evidence was presented or uncovered during the course of this investigation that Maj Witt herself made any direct or open statements in that regard. Further, Mr. McChesney's observation that homosexual couples were present at various social events at Maj Witt's home is not legally sufficient to allow a conclusion that Maj Witt is also a homosexual. Therefore, this allegation should not be relied upon as a basis for discharging Maj Witt from her military service.

**8. Recommendation.** As noted in Title 10 of the United States Code, Section 654(a), and reiterated in AFI 36-3209, paragraph 1.15.15, "the presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability." Therefore, after full consideration of the mission detailed to me in my appointment letter, I make the following recommendation:

*In accordance with my above-noted findings that it is a fact, or at the very least more likely than not, that Maj Witt is a homosexual who has already engaged in homosexual conduct, and has demonstrated a propensity to engage in homosexual acts, I recommend that 446/CC consult with 446 AW/JA and immediately initiate administrative discharge proceedings against Major Margaret Witt, 446 AES, as mandated by AFI 36-3209, para 2.30.1.*

Maj Witt chose not to submit a statement that might have altered the view of the evidence relied upon in reaching this *Recommendation.*

**9. Discharge of Major Witt.** The required procedures for discharging Maj Witt are fully explained in AFI 36-3209, specifically para 2.30 through 2.33 and para 4.12 through 4.18. As noted in subparagraph 4.12.2, all officers recommended for discharge for homosexual conduct are given an opportunity to have the case heard by an administrative discharge board. Thus, if you choose to follow my recommendation regarding discharge of Maj Witt, she will have the option of either accepting your discharge notification without a challenge or of demanding a board to review the evidence in this matter. In any case, under the pertinent portions of AFI 36-3209 (see Table 2.1, Rule 33, restricted by para A2.5.4.2), she will most probably receive an honorable discharge because there is no evidence that she committed any homosexual conduct that involved the use of force, threats, intimidation, or non-consensual partners. Despite her probable commission of adultery with Laurie McChesney, a violation under the UCMJ, it is my

*FOR OFFICIAL USE ONLY*

AF000118

understanding that it was never the intention of 446 AW/JA to pursue criminal prosecution of Maj Witt for any such offense. Even so, if Maj Witt's immediate commander reviews the evidence and determines that the adulterous behavior described therein is sufficiently aggravating, then a general discharge may be warranted (see AFI 36-3209, para A2.2.2). In this case, the characterization of Maj Witt's service could be used as a negotiating tool to avoid any insistence on her behalf of pursuing the matter to an administrative discharge board.

10. If necessary, I can schedule an appointment to meet with you at your office at any time you deem convenient. I will be able to answer any questions you might have about the conduct of this investigation, as well as its findings and recommendations. In the meantime, please contact me at my civilian office at (360) 753-6291 or via my cell phone at (253) 307-1862 if you have any immediate questions or further directions for me.

ADAM E. TOREM, Maj, USAFR
Assistant Staff Judge Advocate

Attachments:
1. Appointment Letters
2. E-mail Complaint and Attachments – Patrick McChesney (14 Jun 04)
3. Sworn Witness Statement – Patrick McChesney (19 Jul 04)
4a. Summarized Witness Interview – Tiffany Jenson (14 Jun 04)
4b. E-mail Confirmation of Accurate Summary – Tiffany Jenson (9 Sep 04)
5a. Fax from Attorney James Lobsenz (27 Jul 04)
5b. Fax Cover Sheet to Attorney James Lobsenz (8 Sep 04)
5c. Letter from Attorney James Lobsenz re: Military Defense Counsel (14 Sep 04)
5d. Letter from Attorney James Lobsenz re: Declining to Respond (14 Oct 04)

AF000119

**Exhibit C**

**DEPARTMENT OF THE AIR FORCE**
446TH Air Evacuation Squadron (AFRC)
McChord Air Force Base, Washington 98438-1326

6 Nov 04

MEMORANDUM FOR    HQ AFRC/DPML
155 2nd Street
Robins AFB GA 31098-1635

FROM: 446 AES/CC
1205 12TH St NE Suite 102W
McChord AFB WA 98438-1326

SUBJECT: Recommendation for Action Under AFI 36-3209, *Separation Procedures for Air National Guard and Reserve Members*, Chapter 2, against Major Margaret H. Witt, SSN ███████

1. I recommend that Major Margaret H. Witt, SSN ███████, be separated under AFI 36-3209, Chapter 2, for the reasons outlined in paragraph 2.30 (entitled Homosexual Conduct) of that instruction.

2. I recommend this action because: a) Major Margaret H. Witt engaged in homosexual acts with Ms. Tiffany Jensen, on divers occasions from on or about July 1997 to on or about October 2003 at or near Spokane, Washington; and b) Major Margaret H. Witt engaged in homosexual acts with Ms. Laurie McChesney, a married woman, on divers occasions from on or about November 2003 to on or about January 2004 at or near Spokane, Washington. I have taken no disciplinary action because this case is proceeding directly to discharge. I recommend an honorable discharge.

3. I have attached documentary evidence available to support the recommendation.

4. Margaret H. Witt, Major, is:

    a. Member is a Non-Probationary Commissioned Officer

    b. Not serving on Extended Active duty as a member of the Regular Air Force and holds an appointment as a Commissioned Officer

MARY L. WALKER, Colonel, USAFR
Commander

Attachment:
1. Inquiry Report of MAJ Torem

**Exhibit D**

Margaret Witt                                    May 24, 2010

Page 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAJOR MARGARET WITT,

        Plaintiff,

v.                              NO. C06-5195 RBL

UNITED STATES DEPARTMENT OF
THE AIR FORCE, et al.,

        Defendants.

_____

DEPOSITION OF MAJOR MARGARET WITT
Monday, May 24, 2010
Pages 1 to 136

_____

Jody K. Pope CCR/RPR
SNOVER REALTIME REPORTING
Professional Court Reporters
522 W. Riverside Avenue, Suite #560
Spokane, Washington 99210
(509) 467-0666 Fax (509) 467-3844
E-mail: snoverrealtime.net
LIC. NO. WA 3114 / LIC. NO. ID 939

Margaret Witt                          May 24, 2010

Page 46

1    Spokane and while you were an officer in the Air Force?

2       **A.  I don't recall whether I told them I was an**

3    **officer.**

4              MR. LOBSENZ:  Don't speculate if you don't

5    recall.  The question is, do you recall.

6       **A.  I don't recall.**

7    BY MR. PHIPPS:

8       Q.  Okay.  From your understanding of the term

9    "officership," are extramarital sexual relationships

10   consistent with that concept?

11      **A.  Officership?**

12      Q.  Yeah.

13      **A.  No.**

14      Q.  So I'm interested in looking at your non-military

15   employment background.  So from high school on --

16              MS. LOBSENZ:  Excuse me, Peter.  I'm just

17   asking.  It sounds like you're going into a different

18   subject, and we've been going for about an hour.

19              MR. PHIPPS:  Oh, yeah.  If you want to take

20   a break, we can take a break.  We can go off the record.

21              (A break was taken.)

22   BY MR. PHIPPS:

23      Q.  I think where I want to go here is just to touch

24   base on your nonmilitary employment.  Probably the

25   easiest way to start on this is maybe to just have you

f3120836-ebe2-46d4-a6dc-fda100dfffd7

**Exhibit E**

1

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

- - -

MAJOR MARGARET WITT,          :

            Plaintiff,        :

    vs.                       : Case No. CO6-5195RBL

UNITED STATES DEPARTMENT  :
OF THE AIR FORCE, et al.,
            Defendants.   :

- - -


Deposition of

MAJOR GENERAL (RETIRED) DENNIS LAICH


    a witness herein, called by the Defendant for
cross-examination under the applicable Rules of Ohio
Civil Court Procedure, taken before me,
Heidi L. Funderburk, a Professional Reporter and Notary
Public in and for the State of Ohio, pursuant to
Notice, at the offices of Jones, Day, on Thursday,
June 2, 2010, commencing at approximately 10:07 a.m.

- - -


DEPOSITION SPECIALISTS, INC.
35 East Gay Street, Suite 300
Columbus, Ohio  43215
(614) 221-4034

62

1      A.    Uhm, vaguely --

2      Q.    Okay.

3      A.    -- familiar with it.

4      Q.    Do you want to explain, to the extent that

5   you can, what that concept means to you?

6      A.    Unprofessional relationships, one aspect of

7   it with which I'm somewhat familiar is with military

8   officers who are in positions of responsibility and can

9   influence final decisions within the military having

10  relationships with either vendors or lobbyists

11  advocating for advantage to some civilian company.

12     Q.    Again, you probably can forecast what I'm

13  going to ask.

14     But do you think that unprofessional -- an

15  unprofessional relationship is consistent with being a

16  good officer or the concepts of officership?

17     A.    By definition I would answer no, with a

18  caveat that I identified that I am not familiar

19  intimately with that term as it applies to the

20  military, and absent a full understanding I qualify my

21  answer.

22     Q.    And that's how just to clarify my questions

23  I wanted to only use your understanding of the term

24  that you previously defined to answer that question.

25     What about extra-marital sexual relations?

63

1       Are those to your understanding consistent with

2   the concept of officership or being a good officer?

3       A.    No.

4       Q.    Why not?

5       A.    Uhm, I think first of all that those, uhm --

6   uhm, types of relationships are not only discouraged or

7   looked upon negatively in the military, but in our

8   society as a whole and they can create some problems or

9   distractions in an organization.

10       And if the leader of the organization, assuming

11   that you're asking the question around the command, it

12   compromises integrity, candor in the organization.

13       Q.    We can maybe go on to change gears a bit

14   here.

15       Do you need a break?

16       A.    No.

17       Q.    Okay.  If you need a break, just let me

18   know.

19       A.    Do you need one?

20       Q.    No.

21       A.    Okay.

22       Q.    Okay.  We'll get into some more basic facts.

23       When did you first have contact with either the

24   plaintiff in this case, Margaret Witt, or Plaintiff's

25   counsel in this case?