HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAJOR MARGARET WITT,

                Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
THE AIR FORCE, et al.,

            Defendants.

No. 06-cv-05195 RBL

ORDER ON PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND COSTS
[Dkt. 197]

## I.      Introduction.

THIS MATTER is before the Court on Plaintiff's Motion for Fees under the Equal
Access to Justice Act (EAJA).  [Dkt. 197].  Defendants oppose the request, arguing that it is
untimely and fees are not warranted.  [Dkt. 204].  It also argues that even if fees are warranted,
they should be reduced to $151,953.88.  [Dkt. 204 at 12].  For the reasons set forth below, the
Motion is timely and an award of fees under the EAJA is merited in the amount of $462,559.32.

## II.      Discussion.

The EAJA provides for an award of fees to the prevailing party in a civil action against
the United States, unless the government's position was "substantially justified."  28 U.S.C.
§2412(d)(1)(A).

**A.  Plaintiff's Motion is Timely.**

The EAJA requires a petitioner file a motion for fees within thirty days of entry of "final judgment."  28 U.S.C. 2412(B).  The statute defines final judgment as "a judgment that is final and not appealable, and includes an order of settlement."  28 U.S.C.A. § 2412(2)(G).

The government contends that Witt's motion is untimely. It argues that because the parties settled and agreed to the entry of a judgment, both parties could appeal the judgment, and the period normally allowed for appeal (60 days for the United States) does not apply.  It claims, that the thirty day EAJA period ran from the date of the judgment, and expired before Witt filed her fee request.

In this case, both parties moved for an amended judgment (without reservation), as a means of effectuating settlement.   [*See* Dkt. 204 at 5].  The government points out that "[a] party who receives all that he has sought generally is not aggrieved by the judgment affording the relief, and cannot appeal from it."  *Deposit guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980).   The government argues that neither party was aggrieved and neither could appeal entry of the judgment.  Therefore, it claims, the fee application was not timely.

Witt argues that the government's appeal period (60 days) does apply and should be used to calculate the due date for her fee application.  She points out that nothing in the settlement precluded an appeal, and that it was still possible for either party to attack the judgment.  [Dkt. 205 at 4].  Witt argues that there was an inconsistency in the joint motion drafted by the government, and the parties' settlement agreement.  [Dtk. 205 at 4].  The government indicated that it wanted specific language stricken from both the original Judgment [Dkt. 166] and the Opinion [Dkt. 163], but the joint agreement amends only the Judgment.  [Dtk. 205 at 4].  Thus, Witt contends, the government could have appealed the judgment.

1    The Ninth Circuit has held that even when the judgment was entered "pursuant to the

2    government's request," the appeal period of sixty days still applies to EAJA requests.  *Li v.*

3    *Keisler*, 505 F.3d 913, 917 (9th Cir. 2007); *Van v. Barnhart*, 483 F.3d 600, 607 (9th Cir. 2007).

4    The Ninth Circuit considers a judgment final when there is "no longer any possibility that

5    the district court's judgment is open to attack."  *Al-Harbi v. INS*, 284 F.3d 1080, 1084 (9th Cir.

6    2002).  Witt has pointed to a specific way in which the government might have attacked the

7    Court's judgment during the sixty day appeal period.  [Dkt. 205 at 4].  The judgment was not

8    final until the lapse of the sixty-day appeal period, and Witt's EAJA request was due within

9    thirty days of the lapse of that period.  Witt's motion is therefore timely.

10    **B. Plaintiff is a Prevailing Party.**

11    A prevailing party is "one who has succeed[ed] on any significant issue in litigation

12    which achieves some of the benefit the parties sought in bringing the suit."  *Hensley v.*

13    *Eckerhart*, 461 U.S. 424, 433 (1983).  Plaintiff  claims that she is the prevailing party in this

14    case.  While the government does not contest that Witt has prevailed, it argues that she only

15    prevailed to a limited extent.  [Dkt. 204 at 11].  The Court will discuss the extent of Witt's

16    success in relation to the appropriate amount of fees.  Witt is a prevailing party entitled to a fee

17    award under the EAJA.  28 U.S.C. § 2412(d)(1)(A).

18    **C. Attorneys' Fees are Warranted.**

19    To overcome Witt's right to fees under the EAJA, the government bears the burden of

20    showing that its "position [] was, as a whole, substantially justified."  *U.S. v. Marolf*, 277 F.3d

21    1156, 1161 (9th Cir. 2002); *Kali v. Bowen* 854 F.2d 329, 332 (9th Cir. 1988) (government's

22    burden).  The government's position is "substantially justified" if it has a "reasonable basis in

23    both fact and law."  *Mendenhall v. National Transp. Safety Bd.*, 92 F.3d 871, 874 (9th Cir. 1996).

24

1  The Court looks to the "government's position during litigation" as well as "the action or failure

2  to act by the agency upon which the civil action is based." *Id.*; 28 U.S.C. § 2412(d)(1)(B).  In

3  other words, the Court must consider Witt's discharge as well as the government's position

4  during the course of litigation.

5           Under the EAJA, he Court considers the government's position as a single unit

6  throughout all stages of the case. *Comm'r, INS v. Jean*, 496 U.S. 154, 159 (1990).  This case is

7  unusual, however.  When this case was originally filed, the Ninth Circuit had consistently upheld

8  Don't Ask Don't Tell (DADT), and its opinions supported the government's actions.  The Court

9  followed that precedent in dismissing the action, and Witt successfully appealed. *Witt v. Dep't of*

10 *Air Force,* 444 F.Supp.2d 1138 (W.D. Wash. 2006).

11          The Ninth Circuit's opinion in this case announced a new standard by which to evaluate

12 DADT. *Witt v. Dep't of Air Force*, 527 F.3d 806, 813 (9th Cir. 2008).  It acknowledged that

13 "[i]n previous cases, we have applied rational basis review to DADT and predecessor policies."

14 *Id.*  However, it determined that given recent Supreme Court precedent, "something more than

15 traditional rational basis review" now applied. *Id.*  This heightened scrutiny test has since been

16 referred to as the "*Witt* standard." *See*, *Log Cabin Republicans v. U.S.*, 716 F.Supp.2d 884, 922

17 (C.D. Cal 2010), *vacated by* 658 F.3d 1162 (9th Cir. 2011).

18          Whether the government's position is substantially justified is dependent on whether it

19 had a reasonable basis in the law.  Because the law underwent a major change in the course of

20 these proceedings, the reasonableness of the government's position will be evaluated at two

21 distinct times: before and after the Ninth Circuit's May 21, 2008 opinion.

22

23

24

ORDER- 4

**1.  The Government's Position Was Substantially Justified Prior to the Ninth Circuit's Decision.**

The government's initial action giving rise to this claim (separating Major Witt from the Air Force) was substantially justified.  The government's litigation position was similarly substantially justified.  Both had a reasonable basis in law and fact.  Therefore, prior to the Ninth Circuit decision, the government's position as a whole was substantially justified.

The government separated Witt from the Air Force pursuant to DADT, under the law as it existed prior to the Ninth Circuit decision.  The Ninth Circuit has relied on objective indicia, including the views of other courts, to determine whether the government was substantially justified.  *Pierce*, 487 U.S. at 569.  The Ninth Circuit has noted that a "string of [government] success" could be indicative of reasonableness and therefore substantial justification.  *Id.*

Witt brought this case against a long history of Ninth Circuit precedent upholding DADT.  These cases began as early as 1991 with DADT's predecessor statutes and the Ninth Circuit consistently found DADT to be constitutional.  *Pruitt v. Cheney*, 963 F.2d 1160 (9th Cir. 1991); *Meinhold v. United States Dept. of Defense*, 123 F.3d 1275 (9th Cir. 1997); *Philips v. Perry*, 106 F.3d 1420 (9th Cir. 1997); *Holmes v. California Army Nat. Guard*, 124 F.3d 1126 (9th Cir. 1997).

While the defense of a statute is not always "substantially justified" under the EAJA, *League of Women Voters of California v. F.C.C.*, 798 F.2d 1255, 1259 (9th Cir. 1986), "situations in which the government's defense of the constitutionality of a federal statute fails the 'substantially justified' test should be exceptional."  *Grace v. Burger*, 763 F.2d 457, 459 n.5 (D.C. Cir. 1985).

In this case the government relied on more than twenty years of precedent supporting its position on the constitutionality of DADT.  The government's position was substantially justified

1    when Witt initially brought this case, and through the date of the Ninth Circuit's opinion

2    announcing a new standard.

3              **2.   The Government's Position Was Not Substantially Justified On Remand.**

4              The Ninth Circuit's opinion upset precedent and changed the analysis that applies to

5    challenges to DADT.  *Witt*, 527 F.3d at 819.  Prior to this decision, the government had to prove

6    DADT could withstand rational basis scrutiny.  *Id.* at 813.  The Ninth Circuit's opinion, for the

7    first time, required a heightened level of scrutiny.  *Id.* at 819.  After that opinion, the government

8    was required to show that "the application of DADT specifically to Major Witt significantly

9    furthers the government's interest and whether less intrusive means would achieve substantially

10   the government's interest."  *Id.* at 821.  The government had to show that Witt's sexual

11   orientation negatively affected its interest in "unit cohesion and the like."  *Id.*

12             On remand the government presented "no credible evidence…that Major Witt's sexual

13   orientation ever had a negative effect on the unit morale, order, discipline, or cohesion of [her

14   unit]."  *Findings of Fact and Conclusions of Law*, Dkt. 164 at 3.  The government's inability to

15   meet this burden, of course, does not mean that its position was not substantially justified.  *Kali*,

16   854 F.2d at 334.  But its failure to even attempt to do so greatly undermines its claim that its

17   position was substantially justified.

18             The EAJA grew out of a concern for the unequal position of the individual vis à vis an

19   insensitive and ever-expanding governmental bureaucracy."  *Escobar Ruiz v. I.N.S.*, 813 F.2d

20   283, 288 (9th Cir. 1987).  Given this unequal position, "the Government with its greater

21   resources and expertise can in effect coerce compliance with its position."  *Armster v. U.S. Dist.*

22   *Court for Cent. Dist. of California*, 817 F.2d 480, 482 (9th Cir. 1987) (quoting H.R.Rep. No.

23   1418 96th Cong., 2d Sess.10, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4988).

24

1    A particularly egregious example this inequality (and the EAJA's goal of countering it) is

2    found in *Mendenhall v. National Transp. Safety Bd.*, 92 F.3d 871 (9th Cir. 1996).  Mendenhall

3    was a pilot who came under scrutiny from the Federal Aviation Administration (FAA) after

4    several poor practical examinations.  Mendenhall sought extra training, retested, and passed.

5    The FAA nevertheless attempted to revoke her pilot certificate and filed an emergency order of

6    revocation complaint against her —even though it knew she was qualified under FAA

7    regulations.  Instead of dismissing the complaint and reinstating her pilot certificate, the agency

8    tried to bargain with, her saying it would reinstate her certificate if she would agree to waive

9    EAJA fees.  *Id.* at 873-74. The Ninth Circuit held that the agency's continuation of the action

10   that it knew to be baseless, in an effort to coerce the waiver of EAJA fees, was a "prime example

11   of bad faith."  *Id.* at 877.

12        The facts (and the plaintiff) in this case do not suggest that the government's position

13   amounted to bad faith.  But it did force the Plaintiff to continue litigating, while it had no

14   evidence (and no argument) that her presence had an adverse affect on her unit.

15        The government's position did not have a reasonable basis in law after the Ninth Circuit's

16   2008 opinion.  And, on remand, the government offered virtually no evidence supporting  its

17   position, demonstrating that its position did not have a reasonable basis in fact. Indeed, it did not

18   actually take the position that Witt's presence was detrimental to her unit.  On the whole, then,

19   the government's position on remand was not substantially justified.

20        The Ninth Circuit has held that "subsequent changes in decisional or statutory law may

21   be a factor to consider in determining whether the government advanced a reasonable position."

22   *Marolf*, 277 F.3d at 1163.  The Ninth Circuit's 2008 opinion (and DADT's 2010 repeal) are

23   additional objective indicia that the government's post-decision position was not substantially

24

1   justified.  Accordingly, Witt is entitled to reasonable attorneys' fees under the EAJA for this

2   portion of the litigation.  28 U.S.C. § 2412(d)(1)(A), (2)(A).

3        Witt's fee application [Dkt. #197; Dkt. #198 Ex. A] seeks 2282.4 hours and a total of

4   $610,211.80 for work performed after the date of the Ninth Circuit's opinion.  [Dkt. #198, Ex.

5   A].

6        **D.   Plaintiff is Entitled to Reasonable Fees.**

7        The first step in determining reasonable fees is to calculate the lodestar figure, by taking

8   the number of hours reasonably expended on the litigation and multiplying it by the appropriate

9   hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Court should exclude from

10  this calculation time that was overstaffed, redundant, or unnecessary.  *Id.* at 434.  The Court must

11  also consider the extent of plaintiffs' success as that is a "crucial factor" in determining an

12  appropriate award.  *Id.* at 440.

13       After determining the lodestar figure, the Court should then determine whether to adjust

14  the lodestar figure up or down based on any *Kerr* factors that have not been subsumed in the

15  lodestar calculation.[1]  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) *cert.*

16  *denied*, 425 U.S. 951 (1976).

17       **1.   The Number of Claimed Attorney Hours is Reasonable.**

18       In addition to its claim that fees are not warranted at all, the government opposes the

19  amount of Plaintiff's fee request, objecting to both the hours and the rates sought.  It contends

20  [1] The twelve *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of
    the questions involved, (3) the skill requisite to perform the legal service properly, (4) the

21  preclusion of other employment by the attorney due to acceptance of the case, (5) the customary
    fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the

22  circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation,
    and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the

23  professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras
    Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). These

24  considerations are consistent with Washington Rule of Professional Conduct 1.5.

1   that the requested hours[2] are inflated, because the Plaintiff's attorneys overstaffed the case.  It

2   claims Plaintiff's attorneys seeks redundant hours and rely on vague, block-billed records.  It

3   also contends that a fee enhancement (above the statutory rate)  is not appropriate for any of the

4   attorneys who worked on this case.  And it contends that the hours should be discounted, because

5   the plaintiff enjoyed only limited success.  These issues are addressed in turn.

6                    **a.   Plaintiff Efficiently Staffed This Litigation.**

7           The government first contends that Witt and her attorneys overstaffed this case.  After

8   reviewing the records and the parties' respective arguments, the court is not persuaded that this is

9   true.  There are only a handful of instances the defense challenges as being overstaffed.  [Dkt.

10  204-2].  Nearly all of those instances are depositions or witness preparation.  The Plaintiff points

11  out that some of the entries marked as duplicative are examples where the allegedly duplicative

12  attorney was actually conducting witness examination or was the sole attorney on a particular

13  discovery issue.

14          The Ninth Circuit has recognized the disincentive for civil rights lawyers to overstaff in

15  order to inflate their fee.  *Nadarajah v. Holder*. 569 F.3d 906, 921-22 (9th Cir. 2009).  In a case

16  based on contingent fee civil rights work, the court explained:

17          The payoff is too uncertain, as to both the result and the amount of the fee. It would
            therefore be the highly atypical civil rights case where plaintiff's lawyer engages in
18          churning. By and large, the court should defer to the winning lawyer's professional
            judgment as to how much time he was required to spend on the case; after all, he won,
19          and might not have, had he been more of a slacker.  *Moreno v. City of Sacramento*, 534
            F.3d 1106, 1112 (9th Cir. 2008).
20
            Nonetheless, the Ninth Circuit requires the Court to skeptically analyze whether
21
    numerous attorneys were required to perform a particular task.  *Democratic Party of Wash. State*
22
    *v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).  Even viewed skeptically, Witt's staffing was not

23  _____

24          [2] The government's objection is a global one, and it applies to hours incurred both before
    and after the Ninth Circuit's opinion.

ORDER- 9

1    excessive.  *Reed* noted that assistance at trial from another attorney, as well as preparation for

2    future trial work, are both necessary.  *Id.*  Here, one plaintiff attorney whose time the government

3    challenged as excessive not only assisted at trial, she conducted the examination.  Furthermore, it

4    is not necessarily duplicative to have two attorneys at depositions, court hearings, witness

5    interviews, and strategy sessions in a case of this magnitude.  *Id.*; *Nadarajah*, 569 F.3d at 922.

6                    **b.  The Attorneys' Time Entries are Sufficiently Detailed.**

7            The government argues that seven entries following the Ninth Circuit ruling are vague

8    and that the requested fees should be discounted for those periods. [*See* Dkt. 204 at 10-11].  With

9    regard to entries 112, 114, and 116, [Dkt. #198 Ex. A; Dkt. #204] the level of detail is sufficient.

10   The attorneys travelled to Washington, D.C., met with Solicitor General Kagan, and travelled

11   back.  Dkt. 204-2 at 13.

12           The government argues that the description related to forty-two hours is too vague,

13   because it includes only the description "witness prep," with no indication to which witnesses

14   they relate.  While it is true that the witnesses are not always identified, it is also true that there

15   were numerous trial witnesses, and these entries are not facially unreasonable for witness prep

16   time.

17           The contested entries are for August, 31, 2010 (just prior to the pretrial conference), and

18   September, 11 and 12, 2010 (during trial).  The court is able to "judge whether the work was an

19   appropriate basis for fees," despite the redactions.  *See Reed* 388 F.3d at 1286.  The Court will

20   not reduce the Witt's request on grounds of vagueness in connection with these hours.

21

22

23

24

### c.  Plaintiff Obtained Complete Relief on Her Substantive Due Process Claim.

The government argues any fee award should be discounted because Witt did not obtain relief on each of the claims she alleged – equal protection, First Amendment, procedural due process, and substantive due process.  [*See* Dkt. 204 at 11].  The Ninth Circuit decision narrowed the issues on remand to Witt's procedural due process and substantive due process claims.  *Witt*, 527 F.3d at 822.

Witt argues that this case "involved a common core of facts and was based on related legal theories."  [Dkt. 205 at 6 (internal quotations omitted)].   Therefore, she argues, the Court should consider the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonable expended on the litigation."  *Id.* (internal quotations omitted).  The Court agrees.

The court has discretion to reduce an award if the Plaintiff achieves only limited success.  *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).  But Witt obtained essentially complete relief.  Though she argued alternative legal theories, she prevailed on her substantive due process claim and was granted the primary relief she sought— reinstatement.  [Dkt. 196].  Her EAJA fee award will not be reduced because she did not prevail on other theories seeking that same relief.

### 2.  The Attorneys' Requested Rates are Reasonable.

The EAJA permits fees at a statutory rate of $125 per hour, adjusted for inflation, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).  Plaintiff's attorneys seek fees at the rate of $325 per hour for Mr. Lobsenz and $320 per hour for Ms. Dunn.  They also seek an inflation adjusted statutory rate for the other

1   attorneys working on the case. The government objects to any enhanced rate generally, and to

2   the rates requested specifically.

3        The government first contends that an enhanced rate is not appropriate in this case.  [Dkt.

4   204 at 6].  The Ninth Circuit applies a three part test to determine whether enhanced fees are

5   appropriate: "(1) the attorney must possess distinctive knowledge and skills developed through a

6   practice specialty; (2) those distinctive skills must be needed in the litigation; and (3) those skills

7   must not be available elsewhere at the statutory rate." *Natural Res. Def. Council, Inc. v. Winter*,

8   543 F.3d 1152, 1158 (9th Cir. 2008) (internal quotations omitted) (relying on, *Love v. Reilly*, 942

9   F.2d 1492, 1496 (9th Cir. 1991)).

10       The government argues that neither of Plaintiff's primary attorneys can be considered to

11  have a practice specialty under this test.  [Dkt. 204 at 7-8].  The EAJA provides that the "amount

12  of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the

13  services furnished," limited to $125 per hour "unless the court determines that an increase in the

14  cost of living or a special factor, such as the limited availability of qualified attorneys for the

15  proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(1)(D)(2)(A).

16       The Supreme Court considered the phrase "availability of qualified attorneys" in *Pierce*

17  *v. Underwood*, 487 U.S. 552, 571 (1988).  The Court determined that the requirement hinges on

18  that attorney possessing "some distinctive knowledge or specialized skill needful for the

19  litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge

20  and ability useful in all litigation."  *Id.* at 572.  Distinctive knowledge may be something like a

21  practice specialization or can include other "special factors," but may not be based on broad

22  factors that show "general lawyerly knowledge."  *Id.*

23

24

1       Both Mr. Lobsenz and Ms. Dunne have specialized practical experience that required in

2   the first prong of the test.  In *Winter*, the court considered the experience of a senior attorney

3   who dealt previously with an environmental case involving possible damage to marine mammals

4   from loud noises.  *Winter*, 543, F.3d at 1160-61.  The court accepted this previous work as

5   "sufficient prior experience" to meet the degree of specialized experience *Pierce* required.  *Id.*

6       Mr. Lobsenz prior experience working on civil rights cases involving the military and

7   specifically, a case "challenging the discharge of an army soldier based on his sexual

8   orientation" are sufficient prior experience to amount to specialization under *Pierce*.  Dkt. 197 at

9   8.  Ms. Dunne has similarly had sufficient prior experience in complex civil rights litigation

10  involving the military on the *United States v. Virginia Military Institute* case.  *Id.* at 8-9.   The

11  court therefore finds that the first prong of the enhanced fee test is met.

12      The government also argues that any special skills the attorneys do possess were not

13  necessary to this litigation.  [Dkt. 204 at 8].  This case required more than just application of law

14  to facts.  The attorneys' prior experience enabled them to attack DADT and actually change the

15  law in this circuit as it related to DADT.  Their ability to identify expert witnesses and fact

16  witnesses to refute the fears and "predictive findings" on which DADT was based contributed to

17  their success at the Ninth Circuit and also before this Court on remand.  The Court therefore

18  finds that the distinctive skills of both Ms. Dunne and Mr. Lobsenz were necessary to this case.

19      The government contends that the plaintiffs have not met the third element of the *Pierce*

20  test as they have not shown that the skills Mr. Lobsenz and Ms. Dunne brought to the litigation

21  were not available elsewhere at the statutory rate.  Dkt. 204 at 9.  The Ninth Circuit has accepted

22  the declaration of a single outside attorney to establish unavailability.  *Nadarajah*, 569 F.3d at

23  915.

24

1    Witt submitted two declarations saying that it was "highly unlikely" that these skills

2    would be available elsewhere in the Puget Sound region and that at least one firm would not

3    have represented her.  Dkt. 203 at 3; Dkt. 202 at 1-2.  The attorneys providing these declarations,

4    Ms. Brenneke and Mr. Mungia, are both established attorneys who have worked in the area for

5    nineteen and twenty-five years respectively.  They provide credible testimony related to the

6    availability of this level of skilled lawyers at the statutory rate in the Puget Sound region, as well

7    as the reasonableness of the rates requested.  The Court therefore finds that Witt has satisfied the

8    third prong of the test.  For these same reasons, the court finds that the rates requested are

9    reasonable and warranted.

10    Finally, the court agrees with the Plaintiff's attorneys that an inflation-adjusted statutory

11    rate for the remaining attorneys on the case is reasonable, and that the hours sought for these

12    attorneys are compensable.

13    The lodestar amount for the work performed by all of Plaintiff's attorneys at these rates,

14    after the Ninth Circuit's opinion [May 21, 2008] based on the entries in Dkt. #198, Ex. A, is

15    $513, 954.80.

16    **3.  Further Adjustment.**

17    The final step in an EAJA (or other) fee assessment is whether to enhance or reduce this

18    lodestar figure based on the Court's evaluation of those *Kerr* factors not subsumed in the lodestar

19    calculation.  *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  The analysis above

20    and the resulting lodestar take many of the relevant factors into account.  Nevertheless, after

21    reviewing all of the factors, all of the entries, and the Defendant's objections, the Court

22    concludes that an additional reduction in the total fee award of 10% is warranted.  This amount

23    ensures that the defendant's concerns about efficiency, the time spent on unsuccessful claims,

24

1  and attorneys' hourly rates are factored into and reflected in the total award.  Accordingly, the

2  total fee award is **$462,559.32**.

3

                                **III.    Conclusion**

4

5          Witt's Motion for reasonable fees under the EAJA is timely, and the government's

   position after remand was not substantially justified.  Witt is therefore entitled to an award of

6

   fees, at an enhanced reasonable rate, after the date of the Ninth Circuit's opinion in this case.

7

   While the hours and rates sought are reasonable, as whole the court deems a 10% reduction to

8

   the amount sought after remand to be reasonable and necessary to ensure a fair award.  The

9

   The Court therefore **AWARDS $462,559.32** to Witt as reasonable attorneys' fees.  The clerk

10

   shall prepare a judgment in this amount.

11

   **IT IS SO ORDERED**.

12

13

14         Dated this 16th day of May, 2012.

15

16

17                                              Ronald B. Leighton
                                                United States District Judge

18

19

20

21

22

23

24

ORDER- 15